## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
## SOUTHERN DIVISION

THEODORE WILLIAMS, LOCKETT'S-
WILLIAMS' MORTUARY, INC., RICKY
AUGUST, LASHA AUGUST,
JONATHAN AUGUST, RICHMOND-
AUGUST FUNERAL HOME, INC,
EDDIE HARTWELL, HARTWELL &
FAMILY FUNERAL HOME, LLC,
ANTHONY MARSHALL, GINA
MARSHALL, MARSHALL FUNERAL
HOME, PAMELA DICKEY, DICKEY
BROTHERS MEMORIAL FUNERAL
HOME, LLC, HELEN EVANS, and J.T.
HALL FUNERAL HOME, INC.,

        Plaintiffs,

        v.

GARY HARGROVE, in his individual
capacity and his official capacity as
CORONER OF HARRISON COUNTY,
the HARRISON COUNTY BOARD OF
SUPERVISORS, HARRISON
COUNTY, Mississippi, UNKNOWN
EMPLOYEES OF THE CORONER OF
HARRISON COUNTY, UNKNOWN
EMPLOYEES OF THE HARRISON
COUNTY BOARD OF SUPERVISORS,
and UNKNOWN EMPLOYEES OF
HARRISON COUNTY,

        Defendants.

No. 1:16-cv-266-HSO-MTP

Judge Halil S. Ozerden

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

NOW COME Plaintiffs THEODORE WILLIAMS, LOCKETT'S-WILLIAMS' MORTUARY, INC., RICKY AUGUST, LASHA AUGUST, JONATHAN AUGUST, RICHMOND-AUGUST FUNERAL HOME, INC., EDDIE HARTWELL, HARTWELL & FAMILY FUNERAL HOME, LLC, ANTHONY MARSHALL, GINA MARSHALL, MARSHALL FUNERAL HOME, PAMELA DICKEY, DICKEY BROTHERS MEMORIAL FUNERAL HOME, LLC, HELEN EVANS, and J.T. HALL FUNERAL HOME, INC., by their attorneys, ROBERT MCDUFF and LOEVY & LOEVY, and complaining of Defendants GARY HARGROVE, in his individual capacity and his official capacity as CORONER OF HARRISON COUNTY, the HARRISON COUNTY BOARD OF SUPERVISORS, and HARRISON COUNTY, Mississippi, state as follows:

## INTRODUCTION

1.      Plaintiffs are African-American business people and the funeral homes they operate in Harrison County, Mississippi. Plaintiffs are victims of intentional and pervasive race discrimination, which has had and continues to have a destructive effect on their businesses and their livelihoods, all in violation of their rights under the U.S. Constitution and Mississippi law.

2.      For at least two decades, Defendant GARY HARGROVE, the CORONER OF HARRISON COUNTY, and Defendant the HARRISON COUNTY BOARD OF SUPERVISORS have intentionally discriminated against black-owned businesses in the procurement of mortuary services for Harrison County. Defendant

2

HARGROVE has directed public business and public money to white-owned funeral homes, and Defendant the BOARD OF SUPERVISORS has ratified Defendant HARGROVE's conduct and has appropriated public money to fund his discrimination.

3.     In so doing, the Defendants have caused serious damage to Plaintiffs. In a business that survives on reputation and word-of-mouth referrals, each lost chance to serve has far-reaching financial consequences.

4.     None of the Defendants can justify this discrimination against the black-owned funeral homes of Harrison County and their African-American owners. There is no lawful justification for the economic and other damage that Defendants have inflicted.

5.     By this lawsuit, Plaintiffs seek to vindicate the violation of their rights protected by the U.S. Constitution and Mississippi law and seek redress for the damage that Defendants have caused.

## JURISDICTION AND VENUE

6.     This is a civil action brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and Mississippi law to redress the Defendants' tortious conduct and their deprivation of Plaintiffs' rights secured by the U.S. Constitution.

7.     This Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and it has supplemental jurisdiction of their state-law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper under 28 U.S.C. § 1391(b). All but one of the Plaintiffs reside in this judicial district; on information and belief, the majority of the Defendants reside in this judicial district; and the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

9.     Plaintiffs are African-American business people from Harrison County, Mississippi, as well as the businesses that they own and operate. They are distinguished members of their community, and their businesses have served the community for decades.

10.     Plaintiff LOCKETT'S-WILLIAMS' MORTUARY, INC., is a Mississippi corporation with its principal place of business in Gulfport, Mississippi. The business has served residents of Gulfport since 1948. Plaintiff THEODORE WILLIAMS, JR., is the owner of LOCKETT'S-WILLIAMS' MORTUARY, INC. The Williams family has owned and operated the business since 1984. Theodore Williams, Jr., is a resident of Harrison County, Mississippi. He is licensed by the State of Mississippi as a funeral director.

11.     Plaintiff RICHMOND-AUGUST FUNERAL HOME is a Mississippi corporation whose owners are from Harrison County and Jackson County, Mississippi, and Virginia, and whose principal place of business is in Biloxi, Mississippi. The business was first established in 1959 as W.B. McDaniel and Son Funeral Home. Plaintiffs RICKY AUGUST, LASHA AUGUST, and JONATHAN AUGUST are owners of RICHMOND-AUGUST FUNERAL HOME. The August

family has owned and operated the business since 2011. Ricky August is a resident of Harrison County, Mississippi. Lasha August is a resident of Jackson County, Mississippi. She is a funeral service licensee in the State of Mississippi. Jonathan August is a resident of Virginia.

12.     Plaintiff HARTWELL & FAMILY FUNERAL HOME is a Mississippi limited liability company whose members are from Harrison County, Mississippi, and whose principal place of business is in Gulfport, Mississippi. Plaintiff EDDIE HARTWELL is the owner of the HARTWELL & FAMILY FUNERAL HOME. The Hartwell family has owned and operated the business since 1987. Eddie Hartwell is a resident of Harrison County, Mississippi. He is a funeral service licensee in the State of Mississippi.

13.     Plaintiffs ANTHONY MARSHALL and GINA MARSHALL own and operate Marshall Funeral Home. The Marshall family has operated the funeral home since 2000. Anthony and Gina Marshall are both residents of Harrison County, Mississippi. Anthony Marshall is a funeral service licensee in the State of Mississippi. Gina Marshall is licensed by the State of Mississippi as a funeral director.

14.     Plaintiff MARSHALL FUNERAL HOME is a licensed funeral establishment under the Mississippi State Board of Funeral Service, and is an unincorporated association licensed to do business in the city of Biloxi.  Anthony Marshall and Gina Marshall are the members of the association.

15.     Plaintiff DICKEY BROTHERS MEMORIAL FUNERAL HOME is a Mississippi limited liability company whose sole member resides in Harrison County, Mississippi, and whose principal place of business is in Biloxi, Mississippi. The business has served residents of Harrison County since 1959. Plaintiff PAMELA M. DICKEY is the sole member of the DICKEY BROTHERS MEMORIAL FUNERAL HOME, LLC. Pamela Dickey is a resident of Harrison County, Mississippi.

16.     Plaintiff J.T. HALL FUNERAL HOME, INC., is a Mississippi corporation with its principal place of business in Gulfport, Mississippi. The business has served residents of Gulfport since 1920. Plaintiff HELEN EVANS is a shareholder of J.T. HALL FUNERAL HOME, INC. Helen Evans is a resident of Harrison County, Mississippi. She is a funeral service licensee in the State of Mississippi.

17.     Defendant GARY HARGROVE is the elected CORONER OF HARRISON COUNTY, Mississippi. Defendant HARGROVE was first elected Coroner in 1996. He is sued in his individual capacity and also in his official capacity as CORONER OF HARRISON COUNTY. At all times relevant to the events described in this Complaint, Defendant HARGROVE was acting under color of law and within the scope of his employment. Defendant HARGROVE oversees the Office of the Coroner of Harrison County.  Defendant HARGROVE, as CORONER OF HARRISON COUNTY, is responsible for the policies and practices of the CORONER OF HARRISON COUNTY that are at issue in this case.

Defendant HARGROVE is a final policy maker for the Harrison County Coroner, the Board of Supervisors of Harrison County, and Harrison County. Defendant HARGROVE is white.

18.     Defendant the HARRISON COUNTY BOARD OF SUPERVISORS is the governing authority of Harrison County, Mississippi.  The HARRISON COUNTY BOARD OF SUPERVISORS funds the operations of the CORONER OF HARRISON COUNTY.  Defendant the HARRISON COUNTY BOARD OF SUPERVISORS is additionally responsible for the policies and practices of the HARRISON COUNTY BOARD OF SUPERVISORS that are at issue in this case, and is a final policy maker for HARRISON COUNTY.

19.     Defendant HARRISON COUNTY is a county of the State of Mississippi. The CORONER OF HARRISON COUNTY and the HARRISON COUNTY BOARD OF SUPERVISORS are final policy makers for HARRISON COUNTY. Defendant HARRISON COUNTY is obligated by Mississippi statute to pay any judgment entered against any of the Defendants and is liable for all torts committed by the CORONER OF HARRISON COUNTY or the HARRISON COUNTY BOARD OF SUPERVISORS.

**FACTS**

**The Official Administration of Deaths in Harrison County**

20.     Roughly two thousand people die in Harrison County each year.

21.     A significant portion of these deaths fall within the jurisdiction of or otherwise become the concern and official business of Defendant HARGROVE,

CORONER OF HARRISON COUNTY and/or Defendant the HARRISON COUNTY BOARD OF SUPERVISORS.

22.     Defendant HARGROVE has been the elected Coroner of Harrison County, Mississippi, for more than 20 years. In that position, he is given authority over the remains of any person who dies in Harrison County and whose death affects "the public interest," which means any death that is a homicide, suicide, or accident; any death that is unexpected, unexplained, or unattended by a physician; the death of an indigent person whose remains are not otherwise removed; and any death of an unknown person. Although the precise number varies from year to year, these deaths account for at least 60% of the total deaths occurring in the county. In some years, the percentage is much higher.

23.     To discharge their legal duties and responsibilities with respect to hundreds and hundreds of deaths each year, Defendant HARGROVE, an elected official, and/or the HARRISON COUNTY BOARD OF SUPERVISORS, composed of elected officials, must engage the services of privately operated funeral homes in Harrison County to perform an array of tasks.

24.     Because Harrison County does not have a morgue, whenever a death affecting the public interest occurs, Defendant HARGROVE selects a funeral home in Harrison County to come to the scene of the death, remove the body from the place where the death occurred, and take it back to the funeral home. This service provided by a funeral home is called a "removal." Defendant HARGROVE has the final authority to determine which funeral home is called to perform the removal.

25.     A funeral home performing a removal is paid by Defendant HARGROVE out of the funds provided by the county. The activities of Defendant HARGROVE in selecting which funeral homes perform removals are ratified and funded by the HARRISON COUNTY BOARD OF SUPERVISORS.

26.     In addition to removals, funeral homes provide what are known as "pauper's burials" or "pauper's cremations." When an indigent person dies, a deceased person is unidentified, or remains go unclaimed by relatives, Defendants HARGROVE and the HARRISON COUNTY BOARD OF SUPERVISORS are required by Mississippi law to bury or cremate the remains.

27.     In this situation, Defendant HARGROVE designates a funeral home to carry out the burial or cremation, and the HARRISON COUNTY BOARD OF SUPERVISORS ratifies that decision, appropriating public funds to pay for the burial or cremation. Nearly without exception, the funeral home designated to perform the burial or cremation is the one which has custody of the body as a result of being selected by Defendant HARGOVE to perform the initial removal.

**The Effect of Official Decisions on Funeral Home Businesses**

28.     After removal of a body, there are many services that a funeral home can provide for a family. Funeral homes compete with one another to provide these services in the community. Most funeral homes rely on long-term, multi-generational relationships with families to sustain their businesses.

29.     The economic effect of a public official's decision to direct remains to a particular funeral home is substantial.

30.     In many cases, families are entirely unprepared for the death of a loved one. When faced with the ordeal of making arrangements for a funeral, many people are reluctant or simply too distressed to "shop around" and select a funeral home to perform the funeral service.

31.     Accordingly, if there is a death that falls under the authority of Defendant HARGROVE or the HARRISON COUNTY BOARD OF SUPERVISORS, the family of the deceased person frequently chooses to avoid the difficulty of selecting a funeral home and moving a loved one's body by simply relying on the services of the funeral home that did the initial removal and that already has custody of the remains.

32.     This means that when a funeral home is called to perform a removal, it is common that that funeral home will get all of the funeral business that results from that particular death.

33.     In addition to the public contract made for the removal, the official decision to direct a body to a particular funeral home results in downstream economic benefits and a new client. That funeral home then stands a good chance of establishing a long-term relationship with that family and future additional business.

34.     Similarly, unlike other businesses that rely on advertising or marketing to reach new customers, funeral homes depend on referrals and recommendations. Business directed by public officials to a funeral home results in increased referrals and recommendations in the future.

35.     For all of these reasons, the opportunity to perform the initial removal of a deceased person or to carry out a pauper's cremation or burial can have financial effects that cascade far beyond the cremation or burial of that individual. The deprivation of such an opportunity is accordingly far more damaging financially than the mere loss of the single service.

## Defendants' Discrimination

36.     In addition to the Plaintiff businesses, there are two other funeral home businesses in Harrison County: Riemann Family Funeral Home ("Riemann") and Bradford O'Keefe Funeral Home ("O'Keefe"). Both of these businesses are white-owned.

37.     Riemann, O'Keefe, and the Plaintiff businesses are all equally situated in terms of their capacity, ability, and licensing to perform removals, pauper's burials, and other funeral services required by the public.

38.     Defendant HARGROVE and the HARRISON COUNTY BOARD OF SUPERVISORS should use a rotation system when a removal and other services are required, calling each of the funeral homes in Harrison County in turn. Such a system would ensure that public funds are equitably distributed among qualified businesses serving Harrison County.

39.     On multiple occasions, Defendant HARGROVE claimed to Plaintiffs that Defendants were using such a system to assign Harrison County business.

40.     Defendant HARGROVE's statements were false and Defendant HARGROVE knew them to be false.

41.     Until recently, Plaintiffs did not know that HARGROVE's statements were false.

42.     In recent years, more than 1,200 deaths per year in Harrison County have fallen within the jurisdiction of Defendant HARGROVE and Defendant BOARD MEMBERS. Annually, approximately 80% of decedents (approximately 1000 people) are white, 17% are African-American (approximately 210 people), and 3% (approximately 22 people) are from other racial groups.

43.     Given the number of funeral home businesses in Harrison County, if a rotation system were being used, each funeral home should receive nearly 150 calls for removals each year from Defendant HARGROVE.

44.     Plaintiffs have not received anything close to this number of calls for removals.  Instead, each has received only a handful of calls from Defendant HARGROVE.

45.     Of the very few calls to perform removals that Plaintiffs have received from Defendant HARGROVE, the decedents whom they have been asked to remove have been African-American persons in every case.

46.     Defendant HARGROVE has never called any of Plaintiffs to perform a removal of a white person at any point in time, despite white decedents accounting for approximately 1000 deaths falling within Defendants' jurisdiction each year.

47.     Instead, in past years, Defendant HARGROVE instructed Riemann and O'Keefe, both white-owned businesses, to perform all removals of white decedents and the extreme majority of all other removals.

48.     The preference of Defendant HARGROVE to send removal business to white-owned funeral homes instead of black-owned funeral homes, despite a purported rotation system, has persisted for years. Defendant HARGROVE has consistently refused to send any white decedent to a black-owned funeral home.

49.     Defendant the BOARD OF SUPERVISORS has had notice of and has ratified HARGROVE's discrimination against black-owned funeral homes by approving his requests for funds to pay the white-owned funeral homes while receiving very few requests from Hargrove to pay the Plaintiff funeral homes.

50.     Defendants' discrimination extends to pauper's burials and cremations as well.

51.     Of all the pauper's burials and cremations taking place each year, in the extreme majority of cases Defendant HARGROVE directs white-owned funeral homes to conduct the burials and cremations. Defendant the HARRISON COUNTY BOARD OF SUPERVISORS approves those decisions, and directs public funds to those businesses to pay for those services.

52.     In the decades since Defendant HARGROVE took office, hundreds of cremations and burials directed by public officials have occurred at the facilities of Riemann and O'Keefe in the time that business has been directed away from Plaintiffs.

53.     Almost always, the funeral home that Defendant HARGROVE designates to carry out a cremation or burial is the funeral home that was initially called to perform the removal.

54.     Defendant the HARRISON COUNTY BOARD OF SUPERVISORS votes to approve payment to the funeral home selected to carry out a pauper's cremation or burial.

55.     Defendants' discrimination extends to all other funeral services that Plaintiffs are qualified to provide as well. For example, neither Defendant HARGROVE nor Defendant the HARRISON COUNTY BOARD OF SUPERVISORS has ever contacted Plaintiffs to use their facilities to conduct autopsies or other services required by the public, even though some of the Plaintiffs have the facilities to conduct such services.

56.     On information and belief, Defendant HARGROVE has told individual members of Defendant the BOARD OF SUPERVISORS and others that he does not think that it is "proper" for a white decedent to be sent to a black-owned funeral home, including Plaintiffs. He has expressed the view that white families would not want their loved ones' remains handled by African-American funeral directors as a justification for his discrimination.

**Consequences of Defendants' Discrimination**

57.     Defendants, in conspiracy with one another, have directed hundreds or thousands of dollars away from black-owned funeral homes and toward white-owned funeral homes solely because of Plaintiffs' race. These are public monies designated to perform public services.

58.     In addition to directing public money away from Plaintiffs, Defendants have steered valuable business and business opportunities away from Plaintiffs and

toward white-owned funeral homes, again because of Plaintiffs' race. Plaintiffs are thereby deprived of many opportunities to perform services for the community, to make contracts, to build relationships, and to engage in future business relationships.

59.    Defendants' discrimination therefore diminishes Plaintiffs' revenues and their opportunity to engage in future business and employment.

60.    As a result of Defendants' intentional discrimination against Plaintiffs described in this Complaint, Plaintiffs have suffered violations of their rights protected by the U.S. Constitution and damages, including but not limited to loss of business, revenue, profits, wages, money, opportunities to work, opportunities to engage in contracts, future prospects for employment, business, and business relationships, reputational harms, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages known and unknown to Plaintiffs.

61.    Plaintiffs have suffered the violations of their rights and damages described in this Complaint at the hands of Defendants for at least twenty years, and they continue to suffer these harms and damages to the present day.

## COUNT I
## Equal Protection

62.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

63.    Plaintiffs are African-American individuals and businesses owned solely by African-Americans. They are members of a racial minority and therefore members of a protected class.

64.    Defendants have treated and continue to treat Plaintiffs differently from similarly situated white-owned funeral homes and similarly situated funeral home owners who are white.

65.    As described more fully above, Defendants, individually and in conspiracy with one another, have intentionally discriminated against Plaintiffs by directing business, employment opportunities, contracts, jobs, and other public and private economic benefits away from Plaintiffs' businesses and to white-owned businesses, on the basis of Plaintiffs' race. In addition, Defendant the BOARD OF SUPERVISORS has ratified and paid for the discriminatory misconduct of Defendant HARGROVE.

66.    Defendants' misconduct is not related to any legitimate state interest.

67.    The foregoing misconduct constitutes illegal discrimination, in violation of Plaintiffs' right to equal protection of the laws guaranteed by the Fourteenth Amendment to the U.S. Constitution.

68.    The misconduct described herein is objectively unreasonable and has been undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

69.    As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated. Currently and for years they have

suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

70.     As described in more detail above, this violation of Plaintiffs' rights and Plaintiffs' injuries have been caused by the policies, practices, and customs of Defendants.

71.     The above-described widespread practices, which are so well-settled as to constitute the de facto policy of the HARRISON COUNTY BOARD OF SUPERVISORS, the CORONER OF HARRISON COUNTY, and HARRISON COUNTY, have been allowed to exist because policy makers for these entities with authority over these widespread practices exhibited deliberate indifference to the problems and actually promoted the widespread practices, thereby actually or effectively ratifying them.

72.     In addition, this violation of Plaintiffs' rights and Plaintiffs' injuries have been caused by enforcement of and action undertaken pursuant to the policies of the HARRISON COUNTY BOARD OF SUPERVISORS, the CORONER OF HARRISON COUNTY, and HARRISON COUNTY.

73.     The polices, practices, customs, and actions and approval of final policymakers are the moving force behind the numerous constitutional violations in this case and directly and proximately caused and continue to cause Plaintiffs to suffer the injuries and damages set forth above.

## COUNT II
## 42 U.S.C. §§ 1981

77.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

78.    Plaintiffs are African-American individuals and businesses owned solely by African-Americans. They are members of a racial minority and therefore members of a protected class.

79.    Defendants, individually and in conspiracy with one another, have maintained an intentionally discriminatory system with respect to directing business, employment opportunities, contracts, jobs, and other economic benefits away from Plaintiffs' funeral homes and toward white-owned funeral homes. In addition, Defendants have ratified and paid for the discriminatory misconduct of Defendant HARGROVE.

80.    The foregoing misconduct constitutes intentional discrimination with respect to making, entering, performing, modifying, and terminating contracts, which is prohibited by 42 U.S.C. § 1981.

81.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

82.    As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated. Currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business

relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

83.     The misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of the HARRISON COUNTY BOARD OF SUPERVISORS, the CORONER OF HARRISON COUNTY, and HARRISON COUNTY.

## COUNT III
### 42 U.S.C. § 2000d—Title VI

84.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

85.     On information and belief, Defendants the HARRISON COUNTY BOARD OF SUPERVISORS, the CORONER OF HARRISON COUNTY, and HARRISON COUNTY receive federal financial assistance.

86.     These Defendants have maintained an intentionally discriminatory system with respect to directing business, employment opportunities, contracts, jobs, and other economic benefits away from Plaintiffs' funeral homes and toward white-owned funeral homes. In addition, Defendants have ratified and paid for the discriminatory misconduct of Defendant HARGROVE.

87.     Title VI provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

88.     The foregoing misconduct constitutes intentional discrimination on the basis of race, color, or national origin, with respect to participation in a program receiving federal financial assistance, which is prohibited by Title VI.

89.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

90.     As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated. Currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

91.     The misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of the HARRISON COUNTY BOARD OF SUPERVISORS, the CORONER OF HARRISON COUNTY, and HARRISON COUNTY.

## COUNT V
### Mississippi Constitution, Article III, Section 14—Violation of Equal Protection and Due Process

92.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

93.     Article III § 14 of the Mississippi Constitution of 1890 provides that "No person shall be deprived of life, liberty, or property except by due process of

law." Included within the State Constitution's guarantee of due process is a guarantee that each citizen shall enjoy the equal protection of the laws of the state.

94.     As described more fully above, Defendants have treated African-American-owned businesses differently from similarly situated white-owned businesses in selecting funeral homes to provide services to the County.

95.     This differential treatment is motivated by discriminatory intent.

96.     The differential treatment is not related to any legitimate government interest.

97.     Further, this differential treatment is not furthering any compelling governmental interests, and the classification is not narrowly tailored to serve any such interest.

98.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

99.     As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

21

## COUNT VI
## Mississippi Code Section 41-61-63

100.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

101.   A county medical examiner investigator is commanded by state law "not [to] use his position or authority to favor any particular funeral home or funeral homes." Miss. Code. Ann. § 41-61-63.

102.   As described more fully above, Defendants have violated this provision of Mississippi law, such that Plaintiffs are entitled to damages.

103.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

104.   As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT VII
## Mississippi Law—Breach of Implied Contract

105.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

106.    Defendant HARGROVE promised Plaintiffs that Defendants would use a rotation system for determining which funeral homes would receive Harrison County business regarding funeral home services.

107.    Plaintiffs agreed to provide such funeral home services when called upon or did on occasion provide those services.

108.    By their words and conduct, Defendants and Plaintiffs formed an implied contract.

109.    Defendants breached that contract by failing to use a rotation system, and by instead discriminating against Plaintiffs on the basis of their race and directing the vast majority of funeral home business to white-owned funeral homes without respect to any rotation system.

110.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

111.    As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

**COUNT VIII**
**Mississippi Law—Tortious Breach of Contract**

112.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

113.    Defendant HARGROVE promised Plaintiffs that Defendants would use a rotation system for determining which funeral homes would receive Harrison County business regarding funeral home services.

114.    Plaintiffs agreed to provide such funeral home services when called upon or did on occasion provide those services.

115.    By their words and conduct, Defendants and Plaintiffs formed an implied contract.

116.    Defendants breached that contract by failing to use a rotation system, and by instead discriminating against Plaintiffs on the basis of their race and directing the vast majority of funeral home business to white-owned funeral homes without respect to any rotation system.

117.    In committing the breach of contract, Defendant HARGROVE also intentionally and tortiously discriminated against Plaintiffs on the basis of their race.

118.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

119.    As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have

suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT IX
### Mississippi Law—Fraud in the Inducement

120.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

121.   As set forth more fully above, Defendant HARGROVE represented to Plaintiffs that Defendants would use a rotation system for determining which funeral homes would receive Harrison County business regarding funeral home services.

122.   Defendant HARGROVE's statements were false and he knew them to be false.

123.   Plaintiffs did not know that HARGROVE's statements were false.

124.   Plaintiffs relied upon Defendant HARGROVE's false statements in entering into an implied contract to provide such services.

125.   Plaintiffs' reliance on HARGROVE's representation was reasonable under the circumstances.

126.   Defendant HARGROVE's false statement was material to Plaintiffs' decision enter into the contract, and Defendant HARGROVE intended that Plaintiffs should rely on it in such a manner.

127.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

128.   As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT X
### Mississippi Law —Intentional or Reckless Infliction of Emotional Distress

129.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

130.   As set out more fully above, in discriminating against Plaintiffs, Defendants' conduct was so extreme or outrageous as to go beyond all possible bounds of decency, was atrocious, and was utterly intolerable in a civilized community. Further, Defendants' discriminatory conduct evokes outrage and revulsion.

131.   As a result of Defendants' conduct, Plaintiffs have suffered severe emotional distress.

132.   The emotional distress suffered by Plaintiffs was a reasonably foreseeable result of Defendants' conduct.

26

133.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

134.   As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT XI
## Mississippi Law —Negligent or Willful and Wanton Conduct

135.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

136.   As set forth more fully above, Defendants breached a duty owed to Plaintiffs with whom they engaged in business not to discriminate against Plaintiffs on the basis of their race.

137.   Alternatively, the actions of Defendants were willful and wanton, in that they demonstrated an utter indifference to Plaintiffs' rights. Defendants were consciously aware that harm would result from the above-described course of action and recklessly disregarded the consequences of those actions.

138.   Defendants' negligent and/or willful and wanton conduct was the proximate cause of Plaintiffs' damages described above.

139.   Defendants acted with knowledge of facts that make Plaintiffs' losses and severe emotional distress the probable results of their action and a result which the Defendants, in view of the facts, had reason to anticipate.

140.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

141.   As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT XII
### State Law Claim—Civil Conspiracy

142.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

143.   As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deny Plaintiffs business, to interfere with their livelihoods, and to direct business from black-owned businesses to white-owned businesses, all because of Plaintiffs' race, and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-

conspirators agreed among themselves to protect one another from liability for depriving Plaintiffs of these rights.

144.   In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity, including directing business to white-owned funeral homes and away from black-owned funeral homes.

145.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of Plaintiffs' rights.

146.   As a result of Defendants' misconduct described above, Plaintiffs' rights have been and continue to be violated, and currently and for years they have suffered and continue to suffer damages, including lost business, revenue, profits, wages, money, future prospects of employment, business, and business relationships, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages alleged more fully above.

## COUNT XIII
## State Law Claim – *Respondeat Superior*

147.   Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

148.   While committing the misconduct alleged in the preceding paragraphs, the Defendants were employees, members, and agents of the CORONER OF HARRISON COUNTY, the HARRISON COUNTY BOARD OF SUPERVISORS, and

HARRISON COUNTY, acting at all relevant times within the scope of their employment.

149.   The CORONER OF HARRISON COUNTY, the HARRISON COUNTY BOARD OF SUPERVISORS, and HARRISON COUNTY are liable as principal for all torts committed by their employees, members, or agents.

WHEREFORE, Plaintiffs THEODORE WILLIAMS, LOCKETT'S-WILLIAMS' MORTUARY, INC., RICKY AUGUST, LASHA AUGUST, JONATHAN AUGUST, RICHMOND-AUGUST FUNERAL HOME, INC., EDDIE HARTWELL, HARTWELL & FAMILY FUNERAL HOME, LLC, ANTHONY MARSHALL, GINA MARSHALL, MARSHALL FUNERAL HOME, PAMELA DICKEY, DICKEY BROTHERS MEMORIAL FUNERAL HOME, LLC, HELEN EVANS, and J.T. HALL FUNERAL HOME, INC., respectfully request that this Court enter a judgment in their favor and against Defendants GARY HARGROVE, in his individual capacity and his official capacity as CORONER OF HARRISON COUNTY, the HARRISON COUNTY BOARD OF SUPERVISORS, AND HARRISON COUNTY, Mississippi, awarding compensatory damages, punitive damages, attorneys' fees and costs against each Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs THEODORE WILLIAMS, LOCKETT'S-WILLIAMS' MORTUARY, INC., RICKY AUGUST, LASHA AUGUST, JONATHAN AUGUST, RICHMOND-AUGUST FUNERAL HOME, INC., EDDIE HARTWELL, HARTWELL & FAMILY

FUNERAL HOME, LLC, ANTHONY MARSHALL, GINA MARSHALL,

MARSHALL FUNERAL HOME, PAMELA DICKEY, DICKEY BROTHERS

MEMORIAL FUNERAL HOME, LLC, HELEN EVANS, and J.T. HALL FUNERAL

HOME, INC., hereby demand a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

**THEODORE WILLIAMS, LOCKETT'S-WILLIAMS' MORTUARY, INC., RICKY AUGUST, LASHA AUGUST, JONATHAN AUGUST, RICHMOND-AUGUST FUNERAL HOME, INC., EDDIE HARTWELL, HARTWELL & FAMILY FUNERAL HOME, LLC, ANTHONY MARSHALL, GINA MARSHALL, MARSHALL FUNERAL HOME, PAMELA DICKEY, DICKEY BROTHERS MEMORIAL FUNERAL HOME, LLC, HELEN EVANS, and J.T. HALL FUNERAL HOME, INC.**

BY:     s/ Sarah Grusin

*One of Plaintiffs' Attorneys*

*Attorneys for Plaintiffs*
Michael Kanovitz (*pro hac vice*)
Steven Art (*pro hac vice*)
Gretchen Helfrich
Sarah Grusin (*pro hac vice)*
**LOEVY & LOEVY**
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
(312) 243-5900 (phone)
mike@loevy.com

Robert McDuff
**McDUFF & BYRD**
767 N. Congress St.
Jackson, Mississippi 39202
(601) 969-0802
rbm@mcdufflaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Grusin, an attorney, certify that on March 1, 2017, I caused the foregoing **Amended Complaint** to be filed via the Court's CM/ECF electronic filing system and thereby effected service on all counsel of record.

<u>/s/ Sarah Grusin</u>