# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**THEODORE WILLIAMS, LOCKETT
WILLIAMS MORTUARY, INC., RICKY
AUGUST, LASHA AUGUST, JONATHAN
AUGUST, RICHMOND-AUGUST FUNERAL
HOME, LLC, EDDIE HARTWELL, HARTWELL
& FAMILY FUNERAL HOME, LLC, ANTHONY
MARSHALL, GINA MARSHALL, MARSHALL
FUNERAL HOME, INC., PAMELA DICKEY,
DICKEY BROTHERS MEMORIAL FUNERAL
HOME, LLC, HELEN EVANS AND J. T. HALL
FUNERAL HOME, INC.**                                        **PLAINTIFFS**

**V.**                                  **CIVIL ACTION NO. <u>1:16-CV-266-KS-MTP</u>**

**GARY HARGROVE, in his individual capacity
and his official capacity as CORONER OF
HARRISON COUNTY, Mississippi,
the HARRISON COUNTY BOARD OF SUPERVISORS,
UNKNOWN EMPLOYEES OF THE
CORONER OF HARRISON COUNTY,
UNKNOWN EMPLOYEES OF THE
HARRISON COUNTY BOARD OF SUPERVISORS, and
UNKNOWN EMPLOYEES OF HARRISON COUNTY**           **DEFENDANTS**

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

The Defendants, GARY HARGROVE, in his individual and official capacity as Coroner of Harrison County, HARRISON COUNTY, MISSISSIPPI and the BOARD OF SUPERVISORS OF HARRISON COUNTY, MISSISSIPPI, file this Memorandum in Support of Motion for Summary Judgment, to-wit:

## INTRODUCTION

On July 18, 2016, Plaintiffs filed their Complaint [Doc. 1]. The Plaintiffs are six (6) black-owned[1] funeral home entities in Harrison County, Mississippi, as well the respective funeral home owners, individually. The Defendants are the Harrison County Coroner Gary Hargrove, in his official and individual capacity ("Hargrove"), the Harrison County Coroner's Office ("Coroner's Office") and the Harrison County Board of Supervisors ("the Board").

During his tenure as Coroner, Hargrove has adhered to Mississippi law on the disposition of a decedent's body. Hargrove has done so by **following the wishes of the decedents and their "family"**[2] as to the funeral home selection. Miss. Code Ann. § 73-11-58 prescribes a hierarchy of persons who make the decision as to which funeral home a decedent is sent.

(1) **If a decedent has left no written authorization for the cremation and/or disposition of the decedent's body** as permitted by law, **any of the following persons, in the order of priority listed below**, may authorize any lawful manner of disposition of the decedent's body by completion of a written instrument:

 a. If person died in military service, the person designated by the decedent as authorized to direct disposition pursuant to Public Law No. 109-163. Section 564.

 b. The surviving spouse.

 c. A surviving child who is at least eighteen (18) years of age.

 d. A grandchild who is at least eighteen (18) years of age.

 e. Either surviving parent.

 f. A surviving sibling who is at least eighteen (18) years of age.

 g. A person acting as a representative of the decedent under a signed authorization of the decedent.

---

[1] Testimony in this case and applicable statistics refer to races as "black" or "white." For clarity and harmony these terms will be used instead of the more formal terminology "African-American" and "Caucasian." match

[2] Miss. Code Ann. § 73-11-58 designates 12 persons or entities before Hargrove that can select a funeral home for services, while those listed in sections (j – l) are not decedent's family, they will be referred to herein as "**family**," because that is the way such persons were most often identified during deposition testimony.

h. The guardian of the person of the decedent at the time of the decedent's death, if a guardian has been appointed.
i. A person in the class of the next degree of kinship, in descending order, who, under state law, would inherit the decedent's estate if the decedent died intestate and who is at least eighteen (18) years of age.
j. A person who has exhibited special care and concern for the decedent and is willing and able to make decisions about the cremation and disposition.
k. In the case of individuals who have donated their bodies to science or whose death occurred in a nursing home or private institution and in which the institution is charged with making arrangements for the final disposition of the decedent, a representative of the institution may serve as the authorizing agent in the absence of any of the above.
l. In the absence of any of the above, any person willing to assume responsibility for the cremation and disposition of the decedent.
m. **In the case of indigents or any other individuals whose final disposition is the responsibility of the state or any of its instrumentalities**, a public administrator, medical examiner, **coroner**, state-appointed guardian, or any other public official charged with arranging the final disposition of the decedent may serve as the authorizing agent.[3]

Funeral homes provide various related burial services. As part of the services, funeral homes conduct the removal of a body from the scene of death. For all homicide or suspected homicide deaths in Harrison County, an autopsy is required. In cases when survivors of a decedent cannot afford funeral services, or the decedent's survivors cannot be located, the Board will provide for a pauper's burial. There are certain deaths wherein the cause of death is investigated by Hargrove[4] ("Coroner's cases")[5]. Plaintiffs allege that the Board authorizes

---

[3] *See* MISS. CODE ANN. § 73-11-58(1).
[4] From the beginning, Plaintiffs have had a fundamental misunderstanding of Hargrove's role in the cases he investigates and have referred to these cases as under Hargrove's "jurisdiction." They have erroneously interpreted this to mean that in cases under his "jurisdiction" he has full control over which funeral home received the body and this could not be further from the truth.

Harrison County ("County") funds to pay for all removals, autopsies, and pauper's burials that occur in Harrison County.[6] However, while the Board pays funeral homes for autopsies and pauper's burials, it will only pay a funeral home for a removal if a funeral home was not pre-selected by a decedent or by the survivors within a reasonable amount of time after death. If the decedent or his survivors selected a certain funeral home, then they pay the removal fee, not the County.

Plaintiffs generally allege that the Defendants discriminated against them in the operation of their funeral homes in Harrison County. As to Hargrove, Plaintiffs allege that Hargrove intentionally directs more bodies to the two (2) white-owned funeral homes in Harrison County, Bradford O'Keefe Funeral Homes ("Bradford's") and Riemann Family Funeral Homes ("Riemann's") as opposed to the Black-owned funeral homes for Coroner's cases. This includes removals, autopsies and pauper's burials.

Discovery in this case has shown that Hargrove follows the statutory mandate and abides by the pre-death instructions of the decedent or the post death wishes of family members in the funeral home selection. The limited exceptions occur when an autopsy is required or when a family member cannot be promptly located necessitating refrigeration of the body. Hargrove has no control over the situs where autopsies were performed and no control over a funeral homes decision to provide proper refrigeration with sufficient capacity. As such, the Plaintiffs have not presented any genuine issues of material fact and Defendants should be granted summary judgment on all claims.

---

[5] Generally about half of all deaths in Harrison County are Coroner's cases.
[6] The Board pays funeral homes for autopsies and pauper's burials, but will only pay a funeral home for a removal if a funeral home was not pre-selected by a decedent or by the family within a reasonable amount of time after death. If decedent or family selected a funeral home then they pay the removal fee.

## FACTS

### A. PLAINTIFFS' CLAIMS

Plaintiffs' Amended Complaint [Doc. 42] alleges twelve (12) counts against the

Defendants, including three (3) federal claims and nine (9) state law claims: (1) Equal

Protection; (2) 42 USC 1981 Violations; (3) Title VI; (4) Mississippi Constitution Art. 3, Sec. 14

Violations; (5) Miss. Code Ann. 41-61-63 Violations; (6) Breach of Implied Contract; (7)

Tortious Breach of Contract; (8) Fraud in the Inducement; (9) Intentional/Reckless Infliction of

Emotional Distress; (10) Negligent or Willful and Wanton Conduct; (11) Civil Conspiracy and

(12) Respondeat Superior.[7]

### B. CASES INVESTIGATED BY HARGROVE

MISS. CODE ANN. § 41-61-53 dictates that Hargrove will investigate a "death affecting

the **public interest**," which include "any death of a human being where the circumstances are

sudden, unexpected, violent, suspicious or unattended."[8] Specifically, this includes:

> Cases where there is homicide, suicide, accidental death, which
> could include car accidents, falls, on the accidental side. Deaths of
> children under two years of age. Individuals who die in their
> residence or on public streets. People who are brought to the
> emergency room in cardiac arrest and die and pronounced in the
> emergency room. Deaths in the hospital where they have only been
> there less than 24 hours. Anything over 24 hours is not a coroner's
> case unless it fits one of the categories before. Hospice deaths,
> some nursing homes call to report deaths to us, not all nursing
> homes, because most of the time, the doctor signs those death
> certificates. And undetermined deaths.[9]

A death that triggers an investigation by Hargrove does not mean that he makes the

choice as to which funeral home the body is sent. What it does mean is a death in which he must

---

[7] As to Count 12 – *Respondeat Superior*, Hargrove, the Harrison County Coroner, is not contesting the
fact that he was an employee of Harrison County acting within the course and scope of his employment
during the alleged times and for the alleged actions, but denies all allegations of any wrongdoing.
[8] *See* MISS. CODE ANN. § 41-61-53(b) and (e).
[9] *See EXHIBIT "A"* at p. 193 – 194.

investigate and declare a cause of death. In fact, MISS. CODE ANN. § 73-11-58 not only prescribes a hierarchy of persons who make the decision as to which funeral home a decedent is sent, but it requires Hargrove to follow the burial wishes of the person identified in (1)(a − l), More importantly, it issues a stern caveat to the funeral homes.

> (2) **No funeral establishment shall accept a dead human body from any public officer** or employee or from the official of any institution, hospital or nursing home, or from a physician or any person having a professional relationship with a decedent, **without having first made due inquiry as to the desires of the persons who have the legal authority to direct the disposition of the decedent's body**. If any persons are found, their authority and directions shall govern the disposal of the remains of the decedent. Any funeral establishment receiving the remains in violation of this subsection shall make no charge for any service in connection with the remains before delivery of the remains as stipulated by the persons having legal authority to direct the disposition of the body. This section shall not prevent any funeral establishment from charging and being reimbursed for services rendered in connection with the removal of the remains of any deceased person in case of accidental or violent death and rendering necessary professional services required until the persons having legal authority to direct the disposition of the body have been notified.[10]

This means that not only does the decedent and the family have the exclusive right of selection over Hargrove, but also that a funeral home cannot accept a body from Hargrove without first confirming the pre-death wishes of the decedent or the post-mortem wishes of the family. None of the Plaintiffs have identified a single instance, other than an autopsy which is controlled by the contracting pathologist, where Hargrove directed a decedent away from their funeral home to Bradford's or Riemann's.

## C. REFRIGERATION

If a decedent cannot be immediately embalmed or cremated prior to the funeral

---

[10] *See* MISS. CODE ANN. § 73-11-58(2).

service, it is beyond dispute that the body must be adequately refrigerated to prevent decomposition. The recommended temperature to preserve a body without decomposition is 36 – 38 degrees Fahrenheit.[11] A human body depending on the outside conditions will begin to decompose within a 24 – 48 hour range after death.[12] This becomes problematic where bodies must be stored and preserved for days or weeks at a time. In that context, a funeral home must have a proper capacity "cooler."[13] Coolers are a necessity for all pauper's cases, autopsies and instances where family cannot be immediately located.

In pauper's cases, a decedent must be legally declared a pauper by the Board. MISS. CODE ANN. § 41-39-5 is the governing body of law for "unclaimed corpses." This statute requires the person or entity in possession of a body to: (1) give written notice to the Board within forty-eight (48) hours of body acquisition and (2) to make reasonable efforts to contact deceased's family for five (5) days and if after 5 days no contact has been made, the Board may authorize a pauper's burial.[14] If the person having possession of this body cannot preserve the body until burial, it is the responsibility of the Board to provide for the preservation of the body. Harrison County has a fixed sum it allocates for a pauper's burial ($500.00).[15] MISS. CODE ANN. § 41-39-5 further provides: "no county funds may be expended in excess of the amount budgeted for the purposes of this section without the prior approval of the board of supervisors of the county." For this reason, Harrison County does not pay any additional expense for body refrigeration and storage.

---

[11] *See EXHIBIT "A"* at p. 382.
[12] *See EXHIBIT "B"* at p. 100.
[13] A "cooler" refers to a refrigeration unit that has the capability of storing a human body at temperatures below 38 degrees Fahrenheit.
[14] After July 1, 2016, after the filing of this suit, this statute has been amended to additionally allow for the coroner to declare a person a pauper after 5 days. But, prior to this only the Board could do so.
[15] *See EXHIBIT "A"* at p. 271.

For autopsies, bodies have to be maintained without decomposition in order to ensure the critical accuracy of the post-mortem analysis. In many situations, it may take a protracted amount of time, even days, before an autopsy can even be performed. There are instances involving multiple, simultaneous deaths which require an autopsy and refrigeration. Refrigeration is critically important for the preservation of the body and, in the case of an autopsy, important for the integrity of the post mortem analysis. It is undisputed that a skewed autopsy caused by a partially decomposed or improperly preserved body can alter the outcome of a pending criminal investigation.

During Hargrove service as the Harrison County coroner[16] the only two funeral homes who had such refrigeration capabilities were Bradford's and Riemann's. Bradford's and Riemann's did not assess Harrison County for the refrigeration services each provided. Two of the Plaintiff funeral homes, J.T. Hall Funeral Home, Inc. ("Hall's") and Marshall Funeral Home, Inc. ("Marshall's"), have argued that each had proper cooling capacity.

Hall's has alleged that it had a "cooler" since 1979, equipped to hold the remains of five (5) decedents. Plaintiff Helen Evans ("Evans"), Director of Hall's, testified to Hall's cooler capacity.[17] Evans also stated that she charged a $75.00 daily fee for the use of her cooler.[18] Hargrove was unaware of Hall's having a proper cooler.[19]

Marshall's did not install a cooler until on or about March 2015.[20] Marshall's had a location on Division Street in Biloxi, but in 2015, Marshall's built a crematorium on Veteran's

---

[16] Hargrove has been the elected Harrison County Coroner since 1996.
[17] *See EXHIBIT "B"* at p. 21.
[18] *See EXHIBIT "B"* at p. 19.
[19] *See EXHIBIT "A"* at p. 381 – 382 (Hargrove was aware that Hall's had a room with an air conditioner, but was certain of Hall's "cooler's" inability to preserve bodies at the proper temperature).
[20] *See EXHIBIT "C"* at p. P07947.

Avenue in Biloxi with a cooler. Marshall's cooler has a 3-person capacity.[21] Hargrove did not discover that Marshall's had a cooler until he visited the crematorium in 2015 and discovered the cooler. Marshall's never informed Hargrove they had a cooler prior to this visit. Riemann's and Bradford's had locations with proper coolers, excess capacity and free of charge to Harrison County.

### D.  REMOVALS

Harrison County subsidizes a limited number of removals in those instances when a family member cannot be located and no funeral home preference is known, or in cases where an autopsy is necessary. Harrison County only pays $150.00 for a removal.[22] A funeral home is contacted to perform a body removal[23] but Hargrove is not the only individual who may contact a funeral home. It could be a deputy coroner, a hospice nurse, a physician, or a law enforcement officer. The person who contacts the funeral home for a removal is often dependent on the situs of the death.

If a decedent dies under hospice care, the hospice nurse will contact the funeral home to perform the removal. Depositions were taken of representatives of the following Harrison County hospices: Canon Hospice, LLC ("Canon"), Gentiva/Odyssey Hospice, Saad Hospice and St. Joseph Hospice. Canon's representative Beth Seymour ("Seymour") testified "hospice care is generally considered to be end-of-life care for patients, where a team of healthcare professionals and volunteers help people who are dying have peace, comfort and dignity."[24]

Seymour further testified hospice patients are always asked about their funeral home preference upon hospice admission. Seymour testified that establishing the patient's funeral

---

[21] *See EXHIBIT "D"* at HARGROVE-356, 372 and 375.
[22] *See EXHIBIT "A"* at p. 241.
[23] *See* MISS. CODE ANN. § 73-11-73(1).
[24] *See EXHIBIT "E"* at p. 2 - 3.

home preference is a routine inquiry for hospice and a regular practice of Canon's business.[25]  A copy of Canon's Admission form was an Exhibit to this deposition.  This Admission form includes a lines on the bottom of the page that include: "Funeral Home: _____" and "Next of Kin/Relationship: _____" and next of kin's "Phone Number: _____."[26]  Seymour testified that hospice patient's usually (in about 80 – 90% of cases) already had "pre-need arrangements"[27] with funeral homes upon hospice admission.[28]

Also attached as an Exhibit is a copy of Canon's Body Release Form, which Seymour testified is regularly used in Canon's business.  Seymour affirmed that this Release Form is completed by a hospice nurse "at the time of death" and that it "require(s) the hospice nurse to contact the funeral home selected by the family/patient to take charge of the patient's remains." [29]  Seymour testified if a patient's funeral home preference is not listed in the Admission Form  a nurse will either obtain the information on the funeral home selection from the patient, or from the family post-mortem.  Seymour confirmed that a hospice nurse will contact the funeral home selected by the patient or by the family directly after death.  Additionally, Seymour testified to the following:

> Q.[30] To the best of your knowledge, has Gary Hargrove, as Coroner for Harrison County, Mississippi, ever given instructions to your company as to which funeral home a hospice patient who had passed away was to be taken, except when an autopsy may be required?
>
> BETH SEYMOUR - A. No.[31] [32]

---

[25] *See EXHIBIT "E"* at p. 3 - 4.

[26] *See EXHIBIT "E"* at Exhibit "1".

[27] **"Pre-need arrangements" are when a person has already contracted with a funeral home prior to their death to perform their funeral services.**

[28] *See EXHIBIT "E"* at p. 4.

[29] *See EXHIBIT "E"* at p. 6 - 7.

[30] The hospice depositions were depositions by written question and the questions were asked by Court Reporter Monica Schroeder.

[31] *See EXHIBIT "E"* at p. 7.

The scenario is the same if a decedent dies in a nursing home. In the case of death in a hospital setting, it is often the physician, nurse or hospital staff who will make contact with the funeral home/. If it is a death involving an investigation by law enforcement, law enforcement will make the call. A lot of times, the decedent's family is the one who calls.[33] In the vast majority of cases, Hargrove is not the individual making contact with the funeral home for a removal.

The only cases where Hargrove has to select a funeral home to conduct the removal is either when the body has to be autopsied, or when attempts to contact the decedent's family have been unsuccessful and it is necessary to refrigerate the body until the family can be located. These cases are rare and Hargrove has testified such only occurs in about 0.5% of all coroner cases.[34]

### E. AUTOPSIES

Autopsies in Harrison County have been performed in three (3) places since Hargrove became Coroner. Before his death on January 10, 2015, Dr. Paul McGarry ("Dr. McGarry") performed all of the Harrison County's autopsies. Dr. McGarry performed autopsies coastal wide in Mississippi and in Louisiana for over thirty (30) years. Dr. McGarry was an independent contractor and was not an employee of either Harrison County or the Coroner's Office, nor was he under the control of either. Contrary to the argument of the Plaintiffs, Dr. McGarry could not be ordered, directed or forced to perform an autopsy at a certain location.[35] Dr. McGarry chose to perform autopsies at either Bradford's (Biloxi and Gulfport locations) or

---

[32] The depositions of all of the hospice representatives had substantially similar answers and are attached collectively as *EXHIBIT "F"*.
[33] *See EXHIBIT "A"* at p. 227 - 228.
[34] *See EXHIBIT "A"* at p. 253 - 254.
[35] *See EXHIBIT "A"* at p. 254 and 392.

Riemann's in Gulfport. This changed over time until eventually Dr. McGarry would only perform autopsies at Riemann's in Gulfport.

After August 2005, Dr. McGarry ceased performing autopsies at Bradford's in Biloxi [36] and after October 2007, Dr. McGarry ceased performing autopsies at Bradford's in Gulfport.[37] From October 2007 to January 2015, Dr. McGarry directed that an autopsy was to be performed at Riemann's in Gulfport. Dr. McGarry's decision to perform autopsies at Riemann's in Gulfport was based on his personal choice, personal convenience and the quality and unlimited access to the facilities. Dr. McGarry and Hargrove were provided keys and 24-hour access to Riemann's in Gulfport.[38] Riemann's in Gulfport was also the only funeral home in Harrison County that possessed the proper facilities for the performance of an autopsy/.

Harrison County has not contracted with another forensic pathologist since the death of Dr. McGarry. Since Dr. McGarry's death, all of Harrison County's autopsies are performed through the Office of the State Medical Examiner in Pearl, MS (Jackson Metropolitan Area) by Dr. Mark LeVaughn, the Mississippi State Medical Examiner, and his staff.

Further, because of the necessity of body transport to Pearl, Ms. Harrison County had to contract for the transportation of the body. The awarding of the contract was by blind bid submitted to the Board. The Board awarded the contract to Assurance Transportation (owned by Chad Riemann). Hargrove had zero involvement in the blind bid process or the award of the transportation contract and was not a voting member of the Board.

---

[36] On or about August 2005, Dr. McGarry almost fell down the stairs at Bradford's in Biloxi and thereafter refused to perform future autopsies at that location. *See EXHIBIT "A"* at p. 209.
[37] On or about October 2007, Dr. McGarry was performing an autopsy of a decomposed body at the Bradford's in Gulfport at the same time as a funeral service was ongoing. Bradford's in Gulfport had a common air duct throughout its building and the odor of the decomposed body spread throughout the entire facility. Thereafter Dr. McGarry refused to perform any further autopsies at that location. *See EXHIBIT "A"* at p. 210.
[38] *See EXHIBIT "A"* at p. 227 - 228.

### F. PAUPER'S BURIALS

Pauper's burials[39] occur in varied situations. In the event of a death and no family is located, it becomes necessary to properly preserve the body through proper refrigeration. Also, there are instances when a decedent has made a pre-choice, or the family has selected a funeral home, but for financial reasons the family is unable to defray to cost of the burial. There is no evidence refuting the fact that in the case of a pauper, the body must be properly preserved for a period of at least 5 days[40] before Board approval is obtained. Hargrove has no control over the time period and no control over the statutory mandate.

### G. EXPERTS

Plaintiffs designated two (2) experts in this case. The first is statistician Richard T. Campbell, Ph.D. ("Campbell") and the second is economist John M. Gale, Ph.D. ("Gale").[41] Defendants designated statistician Dr. Chester I. Palmer as a rebuttal expert to Campbell. The challenges to Campbell's and Gale's testimony and opinions are articulated in Hargrove's respective Motions to Exclude and supporting memorandum.

### G. HARRISON COUNTY AND STATE FUNERAL STATISTICS

The Mississippi Bureau of Vital Statistics ("MBVS") maintains an annual list derived from all filed death certificates in the State that details the number of deaths in Mississippi on a county-by-county basis. The list also identifies the number of deaths by race and by identification of the funeral home. The statistics from Harrison County as to how many burials were performed by each funeral home are consistent in Harrison County from year to year.

---

[39] All Pauper's burials are now completed by cremation.

[40] Pauper's often have to stay refrigerated for weeks, months or sometimes years before Harrison County will legally declare them a pauper and authorize payment for their burial.

[41] Gale was hired by Plaintiffs for purposes of establishing damages and his damage calculations are based off of the opinions of Campbell and Defendants have also filed a Motion to Exclude their proposed opinions and testimony.

For instance, in 2015 there were 2,601 total funeral services in Harrison County. Riemann's handled 1,156 of those services and of those decedents 1,123 were White, 16 were Black and 17 were Other.[42] Marshall's handled 258 of those services and of those decedents 59 were White, 197 were Black and 2 were Other.[43]

According to the 2015 Coroner's Files, the Coroner's Office performed 1,349 death investigations. Of the 2015 Coroner's Cases, Riemann's performed 433 of the removals/burials, 16 of which were Black.[44] After Dr. McGarry's death, Riemann's performed 22 removals of Black bodies, but 6 of the autopsies were performed in Pearl, Ms. Riemann's involvement was the transportation of the body in compliance with its transportation contract. The 6 bodies were later transferred to other funeral homes. 4% (16 of 433) of Black decedents who were buried at Riemann's in 2015 involved a coroner's investigation. The total of funeral services performed by Riemann's only involved 1% Black decedents (16 of 1,123).

According to the 2015 Coroner's files, Marshall's performed 69 of the removals/burials of which 22 were White burials. 32% (22 of 69) of Marshall's burials performed from the 2015 Coroner's cases were for White decedents and 23% (59 of 258) of Marshall's overall funeral services were for White decedents. These statistics defy the argument of racial discrimination in the removal of bodies.

Further for the year 2015, Marshall's is one of 3 funeral homes in the entire state (Forrest Funeral Home in Forrest County (41), and Serenity Funeral Home (19) in Union County) that of the overall funeral services approximately 20% were White decedents. Marshall's buried almost as many White decedents (59) as those other 2 funeral homes combined (60).[45]

---

[42] The MBVS records races as "White, Black or Other."
[43] *See EXHIBIT "G"* at p. Harrison County-001647 - 48.
[44] *Id.* at p. Harrison County-001648.
[45] *See generally EXHIBIT "G".*

To highlight the statewide consistency of decedent's and the family's choice of funeral homes along racial lines, Amite County is a template to consider. In Amite County there are two funeral homes, the Anderson Funeral Home ("Anderson") and the Brown Funeral Home ("Brown"). In 2015, Brown, which is Caucasian-owned,[46] buried 65 White decedents and 0 Black decedents and Anderson, which is presumably African-American-owned, buried 0 White decedents and 15 Black decedents.[47] Since the onset of the MBVS statistics, Brown only buries White decedents and Anderson only buries Black decedents. Even in counties that have Black coroners, the same disparity exists. In 2015, Mackel Funeral Home located in Adams County, (which has a Black coroner, James E. Lee,[48]) buried 0 White decedents and 37 Black decedents. Similarly, Laird Funeral Home, presumably White-owned, buried 145 White decedents and 1 Black decedent.[49] The statistics are consistent from year to year. Attached to the Motion as an exhibit are the 2011 − 2016 MBVS statistics.

## APPLICABLE LAW

Fed. R. Civ. P. 56 provides that if the pleadings and submissions reflect no genuine issue as to any material fact, a party is entitled to summary judgment as a matter of law. In determining whether there is a genuine issue of material fact, the Court views all facts and draws all reasonable inferences in favor of the non-moving party.[50] Summary judgment is mandated when a party fails to make a sufficient showing to establish the existence of an essential element to prove a party's case and on which that party will bear the burden of proof at the time of trial.[51]

---

[46] *See generally EXHIBIT "H"*.

[47] *See EXHIBIT "G"* at p. Harrison County-001643.

[48] *See EXHIBIT "I"*.

[49] *Id.*

[50] *See Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F. 3d 233, 235 (5th Cir. 2003).

[51] *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[52] Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."[53] When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.[54]

In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.[55] "A qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law."[56] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[57]

The Mississippi Tort Claims Act ("MTCA"), MISS. CODE ANN. § 11-46-9, provides:

> (1)    A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

---

[52] *Monell v. Dept. of Soc. Serv.'s of City of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[53] *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (*citation omitted*)

[54] *See, e.g.*, *Castro Romero v. Becken,* 256 F.3d 349, 355 (5th Cir.2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *see also Flores v. Cameron County, Tex.,* 92 F.3d 258, 261 (5th Cir.1996).

[55] *See Jones v. Lowndes County, Miss.,* 678 F.3d 344, 349 (5th Cir. 2012).

[56] *See Atteberry v. Nocona General Hospital,* 430 F.3d 245, 253 (5th Cir.2005) (citation omitted).

[57] *See Malley v. Briggs,* 475 U.S. 335, 341(1986).

(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid; and

(b) Based upon the exercise or performance or the failure to exercise or perform of a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.[58]

Traditionally for an Equal Protection claim, a 1983 Plaintiff must show in contesting summary judgment that a state actor intentionally discriminated against Plaintiff because of membership in a protected class.[59] Plaintiff cannot state a 42 USC § 1981 claim unless he has, or would have rights under existing or proposed, contract that he wishes to make or enforce.[60] Essential elements of a Title VI claim are (1) there is race or national origin discrimination, and (2) the entity engaged in discrimination is receiving federal assistance.[61] MISS. CODE ANN. § 41-61-63(3) states: "**a medical examiner shall not use his position or authority to favor any particular funeral home or funeral homes**."[62] MISS. CODE ANN. § 11-46-3 prescribes:

**(1)** The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract.

---

[58] *See* MISS. CODE ANN. § 11-46-9(1)(b) and (d).

[59] *See Nance v. New Orleans and Baton Rouge Steamship Pilots Ass'n*, 2006 WL 925533, *5 (5th Cir. 2006); citing to Williams v. Bramer, 180 F. 3d 699, 705 (5th Cir. 1999).

[60] *See Domino's Pizza v. McDonald*, 546 U.S. 470 (2006).

[61] *See Washington v. Jackson State Universtiy*, 532 F. Supp. 2d 804, 810 (S.D. Miss. 2006).

[62] The rotation system proposed by the Plaintiffs would cause Hargrove to violate this statute, while he up to this point adhered to it in his discretion.

We therefore hold that MISS.CODE ANN. § 11–46–3 grants immunity to the state and its political subdivisions for "breach of implied term or condition of any warranty or contract.[63] Although the MTCA does not apply to "pure contract actions," it does apply to claims for tortious breach of contract: "The clear intent of the [L]egislature in enacting [the MTCA] was to immunize the State and its political subdivisions from any tortious conduct, including tortious breach of ... contract."[64] Fraud in the inducement arises when a party to a contract makes a fraudulent misrepresentation, *i.e.,* by asserting information he knows to be untrue, for the purpose of inducing the innocent party t¶ enter into a contract. Contracts entered under such circumstances are voidable by the innocent party; however, the innocent party must first establish the presence of the misrepresentation or fraud alleged, which requires proving, by clear and convincing evidence, the following elements:

> (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury. [65]

In considering the heightened clear and convincing standard for such claims, the "Mississippi Supreme Court has affirmed a grant of summary judgment in a fraud case where the court was satisfied that a jury applying that high standard to the known facts could not reasonably find a fraud to have been committed."[66]

In order to prevail on an intentional infliction of emotional distress claim, the plaintiff must establish that the defendant's conduct "was wanton and willful and evoked outrage or

---

[63] *See City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703 (Miss. 2005).
[64] *See Aries Building Systems, LLC v. Pike County Board of Supervisors*, 2017 WL 902905, *4 (S.D. Miss. 2017); *citing to City of Grenada v. Whitten Aviation, Inc.,* 755 So.2d 1208, 1213 (Miss. Ct. App. 1999).
[65] *See Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. 2004).
[66] *See McGee v. Swarek,* 733 So.2d 308, 312(¶ 13) (Miss.Ct.App.1998).

revulsion."[67]  The action of the defendant "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[68]

The terms "reckless," "willful," and "wanton" refer to conduct that "is so far from a proper state of mind that it is treated in many respects as if harm was intended."[69]  "The usual meaning assigned to ... [these] terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."[70]  Such conduct "usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow."[71]

Under Mississippi law, a conspiracy is a *combination of persons* for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully."[72]  Two or more parties must come to an agreement—or meeting of the minds—to form a conspiracy.[73]  These Mississippi cases suggest that a conspiracy cannot be formed unless two separate, independent parties reach an agreement.[74]

---

[67] *See Riley v. F.A. Richard & Assocs., Inc.,* 16 So.3d 708, 719 (¶ 33) (Miss.Ct.App.2009) (*citations omitted*)

[68] *Id.* (quoting *Speed v. Scott,* 787 So.2d 626, 630 (¶ 18) (Miss.2001)).

[69] *See Maldonado v. Kelly,* 768 So.2d 906, 910 (Miss.2000) (*emphasis removed*) (quoting *Maye v. Pearl River County,* 758 So.2d 391, 394 (Miss.1999)).

[70] *See Maldonado,* 768 So.2d at 910 (*emphasis removed*) (quoting *Maye,* 758 So.2d at 394).

[71] *See Maldonado,* 768 So.2d at 910 (quoting *Maye,* 758 So.2d at 394).

[72] *See Gallagher Bassett Servs. v. Jeffcoat,* 887 So.2d 777, 786 (Miss.2004) (*emphasis added*).

[73] *Id.* at 786–87; *see also Braddock Law Firm, PLLC v. Becnel,* No.2012–CA–345–COA, 2013 Miss.App. LEXIS 473, *10–*11, 2013 WL 3985008 (Miss.Ct.App. Aug. 6, 2013)

[74] *See Wesley Health System, LLC v. Forrest County Bd. of Sup'rs,* 2014 WL 232109, *11 (S.D. Miss. 2014)

# ARGUMENT

## I. NO GENUINE ISSUE OF MATERIAL FACT EXISTS SUPPORTING ANY DISCRIMINATION ON THE PART OF HARGROVE OR HARRISON COUNTY

### A. THE CLAIMS AGAINST HARGROVE IN HIS OFFICIAL CAPACITY ARE REDUNDANT AND SHOULD BE DISMISSED

Plaintiffs have brought claims against Hargrove in both his individual and official capacity. The Harrison County Board of Supervisors is a named defendant in this suit, therefore "the government entity itself is a defendant in the litigation." In *Castro Romero*, the Fifth Circuit held:

> "when the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.[75]

Since the government entity itself is a defendant in this case, the Court should dismiss all claims brought against Hargrove in his official capacity.

### B. THERE IS NO VALID CLAIM AGAINST HARGROVE IN HIS INDIVIDUAL CAPACITY

Plaintiffs' constitutional claims against Hargrove in his individual capacity likewise fail.

> In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.[76]

It is clear that there are only a few cases where Hargrove has any authority on the removal issue and those are restricted to instances where a family member cannot be quickly located and

---

[75] See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001).
[76] *See Jones v. Lowndes County, Miss*., 678 F.3d 344, 349 (5th Cir.2012).

refrigeration is necessary. In these limited and conditional instances, there has been no evidence presented that Hargrove acted wrongfully.

Plaintiffs have neither established that Hargrove has committed any wrongful actions or that they suffered any constitutional deprivation, therefore they have no valid constitutional claim against Hargrove in his individual capacity.

### C. HARGROVE FOLLOWED THE DECEDENT'S PRE-SELECTION DESIGNATION OR THE FAMILY MEMBERS FUNERAL HOME SELECTION AND IS IMMUNE FROM SUIT UNDER BOTH THE MTCA AND THE QUALIFIED IMMUNITY DOCTRINE

In the cases where Hargrove had to make the call[77] to a funeral home for removal, Hargrove has always followed the decedent's or the family's preference as to funeral home selection, in compliance with MISS. CODE ANN. § 73-11-58. The select cases where Hargrove sent a body to a funeral home other than the one selected by the decedent or their family is restricted to autopsies under the exclusive control of the pathologist or when the family cannot be immediately located and the body must be properly refrigerated in to avoid decomposition. In the cases of unclaimed bodies, Hargrove followed the clear language of MISS. CODE ANN. § 41-39-5.

Harrison County spends $150.00 for a removal and $500.00 for a pauper's burial and does not pay funeral homes any additional expense for refrigeration.[78] The only two Plaintiff funeral homes who had refrigeration were Hall's and Marshall's.[79] Marshall's had a 3-person cooler capacity and Hall's only had the capacity for 4 persons. Hall's charged $75.00/day for body refrigeration costs.

---

[77] These are few cases, as most deaths occur at hospices and nursing homes, where the nurses at those facilities call the funeral homes chosen by decedent or their family. There are also a large number of deaths that occur at hospitals and in these hospital staff will often call the funeral home. Additionally, there are the many cases where the police will call the funeral home or the decedent's family will call the funeral home.

[78] *See* MISS. CODE ANN. § 41-39-5.

[79] Marshall's has only had a cooler since March of 2015.

Other than an autopsy case, Plaintiffs have not presented any evidence indicating a single event when Hargrove directed the body to a funeral home contrary to the family's wishes. As discussed, in autopsy cases, the body is removed by the funeral home where the autopsy is to take place (or after January 2015 removed by Riemann's for transport to Pearl), and is thereafter returned to the funeral home chosen by the family for burial services.

The comparison between the 2015 MBVS statistics and the 2015 Coroner's files (for Riemann's and Marshall's) show that there was actually a higher percentage of Black decedents sent to White-owned funeral home Riemann's (4% to 1%) and White decedents sent to Black-owned funeral home Marshall's for burials (32% to 23%) from the Coroner's cases then there was amongst all MBVS recorded funeral home burials in 2015.[80] .

Additionally, the statewide statistics for every county dispute Plaintiffs' claims that Hargrove was discriminating, as Harrison County actually has more Whites buried at Black-owned funeral homes and Blacks buried at White-owned funeral homes than any other county in the state, including those counties which have Black elected Coroners.

Hargrove has never had any control of the funeral home where autopsies are performed. Prior to January 2015, Dr. McGarry made this decision. Dr. McGarry was an independent contractor who performed autopsies for multiple counties on the Mississippi Gulf Coast. Hargrove could not force Dr. McGarry to perform an autopsy at any particular funeral home or homes, the location of these services were purely Dr. McGarry's choice alone. After Dr. McGarry's death, autopsies were no longer performed at any Harrison County funeral home and were instead completed in Pearl. It is impossible for Hargrove to have discriminated against the

---

[80] Riemann's Black burials was 4% amongst Coroner's cases and 1% amongst all MBVS recorded cases and Marshall's White burials was 32% amongst Coroner's cases and 23% amongst all MBVS recorded cases.

Plaintiffs' in the performance of autopsies, as he has never had the decision over where they were performed.

### i. HARGROVE'S MTCA IMMUNITY

Hargrove is entitled to MTCA immunity from Plaintiffs' claims as there is no genuine issue of material fact that Hargrove was at all times a governmental employee acting within the scope of his employment, acting in good faith reliance upon a statute (MISS. CODE ANN. §§ 73-11-58 and 41-39-5). There is no dispute Hargrove was performing a clearly discretionary function.

### ii. HARGROVE'S QUALIFIED IMMUNITY

As Hargrove was performing a discretionary function, Plaintiffs must demonstrate the existence of a genuine issue that Hargrove knowingly violated established laws or that he failed to objectively follow established laws. Hargrove actions were objectively reasonable in light of then clearly established laws (MISS. CODE ANN. §§ 73-11-58 and 41-39-5). As such, Hargrove is entitled to qualified immunity

### D. PLAINTIFFS' CLAIMS HAVE NO MERIT

P  Plaintiffs have not presented any evidence that Hargrove intentionally discriminated against the Plaintiffs[81]  and therefore their Equal Protection claim (Count 1) should be dismissed. Plaintiffs' 42 USC § 1981 claim (Count 2) is meritless. They have not presented any evidence of the existence of a contract[82] with Hargrove or Harrison County and therefore there is no violation of any protected right.. Plaintiffs cannot maintain their Title VI claim (Count 3), because they have not presented any evidence of discrimination on the part of the Defendants. Plaintiffs' due process claim under MS Const. Art. 3 § 14 (Count 4) cannot be sustained because there is no evidence of deprivation of the Plaintiff's rights..

---

[81] *See generally Nance v. New Orleans and Baton Rouge Steamship Pilots Ass'n*, 2006 WL 925533, *5 (5th Cir. 2006); citing to Williams v. Bramer, 180 F. 3d 699, 705 (5th Cir. 1999).
[82] *See generally Dominos Pizza v. McDonald*, 546 U.S. 470 (2006).

Plaintiffs' claims under MISS. CODE ANN. § 41-61-63 (Count 5) are without merit.. Hargrove has no authority in the absence of a required autopsy to disregard a family member's preference as to the funeral home of choice. MISS.CODE ANN. § 11–46–3 grants immunity to the state and its political subdivisions for "breach of implied term or condition of any warranty or contract." Even if an implied contract, in some form or fashion, was created between Hargrove or Harrison County and the Plaintiffs, this claim cannot survive the statutory immunity defense.

Plaintiffs encounter similar problems with the claim of Fraud in the Inducement (Count 8), because there is no evidence of: an existing contract.[83] There is no evidence supporting the claim of negligent infliction of emotional distress (Count 9). First, the corporate entities are not entitled to assert such a claim. The individual Plaintiffs have presented no evidence that any of them suffered emotional distress because of Hargrove's alleged conduct. Plaintiffs have not produced any supporting medical documentation evidencing "emotional anguish" or any evidence of a manifested injury. Further, Plaintiffs have not shown that Hargrove's continued compliance with MISS. CODE ANN. § 73-11-58 constitutes conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,"[84] so as to justify this claim.

Similarly, Plaintiffs have not presented any evidence that Hargrove's compliance with state law in following the decedent's or family member's funeral home selections and requiring the proper refrigeration to prevent body decomposition constitutes conduct "so far from a proper state of mind that it is treated in many respects as if harm was intended."[85] The claim of Negligent or Willful and Wanton Conduct (Count 10) is without any basis. Finally, as to

---

[83] *See Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. 2004).
[84] *Id.* (quoting *Speed v. Scott, 787 So.2d 626, 630 (¶ 18) (Miss.2001)).*
[85] *Maldonado v. Kelly,* 768 So.2d 906, 910 (Miss.2000) (emphasis removed) (quoting *Maye v. Pearl River County,* 758 So.2d 391, 394 (Miss.1999)).

Plaintiffs' claim of a Civil Conspiracy (Count 11) between Defendants, Plaintiffs have not presented any evidence of an "unlawful purpose" on the part of Hargrove or Harrison County by faithfully complying with state law as to the right of the family to select a particular funeral home.

Plaintiffs have presented no genuine issue of material fact as to any of their claims and, accordingly, all of their claims should be dismissed by the grant of a summary judgment. The facts presented in this case demonstrate that Hargrove acted at all times with the utmost care in following the mandated provisions of MISS. CODE ANN. § 73-11-58 .

## CONCLUSION

The Defendant, GARY HARGROVE, moves the Court to grant him summary judgment on all of Plaintiffs' claims.

RESPECTFULLY SUBMITTED, this the 16th day of October, 2017.

**GARY HARGROVE,**
**in his individual and official capacity**

By: DANIEL T. SEAWELL (MSB# 105149)

And

HARRISON COUNTY BOARD OF
SUPERVISORS, and HARRISON COUNTY,
MISSISSIPPI, Defendants

By: /s/ Tim C. Holleman

**CERTIFICATE OF SERVICE**

I, Daniel T. Seawell, of the law firm Owen, Galloway, & Myers, P.L.L.C., do hereby certify that I have this date electronically filed the foregoing *DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* with the Clerk of the Court using the ECF system, which served a copy to all counsel record.

SO CERTIFIED, this the 16th day of October, 2017.

/s/ DANIEL T. SEAWELL (MSB# 105149)

JOE SAM OWEN (MSB# 3965)
DANIEL T. SEAWELL (MSB# 105149)
OWEN, GALLOWAY & MYERS, P.L.L.C.
1414 25th Avenue
Post Office Drawer 420
Gulfport, MS 39502-0420
TEL:   (228) 868-2821
FAX:   (228) 864-6421
EMAIL:       jso@owen-galloway.com
             dts@owen-galloway.com