# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION

| | |
|---|---|
| THEODORE WILLAMS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:16-cv-00266-KS-MTP |
| ) | |
| v. ) | Hon. Keith Starrett |
| ) | District Judge |
| GARY HARGROVE, *et al.*, ) | |
| ) | Hon. Michael T. Parker |
| Defendants. ) | Magistrate Judge |
| ) | |
| ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' REBUTTAL IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' UNTIMELY EXPERT DISCLOSURE**

NOW COME Plaintiffs THEODORE WILLIAMS, *et al.*, pursuant to Local Uniform Civil Rule 7(b), respectfully submit this Rebuttal in Support of Plaintiffs' Motion to Strike Defendants' Untimely Expert Disclosure, stating as follows:

## INTRODUCTION

Defendants waited until after the end of discovery to have their own expert review the Coroner files that have been in their possession since the outset of this case. After Plaintiffs disclosed Dr. Campbell's original report indicating he had reviewed the files, Defendants did not have their expert review the Coroner files. After Plaintiffs disclosed Dr. Campbell's supplemental report, Defendants did not have their expert review the Coroner files. When Defendants deposed Dr. Campbell, they did not have their expert review the files. Defendants' expert, Dr. Palmer, then produced a report indicating he had not reviewed the Coroner files. After Plaintiffs

1

sent discovery about the accuracy of the dataset, Defendants did not have their expert review the Coroner files. When Plaintiffs deposed Dr. Palmer, less than a week before the close of discovery, he had not reviewed the Coroner files. Now, after the close of discovery, Defendants claim they were "required" not just to produce a rebuttal to the rebuttal but that they do so by having their expert review files he could have reviewed all along. The argument fails.

Defendants have not cited a single authority in support of their position. Defendants have likewise offered no persuasive justification for their untimely disclosure. Their proffered reason—that Dr. Campbell gave "blatantly contradictory" testimony—is belied by the record. It is also belied by Defendants' conduct. But, even if they were right, Defendants would not be entitled to submit an untimely report expressing new opinions based upon files the expert could have reviewed long-ago. They would just have some points for cross-examination. Plaintiffs respectfully ask the motion be granted and the report be stricken.[1]

---

[1] Defendants make a number of unsubstantiated claims against Plaintiffs' counsel, suggesting that counsel acted with impropriety in timely disclosing a rebuttal report less than a week after deposing Defendants' expert, as required by the Case Management Order. The claim is baseless—Plaintiffs made timely disclosures by the due date because that is when they were due. Defendants allegations are not worth the time of this Court, and are not further addressed. The County defendants go further, insinuating that counsel have been dishonest or even fraudulent. *See* Dkt. 164 at 4 (claiming counsel "are upset only that they have been caught or exposed"). These allegations are completely unfounded. Indeed, the claims appear to be made for an improper purpose and without any factual basis. *Cf.* FED. R. CIV. P. 11(b). Plaintiffs' counsels have acted professionally and truthfully at every juncture. Since it would be a distraction, no other comment is warranted or made.

## ARGUMENT

### I. Defendants Have Failed To Address Controlling Law

Defendants have failed to cite any authority that supports their position or even provide an argument under either Local Rule 26(a) or the case law in support of their position. Indeed, Defendants have failed to address the factors Fifth Circuit courts (including this Court) consider when determining whether to permit or exclude an expert disclosure as untimely: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *See, e.g.*, *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991); *Dwiggins v. Claiborne Cty. Med. Ctr.*, 2017 WL 4780623, at *1 (S.D. Miss. Oct. 23, 2017); *Russ v. Safeco Ins. Co. of Am.*, 2013 WL 1310501, at *29 (S.D. Miss. Mar. 26, 2013). Application of these factors can result in an untimely expert report being stricken. *See, e.g.*, *Elliot v. Amadas Industries, Inc.*, 796 F.Supp.2d 796, 803-04 (S.D. Miss. 2011) (weighing the factors and striking an expert report).

At best, Defendants have addressed the first factor—the reason for the untimely disclosure—which is discussed below. But, Defendants do not at all address the importance of the witness (factor 2), or the possibility of curing any prejudice via a continuance (factor 4). Plaintiffs' discussion of those factors will not be repeated here and Defendants have forfeited their opportunity to address them.

As for prejudice itself (factor 3), Defendants assert without any explanation that Plaintiffs have not been prejudiced. *See* Dkt. 160 at 4; Dkt. 164 at 5. These bare

assertions are insufficient, and do not even attempt to address, let alone, overcome the arguments made in Plaintiffs opening memorandum. Plaintiffs have specifically identified and explained the substantial prejudice they would suffer if Defendants' expert were permitted to disclose entirely new opinions after the close of discovery and after the dispositive motion deadline. *See* Dkt. No. 154 at 14-15 (citing and discussing *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)).

As explained, the prejudice to Plaintiffs is real, given the fact that they relied—in producing their own rebuttal report, in sending discovery, and in how they conducted Dr. Palmer's deposition—upon Defendants' failure to disclose an expert who reviewed the files. Plaintiffs are prejudiced by entirely new opinions Dr. Palmer has submitted based upon that review. (Tellingly, having not argued otherwise, Defendants appear to concede that Dr. Palmer's opinions are new opinions based upon his new post-discovery review of the files.) In addition, coming after the dispositive motion and *Daubert* deadline, Plaintiffs have no opportunity to consider whether to exclude Dr. Palmer's new opinions. These forms of prejudice compound the "prejudice inherent to being forced to make late adjustments in trial preparation," and the Court should "control discovery abuses and cure prejudice by excluding improperly designated evidence." *Elliot*, 796 F. Supp. 2d at 804.

In addition, Plaintiffs cannot depose Dr. Palmer again, as discovery is over. This fact further militates in favor of striking the report, as courts "often find late expert designations prejudicial where the delay interferes with the opposing party's opportunity to depose the expert." *Dwiggins*, 2017 WL 4780623, at *2 (citing

*Geiserman*, 893 F.2d at 791-92, and *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)). Defendants' failures to address these issues warrant striking the report without further elaboration.

## II. Defendants Have Failed To Justify Their Untimely Disclosure

Defendants argue that their untimely expert disclosure is justified because of alleged inconsistencies between Dr. Campbell's rebuttal report and his deposition about his review of the Coroner files. For at least three reasons, this argument fails.

*First*, a review of the reports and the deposition demonstrate that Dr. Campbell remained consistent in his description of his review process.

*Second*, Defendants' conduct does not comport with their purported justification. Defendants did not raise the issue of "blatant contradictions" with Plaintiffs' counsel, Defendants did not seek to strike the rebuttal report, and Defendants did not mention any purported issue in their *Daubert* motion.

*Third,* even assuming Dr. Campbell's testimony and rebuttal report were materially inconsistent, such would not be a basis for allowing Defendants to have their expert look at evidence he could have looked at all along and issue entirely new opinions. At most, any inconsistency is a potential point for cross-examination.

### A. Dr. Campbell's Rebuttal Report Does Not Contradict his Testimony Or Provide New Opinions

Dr. Campbell has consistently maintained that he reviewed 200 of the Coroner files, and that he started with those in 2012, as stated in his rebuttal expert report. As part of his review, Dr. Campbell examined the contents of the Coroner files substantively to both understand the files themselves and to assure

5

himself the manner in which the data was being coded was correct. Dr. Campbell "spent a lot of time trying to understand [the] internal structure [of the Coroner Files] and how they migrated to the spreadsheets." Ex. G August 8-9, 2017 Deposition of Dr. Campbell at 130. He did this by reviewing extensively a subset of the files coded in the dataset. In both his original and supplemental report, Dr. Campbell explained:

> I reviewed numerous Harrison County Coroner files from 2012-2016 and five spreadsheets provided to me by Plaintiffs' attorneys…that served as an index of objective data from the files pertaining to this time period. I received a voluminous set of Coroners Files and reviewed them extensively in order to gain familiarity with the contents of those files.

Ex. B (Report and Supplemental Report of Dr. Campbell) at 1, 18.

In his deposition, which took place over two days, Dr. Campbell was asked about these statements. In response to Defendants' questions, he repeatedly testified that the number of files he extensively reviewed was approximately 200, and that he believed the files were from 2012 and 2013. *See, e.g.*, Ex. G at 61 ("Q. And do you know how many files of the coroner's files, the 5,000 coroner's files you went through at all? A. Approximately 200."); *id.* at 64 ("As I said, I looked at approximately 200 cases.); *id.* at 131 ("Q. How many did you look at? A. A total of roughly 200."); *id.* at 132 ("Q. Do you know how many of them you actually looked at? A. I told you, approximately 200."); *id.* at 257-58 ("Q. But my understanding is, you only reviewed approximately 200 files of the more than 5000 that are here. A. That's correct."); *id.* at 259 ("I looked at 200 from the years 2012 and 2013.").

After Dr. Campbell's deposition, Defendants' expert Dr. Palmer issued a

6

report attacking the data quality of Dr. Campbell's report. Dr. Palmer's report specifically challenged Dr. Campbell's review process, namely that he had "not provided any numerical information that measures the accuracy of the coding." *See* Ex. C Original Report of Dr. Chester Palmer at 1-4. In response, Dr. Campbell reaffirmed his prior testimony and original report concerning the files he had reviewed, stating:

> As I stated in my original report, I began this project by reading through some 200 coroner's case files and examining the corresponding spreadsheet entries in order to understand the structure of the data and to assure myself that the logic of the Excel data records was correct, and also to ensure that the spreadsheet entries conformed to the information in the coroner's file. For the files that I examined, I found no errors in the form of discrepancies between the original file and the information as recorded on the spreadsheet. The files chosen were the first 200 entries in the 2012 coroner's record file. The files are stored in date order so that the first 200 entries corresponded to cases occurring roughly in the first two months of 2012.

Ex. H Campbell Rebuttal Report at 1.

Defendants claim that Dr. Campbell's deposition comment that he is "not sure" exactly which files he reviewed is contradictory to his rebuttal report. *See* Dkt. 160 at 2; Dkt. 164 at 3, 5. This is not the case. Dr. Campbell testified at length that he reviewed approximately 200 Coroner files given to him. He did not make a specific list of each file. Nor did he memorize the contents of each file in order to specifically point to which of the roughly 200 files he reviewed. Statistics experts are not required to memorize the data on which they rely. *See Kelly v. Paschall*, 2005 WL 5988648, at *4 (W.D. Tex. Apr. 19, 2005) (experts are not required to "have a perfect memory when asked specific questions about a specific statistical entry").

However, Dr. Campbell did testify that he recalled reviewing the files in the order it was given to him (and produced to Plaintiffs). *See* Ex. G at 62 ("When I first started this, I just pulled up, if I recall correctly, 2012. And I was going through them one at a time, beginning with case 1, in 2012 and so forth."). In addition, Dr. Campbell testified that he started with the 2012 files and that the majority of the 200 came from this set. *See id.* at 134 ("Q: Out of the 200 files you looked at, can you tell us in what years, what files you looked at? A. The majority of them were from 2012 and 2013. . . ."). Dr. Campbell's rebuttal report merely affirms that he looked at approximately 200 files, which is where he began his review, and that the bulk of which came from 2012—which is exactly what he said at his deposition. *See* Ex. H at 1. There is nothing contradictory here.

Defendants further argue that Dr. Campbell's testimony that he was "looking to understand the structure of the file and the various documents in them" is contradictory to his rebuttal report that he extensively reviewed the files. *See* Dkt. 160 at 2. Defendants appear to misunderstand Dr. Campbell's testimony and review process.[2] Given the objective nature of the coding of the files, this aspect of Dr. Campbell's work was fairly straightforward. As discussed in Plaintiff's response to Defendants' Motion to Exclude, the Coroner files were coded objectively along 32 variables. *See* Dkt. No. 163 at 4-5; Ex. A (Spreadsheet of Coroner's Files). For each

---

[2] Indeed, counsel's comments during the deposition suggest confusion. *See, e.g.*, Ex. G at 56 ("Q. I don't understand that, but go ahead."); *id.* at 136 ("Q. I didn't like statistics when I took it, and I don't like it now."); *id.* at 124 ("Q. So what it's doing -- and I'm a little bit confused."); *id.* at 163 ("Q. All right. I'm just confused…"); *id.* at 332 "("Q. I'm confused."); *id.* at 426 ("Q. First off, I want to make sure I'm correct. This just gets confusing.").

variable, the coding options were pre-determined—a person coding a particular file was forced to choose from a pre-set "dropdown" cell in the spreadsheet. The coding of each file was based on what appeared on the face of the forms and other documents in the file. That the review was straightforward does not mean it was not extensive or, as Defendants insinuate, that it did not happen at all.[3]

### B. Defendants' Actions Undermine Their Alleged Justification

Defendants' claim that based upon Dr. Campbell's "contradictions" that they were "required" to check the first 100 files themselves, and only to do so after receipt of the rebuttal report. But, this argument is belied by the record. For one, Defendants had Dr. Campbell's deposition testimony before producing their own expert report. Likewise, when asked in discovery to identify any errors in the dataset or spreadsheets, Defendants refused to do so.

Indeed, Defendants' own conduct after the rebuttal report was disclosed reveals that their argument fails. Defendants did not object to Plaintiffs' expert designation when made. Nor did Defendants reach out to Plaintiffs—as required under Local Rule 37(a)—to reach out in good faith about filing a subsequent report based upon Plaintiffs' rebuttal. Nor did Defendants mention any purported "contradiction" between Dr. Campbell's report and deposition in their *Daubert* motion. In fact, the *Daubert* motion does not mention the rebuttal report at all.

---

[3] Defendants misstate Dr. Campbell's testimony that he reviewed "the first five or six files from 2012." Dkt. 160 at 2; Dkt. 164 at 3, 5. Dr. Campbell's testimony is that "out of 200 files," he reviewed "five or six pieces of information in each one." Ex. G at 134.

Defendants' failures are even more egregious given the fact that the Coroner files were always in play. Plaintiffs made that abundantly clear in seeking to have the records compelled. Dkt. 55, at 2-5. Plaintiffs made that abundantly clear in disclosing an expert report concerning the 2012-2013 files. Plaintiffs made that abundantly clear in disclosing a supplemental report concerning all of the produced files, from 2012-2016. Plaintiffs also made that clear by seeking discovery as to the dataset. Dkt. 116. Plaintiffs also made this clear in their questioning of Defendants' expert, which confirmed he had not reviewed the files. *See* Dkt. 154 at 6.

In the end, nothing was stopping Defendants from having their expert review their own files and do so in a timely manner that did not engender the reliance of Plaintiffs about the scope of the expert opinions in play at the close of discovery. Defendants did not make a peep until the dispositive motion deadline, and did not disclose their report until the next day. Notably, courts have rejected the very argument Defendants make here. In *Elliot*, this Court rejected the argument that an expert disclosure based upon new information was due because that information—there, the location of a combine to be inspected—had been available much earlier in the case. 796 F. Supp.2d at 804. The expert did not inspect the combine until "two days prior to his deposition, almost seven weeks after Plaintiffs' extended designation deadline, and almost three weeks after the discovery deadline." *Id.* On that record, "[a]ny potential argument by Plaintiffs that compliance with the Court's scheduling orders was impossible is belied by the above record." *Id.* (citing *Sierra Club*, 73 F.3d at 571 n. 46, 573 (where it was known that a

10

particular element of harm would be an issue since the action was filed, and the party had over nine months to solicit experts and prepare reports by the designations deadline, they should have produced more detailed disclosures, despite their claim that compliance was "impossible" under the circumstances)).

Consider also *In Matter of Horizon Vessels, Inc.*, where the defendants attempted to justify late disclosure of an expert in by arguing that it was only after the plaintiff's rebuttal report that criticisms of its survey work surfaced and that it did not need a surveying expert before that time. 2006 WL 2022896, at *2 (S.D. Tex. July 17, 2006). The Southern District Court of Texas found that argument was "simply incorrect," holding that because the plaintiff's "performance in surveying and monitoring placement of the anchors has always been an issue in this case," the defendants were not justified in their untimely disclosure. *Id.*

This Court should reject Defendants' argument as in *Elliot* and *Horizon Vessels*. Just as in those cases, the Coroner files has always been an issue in this case—Defendants' expert could have reviewed the Coroner files and proffered opinions based on his review at any point prior to the deadline. There is no reason for the Court to excuse Defendants' late disclosure of new opinions based on evidence they have had all along. *See also Smith v. Johnson & Johnson*, 2011 WL 3876997, at *4 (S.D. Miss. Aug. 31, 2011) (striking affidavit when materials relied upon by expert were available prior to designation deadline); *Pratt v. Landings at Barksdale*, 2013 WL 5375951, at *2 (W.D. La. Sept. 24, 2013) (striking a declaration

11

after finding it contained new opinions that "appear to be based upon information available prior to the deadline for service of initial expert reports").

### C. Cross Examination, Not A New Untimely Report, Is the Remedy for Inconsistent Testimony

Even assuming Defendants were right about "contradictions" between Campbell's deposition and rebuttal report, they have not at all illustrated why the extreme remedy would be allowing them to disclose an untimely expert with new opinions based upon documents he could have reviewed well-before the close of discovery. Indeed, Defendants have failed to even address the applicable factors described above. Moreover, unlike Defendants' untimely disclosure, Dr. Campbell's timely rebuttal report offers no new opinions to the case.

At most, Defendants can cross examine Dr. Campbell about not being able to identify, from memory, every single file he reviewed. Indeed, "if the discrepancies in [Campbell's] testimony are as glaring as [Defendants'] suggest[], his expert opinion is ripe for cross-examination." *Derouen v. Hercules Liftboat Co.*, LLC, 2015 WL 13528499, at *6 (E.D. La. Sept. 4, 2015). It is well established that, it is "the province of the jury to determine if the unknown data detracts from the credibility of the experts' conclusions and if the conclusions offered by the experts are correct." *Fed. Ins. Co. v. Gen. Elec. Co.*, 2009 WL 4842501, at *6 (S.D. Miss. Dec. 9, 2009); *see also Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.,* 2008 WL 11344916, at *3 (E.D. Tex. Aug. 29, 2008) ("discussing argument that expert's "deposition testimony . . . is inconsistent with his expert report" and holding that "[s]uch a discrepancy, to the extent that it exists, goes to [the experts] credibility,

rather than his methodology, and can, of course, be called to the jury's attention by competent counsel during cross-examination").

Accordingly, there is simply no merit to the claim that because Dr. Campbell said at one or two points he was "unsure" exactly about every single detail, that Defendants should be allowed to alter their entire course altogether with a new untimely expert report; they can ask Dr. Campbell about it at trial.

### D. Defendants' Remaining Contentions Fail

At bottom, Defendants' response fails to explain why this Court should excuse their untimely disclosure. Besides their incorrect claims that Dr. Campbell's testimony was "contradictory," Defendants' remaining arguments do not offer any actual justification for the delay.[4]

First, the Harrison County Defendants claim that they provided notice to Plaintiffs of their late disclosure "as promptly as possible." Dkt. 164 at 3; *see also id.* at 2 (claiming defendants "promptly gave notice to the Plaintiffs as soon as practicable"). These statements are untrue. Defendants never advised Plaintiffs that they wished to disclose an additional expert report after the close of discovery.

---

[4] Defendants Harrison County and the Board of Supervisors toss around accusations of Dr. Campbell's untruthfulness without any evidence supporting their claims. The allegations are false. Such careless and over-the-top allegations should be condemned by this Court. Plaintiffs see no need to respond to the claim, other than to note that, in addition to being baseless, the "credibility of an expert's conclusions is for the jury to determine," not for Defense counsel to unilaterally assert. *Metro. Prop. & Cas. Ins. Co. v. Clayco Const. Grp.*, 2010 WL 200009, at *5 (S.D. Miss. Jan. 14, 2010); *see also OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) ("'[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.'" (quoting *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012)).

Defendants first notified Plaintiff's of their intention through an ECF notification (which wrongly claimed that the untimely report had been disclosed). *See* Dkt. 140.

Second, the nature of the work done illustrates further that Defendants did not give "prompt notice." This is a discovery matter, but Defendants never reached out to determine Plaintiffs' position before disclosing their untimely report. Indeed, the extensive nature of the new work in the untimely report—where Defendants' counsel provided Dr. Palmer with a lengthy spreadsheet and where Dr. Palmer reviewed 100 files—belies the idea that the first day Defendants could give Plaintiffs notice of their intention was the date of the dispositive motion deadline. Accordingly, Defendants never sought to meet and confer about the scope of Dr. Palmer's untimely report. And they never sought agreement for an extension. Instead, it was Plaintiffs who sought to confer, and Defendants provided *no justification whatsoever* when Plaintiffs inquired about the late disclosure.[5]

## CONCLUSION

Plaintiffs respectfully ask that this Court to grant their Motion and strike Defendants' untimely expert disclosure.

---

[5] Defendants' suggestion that they are justified in failing to meet the Court's deadlines because of the time of the day that prior disclosures were made is a distraction. *See* Dkt. 160 at 4. The fact is: Plaintiffs met the deadline in that instance and Defendants have not here. Nonetheless, Plaintiffs' behavior with respect to deadlines is no justification for Defendants' untimely disclosure. *See Maxey v. Gen. Motors Corp.*, 1996 WL 692222, at *2 (N.D. Miss. Nov. 18, 1996) (denying defendant's untimely motion, holding defendant "can find no solace in pointing the finger back at the plaintiff").

DATE: November 21, 2017					RESPECTFULLY SUBMITTED,

						**THEODORE WILLIAMS, *et al.***

						By:	/s/ David B. Owens
							*One of Plaintiff's Attorneys*


*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| Michael Kanovitz* | Robert McDuff | Beth L. Orlansky |
| Steven Art* | 767 N. Congress St. | Kiara A. Taite |
| David B. Owens* | Jackson, MS 39202 | Mississippi Center for |
| Katherine A. Roche* | (601) 969-0802 | Justice |
| LOEVY & LOEVY | rbm@mcdufflaw.com | 963 Division St. |
| 311 N. Aberdeen St., 3rd fl. | | Biloxi, MS 39530 |
| Chicago, IL 60647 | | (228) 435-7248 |
| (312) 243-5900 | | borlansky@mscenter |
| (312) 243-5902 (fax) | | forjustice.org |
| steve@loevy.com | | |

* Admitted *pro hac vice*


## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, hereby certify that on November 21, 2017, I filed the foregoing **PLAINTIFFS' REBUTTAL IN SUPPORT OF THEIR MOTION TO STRIKE** using the Court's CM/ECF system, which effected service on all counsel of record.

						By:	/s/ David B. Owens
							*One of Plaintiffs' Attorneys*

15