# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| THEODORE WILLAMS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:16-cv-00266-KS-MTP |
| | ) |
| v. | ) Hon. Keith Starrett |
| | ) District Judge |
| GARY HARGROVE, *et al.*, | ) |
| | ) Hon. Michael T. Parker |
| Defendants. | ) Magistrate Judge |
| | ) |
| | ) JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT PLAINTIFFS' MOTION *IN LIMINE* NO. 3
TO ADMIT THE OBJECTIVE DATASET OF 5,821 CORONER FILES**

NOW COME Plaintiffs THEODORE WILLIAMS, *et al.*, by their undersigned attorneys, respectfully move *in limine* seeking to admit the objective dataset of 5,821 Coroner Files. In support, Plaintiffs state:

**Introduction**

Defendant Coroner Gary Hargrove's is not involved in all deaths in Harrison County, Mississippi; only those involving the "public interest," as defined by state law. In each of the cases in which the Coroner is involved an official administrative file is created concerning that decedent (the "Coroner File"). The Coroner opens such a file for approximately half of the deaths occurring in Harrison County each year. Memorandum, Dkt. 161, at 20-21.

In this case, the Defendants produced and Plaintiffs analyzed Coroner Files from 2012 to mid 2016, which amounted to 5,821 individual Coroner Files. In each

instance, the Coroner File includes key evidence that goes to the heart of this race-discrimination suit: the race of the decedent; the cause of death; the funeral home that removed a decedents body; which funeral performed funeral home services; whether the Coroner ordered an autopsy; whether the decedent was indigent; whether the Coroner, one of his deputies, or a family member signed a "release of body" form; and the list goes on.

In the aggregate, the 5,821 Coroner Files are a clear picture of the entirety of the Coroner's work for this period of time. We know how many cases involve white decedents; how many involve black decedents; how many were indigent; how many times the Coroner signed a release-of-body form; etc. Plainly, in determining whether the Coroner had a practice of discriminating against Plaintiffs on account of their race, evidence of what the Coroner did in these cases is a core part of the claim. For example, among other things, the Coroner Files reveal that, in the more than 300 cases where a release-of-body form was signed by the Coroner or one of his deputies, the Coroner and his deputies *never* authorized removal of a white decedent to a black-owned funeral home. Campbell Supp. Report, Dkt. 159-3, at 14. Other objective information in the files similarly shows a plain pattern of race discrimination.

These files will certainly be admitted at trial. *See* Dkt. 205 (motion *in limine* to admit the files). The objective information in each Coroner File has been coded and placed into a straightforward spreadsheet, recording nearly 40 variables for each file, for a total of more than 200,000 entries. *Daubert Hearing*, Ex. 7. This

dataset has been coded entirely objectively, and with one arguable exception, the spreadsheet is self-explanatory. Because the information in the dataset is self-explanatory, there is no need for a witness to testify about how a decedent's race was determined from a particular file, or what funeral home conducted the removal, or whether there was a release of body form in the file and who signed it. The dataset simply aggregates objective information that is obvious on the face of the paper documents in each file.

Nonetheless, in the course of proceedings concerning Defendants' unmeritorious challenge to Plaintiffs' experts, Defendants have raised all manner of baseless challenges to the dataset—it is their "Hail Mary" by which they hope to eliminate powerful and damning evidence of race discrimination. One of Defendants' contentions is that the Court should not admit a summary of the Coroner Files. That argument lacks merit.

There is no doubt that the information contained within the Coroner Files is relevant and admissible. The question is *how* it be submitted to the jury, not *whether* it will be at all. Rather than have the jury digest the information in these voluminous records by viewing a simple, straightforward spreadsheet, Defendants seem to propose a much more laborious method for introducing this evidence. Defendants would like the summary of evidence barred, apparently preferring that Plaintiffs engage in days and days of live testimony with the Coroner on the stand, admitting each of the 5,821 files one-by-one, and requiring live testimony on each of what are currently more than 200,000 entries in the spreadsheet. *See* Dkt. 192, at

12-21 (arguing the dataset is inadmissible); Dkt. 190, at 21-22 (same). Adopting Defendant's approach would plainly be a waste of everyone's time. It would expand the length of the trial by weeks; it would conceivably take at least two entire weeks (and probably more) just to present all 5,821 files to the jury and have each entry in the datasheet matched to the physical files as Plaintiffs recreate the dataset in open court entry by entry.

Luckily, there is a solution: Rule 1006 of the Federal Rules of Evidence provides for the admission of summary charts to prove the content of voluminous writings that "cannot be conveniently examined in court." FED. R. EVID. 1006. This is the "*only* practicable means" of making the contents of the 5,821 Coroner Files "available to judge and jury." *Id.* (Advisory Committee Note) (emphasis added).

Defendants' prematurely logged complaints about the admissibility of the spreadsheet, and now is the time to address them head-on. The arguments are entirely misplaced. For one, there is no absolute requirement that a "sponsoring witness" be provided—that is not a requirement on the face Rule 1006, and Fifth Circuit makes it clear that no such witness is required either. The purpose of requiring a sponsoring witness is also unnecessary given the self-evident nature of the dataset and coding in this case. The spreadsheets are not the sort of "summary" that involve interpretive questions about what went into each column of the document, as is seen in many criminal cases where the government creates a summary that is meant to illustrate complex criminal enterprise. Instead, the summary is obvious and objective. The spreadsheets should be admitted.

# DISCUSSION

## I. Applicable Law

Federal Rule of Evidence 1006 allows admission of summaries when (1) the evidence is voluminous, and (2) review by the jury would be inconvenient. *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001). There is no doubt that the 5,821 Coroner Files are voluminous, and having the jury examine each file would be extremely "inconvenient," to put it mildly.

Rule 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006. There are only two elements required by the Rule itself—that the records be voluminous, and they be provided to the opposing party. *Cf. United States v. Smith*, 822 F.3d 755, 759-60 (5th Cir. 2016) (noting the government satisfied "*all* of the elements of Rule 1006," which it considered (a) that the charts summarized voluminous records" and (b) that the opposing party "received the underlying records before trial") (emphasis added); *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991) ("Rule 1006 requires *only* that the writings or records to be examined be voluminous and that in-court examination be inconvenient.") (emphasis added); *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990) (same). Application of Rule 1006 is a matter for this Court's discretion. *United States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983).

5

## II. The Records Are Voluminous and Cannot Be Presented to the Court and Jury In Any Other Practicable Way

The Coroner Files examined in this case are certainly so voluminous that they cannot be conveniently examined in Court. It would take weeks and weeks and weeks to examine each Coroner File (which are typically about 10 pages long, but many of which are considerably longer, including many in the 20-30 page range) if they had to be admitted and discussed in open court. One can only imagine the impatience of the jury with watching a witness testify thousands of times, file by file, to the exact same thing again and again—the race of the decedent, the funeral home that the decedent was removed to, whether an autopsy was ordered, whether there is a release of body form in the file, whether the release of body form was signed by the Coroner or one of his deputies, whether the decedent was indigent, and the list goes on.

There should also be no doubt, apart from extraordinary length of time it would take to go through nearly 6,000 Coroner Files, the information from these files would be lost on the jury without some sort of demonstrative. As the Fifth Circuit has explained, "the average jury cannot be rationally expected to compile on its own such charts and summaries which would piece together evidence previously admitted and revealing a pattern." *United States v. Winn*, 948 F.2d 145, 158 (5th Cir. 1991); *see also United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990) ("We cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt."). Accordingly, Plaintiffs would essentially be recreating their

6

dataset live in front of the jury with the Coroner on the stand.

The Fifth Circuit has found records to be sufficiently voluminous on far less information than provided in the spreadsheets here. *See, e.g.*, *United States v. Jennings*, 724 F.2d 436, 441-42 (5th Cir. 1984) ("[I]nsofar as the documents underlying these summary charts include almost two hundred pages of material and substantial amounts of mathematical calculations, we cannot find that the trial court abused its discretion in allowing their use for the convenience of the jury."); *United States v. Clements*, 588 F.2d 1030, 1039 (5th Cir. 1979) ("This rule was intended precisely for a case such as this where it would have been unnecessarily time-consuming to play the tapes of all 3,000 calls.").

### III. The Summary Charts Are Accurate and Reliable

Plaintiffs recognize that summary charts must "accurately reflect the underlying records." *United States v. Taylor*, 210 F.3d 311, 315-16 (5th Cir. 2000). However, summary charts "cannot be excluded simply because they *might* be inaccurate." *Right of Way Maintenance Co. v. Gyro-Trac, Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (citing Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 1006.05[4] (Joseph M. McClaughlin ed., 2d ed. 2007)). In addition, as with many disputes, cross-examination is the proper method for allowing the jury to determine the weight to be given to particular evidence, including disputed summary charts. Indeed, "[i]nsignificant discrepancies between summary evidence and the source material usually is an insufficient ground for excluding the summary." WRIGHT & MILLER, 31 FED. PRAC. & PROC. EVID. § 8044 (1st ed.). And,

7

while not required, juries can specifically be told that Rule 1006 summaries "are valid only to the extent that they accurately reflect the underlying supporting evidence." *United States v. Whitfield*, 590 F.3d 325, 365 (5th Cir. 2009; *see also, e.g.*, *United States v. Echols*, 574 F. App'x 350, 357 n.6 (5th Cir. 2014) (quoting the following jury instruction: "[c]ertain charts and summaries have been received into evidence. Charts and summaries are valid only to the extent that they accurately reflect the underlying supporting evidence. You should give them only such weight as you think they deserve1").

The dataset here is absolutely sufficiently accurate. Plaintiff specifically incorporates the lengthy discussion of these issues—namely, the fact that Defendants did not identify any errors in discovery; that their challenges to Dr. Campbell in their *Daubert* motion focus exclusively on one of nearly 40 variables in the spreadsheets, and the fact that Defendants purported errors are no errors at all. Response, Dkt. 163, at 9-15, 18-19, & 30-33; Supp. Resp., Dkt. 193, at 3-7, & 12-17.

In supplement—emphasizing Plaintiffs sent discovery asking Defendants to identify any errors in the underlying dataset or coding, and they identified zero—it bears mentioning that Defendants *still* have not identified systemic coding errors in the data. Their expert, Dr. Palmer has identified a single objective error (one decedent's race was wrong), and Defendants' identified (arguably) one ambiguous release of body form at the *Daubert* hearing. The fact that Defendants have only identified two actual coding errors from 5,821 files involving over 200,000 entries actually proves the point—the data is reliable and accurate. Any actual mistakes

8

are inadvertent and miniscule.[1] Plaintiffs are also happy to minimally revise the dataset to correct the handful of actual coding errors identified by the Defendants. *Cf. Mack*, 2015 WL 7313869, at *1-*2 (M.D. La. Nov. 20, 2015) (approving of this procedure). Whether or not that's done does not affect the conclusion, which is that the dataset demonstrates a profound pattern of race discrimination that the jury should be allowed to see.

In the end, despite their brand new tables and heavy commentary, it remains the case that the vast supermajority of purported errors are not errors at all. Defendants want the objective evidence to be coded differently because they would like to superimpose a subjective inference on to that data. But, that is not a problem with the data or the spreadsheets at all. As a consequence, the Defendants cannot

---

[1] In his supplemental *Daubert* brief, Defendant Hargrove presents a new and misleading argument to the Court as it concerns file Number 12-0014. *See* Dkt. 190, at 15-16. For one, Hargrove has erroneously claimed that this file was included in both Table 9 and in Table 11, which is simply not true. As Dr. Campbell explained, cases with a release of body form were removed from consideration in Table 11 altogether. That is the whole point of Table 11—cases where there was no release of body form, no pre-need form, no autopsy, or anything like that. Ex. 1 (Transcript of *Daubert* Hearing) at 51:3-55:1, 95:3-96:15. In addition, Hargrove's suggestion that the example is "especially troubling" and indicative of the "unreliability" of the spreadsheet is, in fact, what is troubling. File 12-0014 includes a release of body form, signed by Hargrove. P-8835. It was properly coded as having a Release of Body form, signed by Hargrove. Defendant's suggestion that anything was improper fails completely. On that form, above the Coroner's signature, it states "DAUGHTER CINDY ___ PHONE XXX-XXX-XXXX." *Id.* That does not change the fact that the form was signed by the Coroner, and that is what the information in Table 9 indicates. But, to muddy the waters, Hargrove wants the Court to infer that somehow mention of the daughter nullifies the objective coding and should have been coded differently, despite the fact that the Coroner signed the release form. Doing that would be an entirely subjective coding decision. At most, while the daughter's name could support a possible inference that the daughter, and not the Coroner, controlled the removal of the body, that is not a coding issue or something that has to do with the underlying data. The variables were coded correctly, and if Defendants want to argue that the Coroner signing a release of body form did not mean he did not direct the removal of that body, they are entitled to do so before the jury. To suggest that Plaintiffs have done something wrong, troubling, or "unreliable" is baseless.

9

show anything more than pure speculation that, on the whole, the dataset "might" be inaccurate. *See* Dkt. 190 at 15 (asserting without any proof that there errors are "prevalent throughout" the coding of the dataset). That is a question for the jury to determine.

## IV. The Spreadsheets Are Valid Summaries

Defendants have complained that, even thought the dataset was coded for nearly 40 different variables, that Plaintiffs should have apparently coded for "hospice" or "hospital" or "nursing home," on their theory that the mere mention of these words in a Coroner File automatically means that the Coroner did not make the decision with respect to the removal of a decedent's body. First, it is worth pointing out that the dataset does record deaths that occur in hospice, the hospital, or a nursing home. *See, e.g.*, Hearing Exhibit P7, at P7525 ("Place of Death" column). To the extent that Defendants' wanted to present evidence to the jury of each time the word "hospice," "hospital," or "nursing home" appeared in a file, they were entitled to make their own spreadsheet coding the data in this way. They will also be able to point out that the data is not coded this way. But, that sort of lawyer argument has absolutely nothing to do with the admissibility of the spreadsheets.

Indeed, there is no rule that, to be admissible, a summary chart of voluminous records must account for and code every imaginable variable and piece of information in the underlying documents. They are, in fact, *summaries. See United States v. Towns*, 718 F.3d 404, 408 n.4 (5th Cir. 2013) ("It is of no consequence that the purchase logs introduced at trial were only portions (primarily

10

those related to Melvin Towns and other conspirators) of a larger bank of business records containing all the pseudoephedrine purchase logs for each store. A proponent may offer summaries from voluminous records." (citing FED. R. EVID. 1006)). Indeed, while Plaintiffs' dataset is objective, neutral, and fulsome, the summaries would still be admissible even if they only summarized evidence favoring Plaintiffs. *See United States v. Whitfield*, 590 F.3d 325, 354 (5th Cir. 2009). For that reason, though the data was coded in a completely objective manner, if the data supports and inference that is harmful to the Defendants, that is still does not undermine the admissibility of the spreadsheet. *See United States v. Armstrong*, 619 F.3d 380, 384 (5th Cir. 2010) ("The presence of an inference itself is not prejudicial, for under rule 1006, "[t]he essential requirement is not that the charts be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in the record.'" (quoting *Buck*, 324 F.3d at 791)).

In short, if Defendants do not like the inference that flows from the fact that the Coroner has not ever signed a release of body form for a white decedent to go to a black-owned funeral home, a fact that supports an inference of race discrimination, the problem is not the underlying data or with the spreadsheet—it is the Coroner's practices that they should consider changing.

## V. A Proper Foundation Exists for the Coroner Files

Defendants' positions concerning the admissibility of a summary chart of voluminous records under Rule 1006 are contrary to Fifth Circuit law and involve a misunderstanding of the differences between summaries admitted under Rule 1006

11

as opposed to Rule 611.

### A. The Foundation for the Spreadsheets Can Be Made Without a Chart Preparer

There appears to be little dispute that the Coroner Files are business records, and admissible as such. *See* FED. R. EVID. 803(6)(B).

Nor does there appear to be any dispute that there are a number of witnesses who can lay the foundation for the Coroner Files more generally, including what sorts of documents are included in them, and when they are created. The Coroner, his two deputies that were deposed in discovery, and the Coroner's longtime office manager (Joy Yates) are certainly all perfectly capable witnesses to lay the foundation for the Coroner Files.

In addition, the actual Coroner Files are available for all, and were produced by the Defendants in this matter. This is all that Rule 1006, by its plain terms requires. That being the case, there is an adequate foundation for a summary chart indicating the contents of the Coroner Files.

In prior briefing, Defendants have argued that "summary exhibits need a sponsoring witness to be admissible," who must be the person who actually prepared the charts. Dkt. 190, at 21-22.[2] Notably absent from Defendants' arguments on this score is citation to any Fifth Circuit authority indicating that the only person who can lay the foundation for a summary chart under Rule 1006 has to be a "chart preparer."

Plaintiffs' have reviewed every single Fifth Circuit decision citing Rule 1006,

---

[2] The Coroner cited no authority for this proposition in his supplemental brief.

and not a single decision mandates as a precondition to admission a chart preparer be produced to testify. In fact, Fifth Circuit law is to the Contrary: "Rule 1006 . . . does not require an authenticating witness." *Right of Way Maintenance Co. v. Gyro-Trac, Inc.*, 303 F. App'x 229, 230 (5th Cir. 2008) (per curiam) (citing J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 1006.05[4] (Joseph M. McLaughlin ed., 2d ed.2007); *see also, e.g.*, *Mack v. Benjamin*, 2015 WL 7313869, at *1-*2 (M.D. La. Nov. 20, 2015) (applying *Right of Way Maintenance*). In addition, Defendants have ignored "one proper method of laying a foundation for admission of summary charts—admitting the documentation on which the summary is based." *United States v. Stephens*, 779 F.2d 232, 239 (5th Cir. 1985) (citing 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1006 [03], p. 100607 (1983)); *see also Mack*, 2015 WL 731869, at *2 (rejecting challenge to summary chart admitted under Rule 1006 produced after discovery had closed where defendants specifically argued that "no information [was] provided as to [the] author" of the summary chart).

The Fifth Circuit has also approved of precisely what Plaintiffs suggest here: a witness with knowledge of the Coroner Files can lay the foundation for the files themselves and then an expert can talk about the spreadsheet itself. *See Clements*, 588 F.2d at 1039 (where an expert who testified to figures in phone calls, but following testimony who could actually lay the foundation for the underlying calls). As a result, despite Defendants' insinuation otherwise, it is of no consequence that Plaintiffs were involved in preparing the spreadsheets—they have an adequate foundation and are accurate and reliable. *See Moore v. Johns-Manville Sales Corp.*,

13

781 F.2d 1061, 1066 (5th Cir. 1986) (affirming admission of "product identification charts *compiled by the plaintiffs*" (emphasis added)).

Given these authorities, Defendants' contention that a chart preparer is required and their argument that there is some impropriety in the fact that Plaintiffs and their lawyers oversaw the coding of the data are entirely misplaced.

### B. Rule 611 and Rule 1006 Work Differently, and the Dataset should be Admitted Under Rule 1006.

Putting aside their extensive citation to non-controlling law from other circuits, Defendants appear to be relying upon *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001), and authorities that have cited *Bishop*. *See* Rebuttal, Dkt. 181, at 14-15 & 14 n.27. There, the Fifth Circuit stated that voluminous records are generally admissible when (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning use of the charts. *Bishop*, 264 F.3d at 547.

But, these factors really apply to summaries that are not themselves evidence and instead summarize evidence *already before* the jury under Rule 611(a), rather than summaries of voluminous records under Rule 1006. *See Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 431 (5th Cir. 1985) (noting, it is critical to distinguish between charts or summaries as *evidence* and charts or summaries as *pedagogical devices*); *United States v. Palazzo*, 372 F. App'x 445, 452 n.5 (5th Cir. 2010) (explaining the difference between summaries of evidence under Rule 611 and

14

summary charts under Rule 1006).The Fifth Circuit emphasized this distinction in

*United States v. Buck*, explaining:

> Rule 1006 allows admission of summaries in lieu of having the voluminous originals presented at trial. This use of summaries in this manner should be distinguished from charts and summaries used only for demonstrative purposes to clarify or amplify argument based on evidence that has already been admitted.... Although some Courts have considered such charts and summaries under Rule 1006, the Rule is really not applicable because pedagogical summaries are not evidence. Rather, they are demonstrative aids governed by Rules 403 and 611.

324 F.3d 786, 701 (5th Cir. 2003) (quoting 5 STEPHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL § 1006.02[5], at 1006–6 (8th ed.2002)).

Indeed, though the Fifth Circuit has not been a model of clarity or consistency in each instance, *see United States v. Smyth*, 556 F.2d 1179, 1183-84 (5th Cir. 1977) (noting varying discussions in the law), the four considerations from *Bishop*, at most, inform the Court's discretion here.[3] In other words, while they might be *sufficient*, none of those factors are *necessary* under Rule 1006.

Review of the factors bears this out. First, while *Bishop* mentioned evidence being "already before the jury," there is no requirement under Rule 1006 that the underlying summarized evidence be admitted in open court. *See Buck*, 324 F.3d at 790-91; *Palazzo*, 372 F. App'x 445, at 452 n.5. Such a requirement would undermine the entire purpose of Rule 1006. *See United States v. Smith*, 822 F.3d 755, 759 (5th Cir. 2016) (rejecting argument that it was error to admit a summary chart of phone records because the underlying phone records were not admitted into evidence);

---

[3] At core, though, they really factors to be considered under Rule 611 (where a party prepares a chart based upon prior testimony and that summary is not treated as actual evidence), rather than a voluminous record under Rule 1006 (where a chart is itself admitted as evidence).

15

*United States v. Valencia*, 600 F.3d 389, 417-18 (5th Cir. 2010) ("*Bishop* did not mandate that the databases be admitted into evidence before [a witness] could summarize their contents, as this would contravene the plain language and purposes of Rule 1006."); *United States v. Jones*, 664 F.3d 966, 976 (5th Cir. 2011) (affirming this Court's admission of summary bank records where all of those underlying records were not admitted); *United States v. Rogers*, 2010 WL 3120205, at * 3 (S.D. Miss. Aug. 6, 2010).

Likewise, though mentioned in *Bishop*, there is no requirement that a limiting instruction be given; instead "a summary chart that meets the requirements of Rule 1006 is itself evidence and no instruction is needed." *United States v. Williams*, 822 F.3d 561, 575 (5th Cir. 2001); *see also Smith*, 822 F.3d at 759 (applying *Williams* and rejecting contention that a jury instruction was needed). But, while not *required*, the Fifth Circuit has approved the use of an instruction nonetheless. *See*, *supra*, at 8 (quoting *Whitfield* and *Echols*).

The same is true of the comment that a "chart-preparer" be available for cross-examination; while it is sometimes helpful in assessing the admissibility of a summary chart, it is not required under Rule 1006. *Bishop* does not indicate that this is *mandatory*.[4] And, the cases cited above, indicate that *no* chart preparer is required at all. *See Right of Way Maintenance Co.*, 303 F. App'x at 230 ("Rule 1006 . . . does not require an authenticating witness."); *Mack*, 2015 WL 7313869, at *1-*2

---

[4] Plaintiffs have attempted to examine every case in the Fifth Circuit involving Rule 1006, and have not found a single one indicating a district court abused its discretion by admitting a summary chart under Rule 1006 on the basis that the chart preparer did not testify or was not cross examined.

16

(same).Unsurprisingly, then, the Fifth Circuit has affirmed the admission of evidence where the person who made the summary chart was not made available to testify. *See, e.g., Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 186 (5th Cir. 2014) (affirming admission of summary chart where preparer was not available for cross examination and where opposing party was "able to argue about claimed inaccuracies in the evidence"); *cf. United States v. Hudson*, 550 F. App'x 207, 210 (5th Cir. 2013) (affirming admission of summary evidence concerning phone records where the summary witness did not work for the phone companies, the phone companies did not authorize the witness, and the witness "was not the custodian of records").

In sum, there is no requirement that the "chart preparer" be the person who lays the foundation for the admission of a summary chart. The records themselves are the foundation. The Coroner and his staff can lay the foundation. In addition, as the *Daubert* hearing made perfectly clear, Dr. Campbell is more than capable of describing what each of the variables in the chart mean, and how the coding conventions for each column. The drop-down menus from the excel spreadsheet are perfectly plain. This is precisely why Plaintiffs provided the exhibit to the Court indicating exactly what the drop-down menus look like. *See Daubert* Hearing, Ex. P14. And, to the extent Variable 35 requires a little bit more explanation that the other variables, Dr. Campbell can explain precisely what that variable means and how it was coded; specifically, Dr. Campbell can explain that Variable 35 involved finding cases where, as Defendants themselves understand, "there is no clear

17

unambiguous documentation someone made the decision as to the selection of a funeral home." Board Supp. Br., Dkt. 192, at 3.

## CONCLUSION

Plaintiffs' respectfully request that the foregoing motion be granted, and that the spreadsheets summarizing the Coroner Files from 2012-mid 2016, Hearing Exhibit No. 7, be admitted as evidence for trial.

DATE: February 22, 2018

RESPECTFULLY SUBMITTED,

**THEODORE WILLIAMS,** *et al.*

By: /s/ David B. Owens
*One of Plaintiff's Attorneys*

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| Michael Kanovitz* | Robert McDuff | Beth L. Orlansky |
| Steven Art* | 767 N. Congress St. | Kiara A. Taite |
| David B. Owens* | Jackson, MS 39202 | Mississippi Center for |
| Katherine A. Roche* | (601) 969-0802 |    Justice |
| LOEVY & LOEVY | rbm@mcdufflaw.com | 963 Division St. |
| 311 N. Aberdeen St., 3rd fl. | | Biloxi, MS 39530 |
| Chicago, IL 60647 | | (228) 435-7248 |
| (312) 243-5900 | | borlansky@mscenter |
| (312) 243-5902 (fax) | |    forjustice.org |
| steve@loevy.com | | |
| * Admitted *pro hac vice* | | |

## CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, hereby certify that on February 22, 2018, I filed the foregoing MEMORANDUM IN SUPPORT OF **PLAINTIFFS' MOTION IN LIMINE NO. 3 TO BAR REFERENCE TO ANY CRIMES, WRONGS, OR OTHERS ACT OF PLANTIFFS OR THIRD-WITNESSES UNDER RULE 404(B)** using the Court's CM/ECF system, which effected service on all counsel of record.

By: /s/ David B. Owens
*One of Plaintiffs' Attorneys*