**THEODORE WILLIAMS,** *et al.*　　　　　　　　　　　　　　　　**PLAINTIFFS**

V.　　　　　　　　　　　　　　　**CIVIL ACTION NO. 1:16-CV-266-KS-MTP**

**GARY HARGROVE, in his individual capacity,** *et al.*　　　**DEFENDANTS**

# EXHIBIT "D"

# LOEVY & LOEVY

311 N. Aberdeen St., 3rd Floor, Chicago, Illinois 60607

October 2, 2017

*Via email*

| | |
|---|---|
| Tim Holleman | Joe Sam Owen |
| Patrick T. Guild | Daniel T. Seawall |
| Boyce Holleman and Associates, P.A. | Owen, Galloway & Myers, PLLC |
| 1720 23rd Avenue | P.O. Drawer 420 |
| Gulfport, Mississippi, 39501 | 1414 25th Avenue (39501) |
| | Gulfport, Mississippi 39502-0420 |

Re: *Williams, et al., v. Hargrove, et al.*, No. 16-cv-266 (S.D. Miss.)

Dear Counsel,

In supplement to prior disclosures and pursuant to Rule 26, please find attached Plaintiff's 7951-7953.

Best,

/s/ David B. Owens
David B. Owens

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

THEODORE WILLIAMS, *et al.*, )
                               ) Case No. 1:16-cv-00266-KS-MTP
   *Plaintiffs*,           )
                               ) Hon. Keith Starrett
   v.                          ) District Judge
                               )
GARY HARGROVE, *et al.*,   ) Hon. Michael T. Parker
                               ) Magistrate Judge
   *Defendants*.         )
                               ) JURY TRIAL DEMANDED

## **DECLARATION OF SONYA WILLIAMS BARNES**

       I, Sonya Williams Barnes, pursuant to 28 U.S.C. § 1746, being over 18 years of age and competent to testify as to the matters stated in this Declaration, testify as follows:

    1. I am over the age of 18 and am competent to testify to the matters stated below.

    2. I am a full-time employee at Lockett Williams Mortuary ("Lockett") and am familiar with every aspect of the operation of that business. I have worked at Lockett since 1999, and am primarily entrusted with running the day-to-day operations of the business. This includes, but is not limited to, coordinating removals, meeting with families, establishing funeral schedules and protocol, and responding to scenes where our business is involved. I am a licensed funeral director within the State of Mississippi.

    3. Lockett is a licensed mortuary, equipped to allow public officials (like the medical examiner, the coroner, or his deputies) to conduct their work, including but not limited to blood draws and autopsies.

    4. In addition to my full-time work at Lockett, I also serve as a member of the House of Representatives for the State of Mississippi, District No. 119.

    5. In the course of working for Lockett, I have become familiar with Gary Hargrove, the elected Coroner of Harrison County. I am also familiar with the difference between "coroner" cases in the mortuary performing initial post-death services are selected by the Corner, as well as other cases where, for a host of reasons, where a body will go is not decided by Coroner Hargrove.

    6. For coroner cases, my experience is that there has been no "rotation system" among all businesses. Instead, business is funneled nearly entirely to the white-owned mortuaries in the area.

    7. Coroner Hargrove and I have spoken about these issues at least twice. In the first, given my concern and understanding that we were not getting coroner calls, I asked Coroner Hargrove how we (Lockett) could to get coroner calls. Coroner Hargrove responded "what do you mean," and stated something to the effect of "I am the coroner and I do what I want to do." I took these comments to mean that Gary picked whoever he wanted, whenever he wanted. My experience confirms this understanding.

    8. For instance, though we have adequate facilities, before this lawsuit was filed Coroner

Hargrove would not do blood draws at Lockett. Instead, blood draws would be done elsewhere—most often at Riemann Family Funeral Homes ("Riemann")—even if a family had already decided to use Lockett for funeral services. Reimann often perform the removals in these cases.

9. Allowing removals to go to Reimann even when the family wants to go with Lockett provides a financial benefit to Reimann and denies one to Lockett.

10. The second time I spoke with Coroner Hargrove about the issue of Lockett not getting coroner work focused on autopsies. In that conversation, I asked Mr. Hargrove what would it take for autopsies to be done at Lockett. His response was that the "Coroner chooses where autopsies are going to be done."

11. Lockett has the facilities for autopsy services, but they are not performed there in coroner cases.

12. One of the most significant instances of this—where there were many coroner cases and we should have received a number of coroner cases—was after Hurricane Katrina. In the wake of that horrible tragedy, and even though we were among the very first mortuary's in town with electricity, we did not receive cases related to the hurricane. As a result, we did not receive any business or compensation from the Federal Emergency Management Agency, which was paying $6,500-$7,500 thousands of dollars for each person cared for by a mortuary. Given the extent of the devastation (hundreds died in Harrison Count), the impact on our business was substantial.

13. Coroner Hargrove's practice also includes asking white-owned funeral homes to perform removals, even if a black-owned mortuary is going to perform the funeral services. For example, I recall an instance involving a black man who was killed in a car accident on Harrsion Drive. His wife's name was Monica Pitman. After Mrs. Pitman's husband was killed, Coroner Hargrove sent Reimann Funeral Home, even though Mrs. Pitman had requested Lockett Williams Mortuary. Coroner Hargrove insisted that Reimann Funeral Home take the body. Mrs. Pitman insisted that Lockett Williams Mortuary provide services. When Lockett Williams arrived at the scene, a car from Reimann Funeral Home was leaving. Coroner Hargrove was on the scene at that time. Eventually, Coroner Hargrove relented, but only after causing some trauma to the family, and after denying the family their first request.

14. A similar thing happened with William Martin, former Supervisor on the Harrison County Board of Supervisors. When he died in 2015, his family asked Coroner Hargrove to use Lockett Williams Mortuary for the removal and other services. Coroner Hargrove instead assigned the removal to Reimann Funeral Home.

15. This was particularly devastating because, as a result of these experiences with Coroner Hargrove, and from hearing about others, I raised my concern that Coroner Hargrove was filtering business to the white-owned mortuaries to the exclusion of the black-owned businesses to Former Supervisor Martin before he passed away. In particular, I spoke with Mr. Martin and told about our concern that we were not getting bodies in coroner cases, and let him know it was a serious issue for Lockett and other black-owned mortuaries.

16. Having removals sent to Riemann's or another white-owned mortuary in coroner cases, significantly impacts our business. In many cases, having a removal come to your business is a significant aspect of business because families are undecided about which business they would like to use for mortuary services are more likely to stay in your mortuary rather than go out and seek someone else.

17. Though the exact subsequent services rendered can range, in having a family stay with Lockett is always financially important. The minimum service provided, a cremation is $1295 and the average funeral is roughly $7,500 but can reach up to $20,000 or more.

18. If Coroner Hargrove had used a neutral system, like a rotation, that would have given Lockett its fair share of business in coroner cases, Lockett Williams would have been able to expand its businesses, including possibly adding a second location and possibly establishing a cemetery.


I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

P007952

_____    _____
**Sonya Williams Barnes**                **Date**

P007953