# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**THEODORE WILLIAMS,** *et al.*                                       **PLAINTIFFS**

**V.**                          **CIVIL ACTION NO. 1:16-CV-266-KS-MTP**

**GARY HARGROVE, in his individual capacity,** *et al.*      **DEFENDANTS**

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*

The Defendants, GARY HARGROVE, in his individual capacity as Coroner of Harrison County and HARRISON COUNTY BOARD OF SUPERVISORS, and HARRISON COUNTY, MISSISSIPPI, file this Memorandum in Support of Motion *in Limine*, to-wit:

## ARGUMENT

The Defendants identified twelve areas to be excluded in their Motion *in Limine* [Doc. ]. Each of these areas is addressed in numerical order as follows:

### No. 1 – Plaintiffs' Counsel's 2012 – 2016 Spreadsheets or Datasets

This Court should exclude any and all references to the following during any aspect of the trial: the introduction into evidence of the 2012 – 2016 spreadsheets or dataset created by Plaintiffs' counsel, Loevy & Loevy, or their staff and any testimony, comments of counsel or witnesses, which are based on, rely upon or related to the spreadsheets. This specifically includes any testimony or opinions by Plaintiffs' expert economist John M. Gale, Ph.D., as the Court has already excluded the proposed expert testimony of Plaintiffs' expert statistician Richard T. Campbell, Ph.D., whose testimony was tied to the same unreliable spreadsheets.

Beginning in approximately late May to early June 2017 the Plaintiffs' attorneys and their staff established a "protocol"[1] for and then created the subject "dataset" or spreadsheets. The spreadsheets were based solely on Plaintiffs' attorneys and their staff's "extensive analysis"[2] of the 5,821 Coroner's files from 2012 through 2016. Plaintiffs' experts, statistician Dr. Campbell and economist Dr. Gale, relied principally on the spreadsheets in rendering their expert opinions. Dr. Gale used 5 tables to calculate his purported damages in this case. Each of the tables cite to the "2012 – 2016 Coroner Files Spreadsheets" as his "Sources." *See EXHIBIT "A"* – Dr. Gale Supplemental Expert Report at p. 6 – 11.

The "extensive analysis" undertaken by Plaintiffs' counsel was not a merely transference of data from voluminous records into a summary exhibit, but clearly required systematic judgment calls on the part of the spreadsheet creators. The spreadsheets are testimonial in nature and are nothing more than attorney argument cloaked in the veil of an "objective summary exhibit."

As soon as defense counsel became aware that the Plaintiffs' experts had no involvement or supervision in the protocol, formation or creation of the spreadsheets upon which Plaintiffs' experts principally relied in rendering their opinions, the Defendants immediately requested to depose the member(s) of Loevy's staff who created the spreadsheets. Such request was made

---

[1] The Court will recall the testimony of Campbell both in his deposition and the *Daubert* hearing that when you are doing a protocol, you can influence the outcome by deciding to put certain parameters or variables in the protocol, what data you are going to code. He admitted the protocol was important in statistics. Here, Plaintiffs' attorneys created the protocols but intentionally left out protocols such as the decedent being in hospice or a nursing home or the fact that a person in the order of priority set forth in MCA § 73-11-58 was present which excluded the Defendant, Hargrove, from making the decision or that the person died in a hospital, where the hospitals secure a release of body form from the family or person in control.

[2] In their *Daubert* Response, Plaintiffs' attorneys' stated they underwent an "extensive analysis of each one of the 5,821 files". *See* p. 3 Plaintiffs' Memorandum Response in Opposition to Defendants' Motion to Exclude [Doc. 163].

within the discovery period. However, Plaintiffs' counsel asserted the "work product" privilege, and refused to either identify such persons or offer them up for depositions.

The Fifth Circuit has instructed that "summary charts are, in the trial court's discretion, ordinarily admissible when:

> "(1) the charts are based on competent evidence before the jury;
>
> (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested;
> **(3) the person who prepared the charts is available for cross-examination**; and
> (4) the jury is properly instructed concerning their consideration of the charts." *See U.S. v. Bishop*, 264 F. 3d 535, 547 (5th Cir. 2001).

A necessary precondition to the admission of summary charts is that they accurately reflect the underlying records. The *Taylor* Court held it was error to admit into trial an organizational chart that did not accurately reflect the underlying testimony." *See U.S. v. Taylor*, 210 F. 3d 311, 315 - 316 (5th Cir. 2000). The Fifth Circuit follows the "general rule against *ex parte* evidence," but "there is a more specific requirement" here. Evidence in the form of a summary is admissible, 'provided cross-examination be allowed and the original records are available.'" *Wright v. Southwest Bank*, 554 F.2d 661, 663 (5th Cir. 1977) (fn. 5) (reversing judgment for employer in discrimination case where court received post-trial summaries prepared by counsel). Fed. R. Evid. 1006 "does not allow for the admission of a summary . . . that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. *BP Expl. & Prod. v. Cashman Equip. Corp.*, 2016 U.S. Dist. LEXIS 47781, at *23-24 (S.D. Tex. Apr. 8, 2016).

Mississippi Rules of Professional Conduct 3.7 states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

In *Solvay*, the Court held "even if the underlying data were admissible, the summary charts are not admissible because they were prepared by the party's lead counsel, who cannot serve as the proponent of the charts at trial." The *Solvay* Court in interpreting Texas Disciplinary Rules of Professional Conduct 3.8 (which is substantially similar to Miss. R. Prof'l Cond. 3.7) advised:

> "the principal concern over allowing a lawyer to serve as both an advocate and witness for the client is the possible confusion that those dual roles create for a finder of fact…If…the lawyer's testimony concerns a controversial or contested matter, combining the roles of the advocate and witness can unfairly prejudice the opposing party." *See U.S. v. Solvay*, 2016 WL 1258401, *13 (S.D. Tex. 2016).

The spreadsheets are not an admissible summary exhibit under Fed. R. Evid. 1006. The spreadsheets are a brazen attempt to pass off Plaintiffs' counsels' arguments as substantive evidence. The Plaintiffs have refused to identify a sponsoring witness who can attest to the preparation of the spreadsheets or their veracity. Further, pursuant to Miss. R. Prof'l Cond. 3.7, Plaintiffs' counsel cannot serve as the proponent of the spreadsheets at trial and be an advocate and a witness. Further, as has been previously demonstrated, the spreadsheets are riddled with inaccuracies. *See Defendants' Motion to Exclude and Supplemental Memorandum.*

Clearly the 2012 through 2016 coroner files spreadsheets dataset and/or any excel versions are not an accurate, non-prejudicial summary of voluminous evidence under Fed. R. Evid. 1006, but rather are improper attorney argument offered by Plaintiffs' attorneys who are an improper proponent of such an exhibit. The spreadsheets and any mention thereof should be excluded from trial. Additionally, Plaintiffs' economist Dr. Gale should not be allowed to testify

to his damages analysis as it is entirely based off of or reliant upon the 2012-2016 Coroner's files spreadsheets.

### No. 2 – Autopsies, Pre-Needs Contracts, Hospices and Nursing Homes

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding any intimation or suggestion that Coroner Gary Hargrove or his office had any decision-making authority on the selection of a decedent's funeral home destination in the following types of coroner cases:

   a. Decedents for which autopsies were performed;
   b. Decedents who had pre-needs contracts with funeral homes;
   c. Decedents who died in a hospice or nursing home setting and/or had a form indicating choice by a decedent or family member or by any of the persons listed on the hierarchy of persons prescribed in Miss. Code Ann. § 73-11-58;
   d. Decedents who died in a hospital and a release of body form was signed by either a family member or by any of the persons listed on the hierarchy of persons prescribed in Miss. Code Ann. 73-11-58.
   e. Decedents who died and a family member or any of the persons listed on the hierarchy of persons prescribed in Miss. Code Ann. § 73-11-58 was present at scene of death who had the right to make the decision over the coroner's authority.

Plaintiffs have not presented any evidence to contradict the fact that the Coroner's office did not have decision-making authority for the location of autopsies. Hargrove did not select the location where autopsies were performed. Prior to his death in January of 2015, Dr. McGarry made the decision of where autopsies were performed and his choice was Riemann's in Gulfport. Dr. McGarry was an independent contractor, not an employee of either Harrison County or Coroner's office, and he was the only licensed forensic pathologist in the area who performed autopsies. Hargrove was neither qualified nor able to perform autopsies. With the passing of Dr. McGarry, bodies had to be sent to the Mississippi Crime Lab in Pearl, MS for autopsies. Dr. McGarry was the only licensed forensic pathologist in the area capable of performing autopsies.

5

Hargrove is bound by law to determine a deceased's cause of death. Therefore, if an autopsy is necessary to identify a decedent's cause of death, then Hargrove has no choice but to follow the direction of the forensic pathologists qualified to perform autopsies.

Plaintiffs have not presented any evidence to contradict the fact that the Coroner's office did not have any decision-making authority as to the funeral home selection of decedents with pre-needs contracts. Decedents with pre-needs contracts are persons who previously entered into arrangements with selected funeral homes for their own mortuary services.

Plaintiffs have not presented any evidence to contradict the fact that the Coroner's office did not have any decision-making authority as to the funeral home selection of decedents who died in a hospice or nursing home setting and/or a form was present indicating decision by either decedent or family member or by any of the persons listed on the hierarchy of persons prescribed in Miss. Code Ann. § 73-11-58. In these cases a form was signed by a person other than Hargrove or one of his deputies that indicated the decedent's or their family's funeral home selection or a person was present listed on the hierarchy of persons prescribed in Miss. Code Ann. § 73-11-58 who had the right to make the decision over the coroner's authority.

Plaintiffs have not presented any evidence to contradict the fact that the Coroner's office did not have any decision-making authority as to the funeral home selection of decedents who died in a hospital and a release of body form was signed by either a family member or by any of the persons listed on the hierarchy of persons prescribed in Miss. Code Ann. 73-11-58. In these cases a release of body form was signed by a person other than Hargrove or one of his deputies which indicated the decedent's or their family's funeral home selection and gave the specified funeral home the ability to perform a removal from a hospital. Any mention at trial that in any of

these types of death cases Hargrove had the decision-making authority as to a decedent's funeral home selection is irrelevant and will only serve to confuse or mislead the jury.

### No. 3 – Hargrove's Jurisdiction

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection inferring that because a death case falls within the Coroner's jurisdiction, Hargrove or one of his deputies had or has the exclusive authority to decide which funeral home receives the body or that Hargrove's jurisdiction over a death case accords him the absolute right to make the decision on which funeral home receives the body.

The law and evidence in this case is uncontradicted. Hargrove's jurisdiction over a decedent only means that he has the authority to determine the cause of death and does not provide him the authority to select the funeral home. Any mention at trial to the contrary is irrelevant and will only serve to confuse or mislead the jury.

### No. 4 – Plaintiffs' Coolers

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection suggesting or inferring that any Plaintiff funeral home, other than Marshall's or J.T. Hall's, had a cooler capable of storing human remains for an indefinite period of time.

The Plaintiffs have only presented evidence that two (2) of the Plaintiff funeral homes, Marshall's and J.T. Hall's had body coolers during the material times of this suit and any mention at trial that any of the other Plaintiff funeral homes had coolers during this time period

is irrelevant and will only serve to confuse or mislead the jury. *See EXHIBIT "B"* - Depositions of Plaintiffs (Excerpts).

### No. 5 – Marshall's Cooler

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection inferring or suggesting that Marshall's Funeral Home possessed and/or used or utilized a body cooler or refrigeration unit capable of storing human remains for indefinite periods of time prior to 2015.

Plaintiffs Anthony and Gina Marshall have testified that prior to the 2015 construction of Marshall's crematory on Veteran's Avenue in Biloxi, which included a three person body cooler that was installed in 2015, that Marshall's did not utilize a body cooler or refrigeration unit for body storage. Any mention at trial to the contrary is irrelevant and will only serve to confuse or mislead the jury. *See EXHIBIT "C"* – Depositions of Anthony & Gina Marshall (Excerpts).

### No. 6 – Declaration of Sonya Williams Barnes

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding or referencing the declaration of Sonya Williams Barnes, which was not disclosed until October 2, 2017, the last day for discovery.

On the final day of discovery, Plaintiffs produced the declaration of Sonya Williams Barnes. This declaration is riddled with hearsay that does not fall under any of the recognized exceptions and is inadmissible. Any mention at trial to this declaration is improper will only serve to mislead the jury. *See EXHIBIT "D"* – Declaration of Sonya Williams Barnes.

## No. 7 – William Martin and John Johnson's Alleged Statements

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding or referencing any comments by William Martin and/or John Johnson concerning the merits of Plaintiffs' allegations of racism involving the Coroner's Office or the suggestion litigation should be pursued.

Plaintiff Eddie Hartwell testified he had a conversation with the late William Martin, a former Supervisor for the County, about the alleged racist practices of the Defendants. Hartwell testified that Mr. Martin allegedly told him that the Plaintiffs should pursue litigation against Defendants. Hartwell also testified he spoke with former supervisor John Johnson and that Johnson relayed to him his conversations with supervisor Connie Rockco who had spoken with Hargrove in relation to the Plaintiffs' alleged disparate treatment. The admission of such testimony is hearsay not within any recognized exception, irrelevant, more prejudicial than it probative and will only serve to mislead the jury. *See EXHIBIT "E"* – Deposition of Eddie Hartwell (Excerpts) at p. 88 – 90 and 112 - 113; *see also EXHIBIT "G"* – Deposition of John Johnson (Excerpts) at p. 13 - 16.

## No. 8 – Purported FBI Investigation

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding, referencing or concerning the Federal Bureau of Investigation ("FBI") or any statements made by the FBI regarding Plaintiffs' allegations of racism against the Coroner's Office.

Hartwell testified that after William Martin died he went to the FBI and that the FBI interviewed Connie Rockco. Hartwell could not identify the FBI agent that he spoke with, but said this FBI agent told him that the FBI could not find anything prosecutable on Hargrove, but that he had "an excellent civil rights lawsuit." Rockco testified that she never spoke to an FBI agent about any investigation into the Coroner's Office. The admission of Hartwell's testimony is hearsay not within any recognized exception, irrelevant, more prejudicial than it probative and will only serve to mislead the jury. *See* EXHIBIT "E" – Deposition of Eddie Hartwell (Excerpts) at p. 87, 90 - 92.

### No. 9 – Mississippi Tort Claims Act

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding or referencing any argument or discussion of causes of action subject to the Mississippi Tort Claims Act because such claims are exclusively subject to non-jury resolution.

The Plaintiffs have seven (7) remaining state law causes of action: (1) Equal Protection under Mississippi Constitution; (2) Miss. Code Ann. § 41-61-63; (3) Fraud in the Inducement; (4) Intentional or Reckless Infliction of Emotional Distress; (5) Negligent or Willful and Wanton Conduct; (6) Civil Conspiracy and (7) *Respondeat Superior*. As Hargrove is a county employee and this suit is against the Harrison County Board of Supervisors, a political subdivision, the state law claims must be resolved by the Court in accord with the Mississippi Tort Claims Act. *See* MISS. CODE ANN. § 11-46-13(1). As such any mention or argument of the Plaintiffs' state law claims in front of the jury is improper.

### No. 10 – Declaration of Anne Gottschalk

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions posed to any witness at any stage of the trial including jury selection regarding or referencing the declaration of Plaintiffs' counsel's paralegal Anne Gottschalk that may be offered to impeach the testimony of John Johnson.

After the close of discovery on October 16, 2017, Plaintiffs produced the declaration of Anne Gottschalk. Gottschalk is a paralegal at Loevy & Loevy and claims to have overheard a conversation between Johnson and Plaintiffs' counsel David Owens wherein Johnson told Owens that he was present during a conversation between Hargrove and Rockco and that Hargrove said something about it being "proper for black bodies to go to black-owned funeral homes and white bodies to go to white-owned funeral homes." This is meant to impeach Johnson's deposition testimony that he does not remember being a part of any conversation between Rockco and Hargrove on the subject of Hargrove's alleged disparate treatment of the Plaintiff funeral homes. Even assuming, *ad arguendo*, that Gottschalk was not a member of Loevy & Loevy, who has a pecuniary interest in this case, this is still hearsay not within any recognized exception, irrelevant, more prejudicial than it probative and will only serve to mislead the jury and is an improper attempt at impeachment. *See EXHIBIT "F"* – Declaration of Anne Gottschalk; *see also EXHIBIT "G"* – Deposition of John Johnson (Excerpts) at p. 13 - 16.

### No. 11 – Conversations between Plaintiffs' Counsel and John Johnson

This Court should exclude any and all references to the following during any aspect of the trial: any testimony, comments of counsel or witnesses, arguments of counsel or questions

posed to any witness at any stage of the trial including jury selection regarding or referencing any conversations that Plaintiffs' counsel or their staff had with John Johnson.

Any attempts by the Plaintiffs' counsel to mention any conversations they or their staff had with John Johnson, either by way of the declaration of Anne Gottschalk or otherwise, are improper as any such mention is hearsay not within any recognized exception, irrelevant, more prejudicial than it probative and will only serve to mislead the jury.

## CONCLUSION

The Court should grant, *in toto*, the Defendants' Motion *in Limine*.

RESPECTFULLY SUBMITTED, this the 27th day of February, 2018.

**GARY HARGROVE,
in his individual capacity**

By: /s/ DANIEL T. SEAWELL (MSB# 105149)

**And**

**HARRISON COUNTY BOARD OF SUPERVISORS, and HARRISON COUNTY, MISSISSIPPI**

By: /s/ TIM C. HOLLEMAN (MSB# 2526)

CERTIFICATE OF SERVICE

I, Daniel T. Seawell, of the law firm Owen, Galloway, & Myers, P.L.L.C., do hereby certify that I have this date electronically filed the foregoing *DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE* with the Clerk of the Court using the ECF system, which served a copy to all counsel record.

SO CERTIFIED, this the 27th day of February, 2018.

/s/  DANIEL T.  SEAWELL (MSB# 105149)

JOE SAM OWEN (MSB# 3965)
DANIEL T. SEAWELL (MSB# 105149)
OWEN, GALLOWAY & MYERS, P.L.L.C.
1414 25th Avenue
Post Office Drawer 420
Gulfport, MS 39502-0420
TEL:   (228) 868-2821
FAX:   (228) 864-6421
EMAIL:      jso@owen-galloway.com
            dts@owen-galloway.com