UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THEODORE WILLIAMS,** *et al.* **PLAINTIFFS**

**V.** **CIVIL ACTION NO. 1:16-CV-266-KS-MTP**

**GARY HARGROVE, in his individual capacity,** *et al.* **DEFENDANTS**

**DEFENDANT GARY HARGROVE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 18 TO ADMIT REVISED AND SUPPLEMENTED EXPERT REPORT OF DR. JOHN GALE AND TO PERMIT RELATED TESTIMONY, OR IN THE ALTERNATIVE, TO ALLOW HIM TO TESTIFY TO OPINIONS EXPRESSED IN CERTAIN PORTIONS OF THE REPORT**

Defendant, GARY HARGROVE, in his individual capacity as Coroner of Harrison County, files this Memorandum in Opposition to Plaintiffs' Motion *in Limine* No. 18 to Admit Revised and Supplemented Expert Report of Dr. John Gale and to Permit Related Testimony, or in the Alternative, to Allow Him to Testify to Opinions Expressed in Certain Portions of the Report [Doc. 329], to-wit:

## **INTRODUCTION**

This memorandum and the response were prepared with less than 24 hours of working time. Due to the fast track, defense counsel could not conceivably cover each and every aspect of the new report of Dr. Gale.

The Plaintiffs seek to admit and allow their damages expert, Dr. John Gale, to testify to what has been styled the *Supplemental Expert Report of John M. Gale, Ph.D. April 8, 2018* ("Dr.

Gale's New Report"). Dr. Gale's July 31, 2017 expert report[1] was primarily based on the excluded 2012 – 2016 Coroner File Spreadsheets and therein he calculated the Plaintiffs' damages to be $6,381,900 and in Dr. Gale's New Report, which is based on the Charts/Tables 1 – 6, he has calculated the Plaintiffs' damages to be $870,910.00. *See EXHIBIT "A"* at p. 27, ¶ 1; see also *EXHIBIT "B"* at p. 15 - 23. Dr. Gale's New Report is not a supplemental report but is merely a first time disclosed expert report that contains new opinions that were not produced until eight (8) days before trial. The Court should exclude Dr. Gale's New Report and any testimony which relates to the report.

## FACTS

The Amended Scheduling Order in this case listed the:

1. Plaintiffs' expert designation deadline is reset to July 1, 2017 (which the Court later extended to July 31, 2017);

2. Defendants' expert designation deadline is reset to August 1, 2017;

3. The discovery deadline is reset for October 2, 2017. *See EXHIBIT "C"* [Doc. 54].

The Plaintiffs have been aware of the likelihood that the 2012 - 2016 Coroner File Spreadsheets could be excluded since Dr. Campbell's deposition on August 9, 2017. However, it was not until the Court excluded the 2012 - 2016 Coroner File Spreadsheets and just prior to the Pretrial Conference before the Plaintiffs' counsel decided to craft new Tables/Charts[2] 1 – 6 upon which Dr. Gale bases his New Report. On March 15, 2018, during the course of the Pretrial

---

[1] The July 31, 2107 expert report cannot be considered as the first report of Dr. Gale and the subject April 8, 2018 expert report of Dr. Gale cannot be considered a supplemental report. This April 8, 2018 report is the only report provided to counsel with the damage calculations set forth therein. The July 31, 2017 report was effectively excluded because it was based in part on the excluded 2012-2016 spreadsheets and was predicated on 5,821 coroner files.

[2] The Plaintiffs produced 9 charts/tables after the pretrial conference and the court only allowed three charts/tables.

2

Conference the Court advised the parties that it would not allow new expert opinions or testimony in this case. The Court in its April 2, 2018 Order ruled that the Plaintiffs' Charts/Tables "cannot be used to make the assumption that Hargrove made the decision in each of these cases." *See EXHIBIT "D" - Court's Memorandum and Order* [Doc. 328] at p. 6, ¶ 1; citing to *Hart*, 295 F.3d at 459. On Sunday, April 8, the week before trial, the Plaintiffs produced Dr. Gale's New Report.

Dr. Gale's New Report assumes that Defendant Gary Hargrove makes the decision in every case where there is an autopsy, indigent/pauper burial or removals (and subsequent burials) when the Coroner or Deputy Coroner signs a Release of Body form. Dr. Gale's assumption as to the Coroner's control over all removals (and subsequent burials) when there is autopsy, indigent/pauper burial or when the Coroner or Deputy Coroner signs a Release of Body form affects his entire analysis.

> **"I have assumed that the Coroner made the decision about which funeral home performed the removal over the deaths shown in Table 1. Table 1 shows the distribution by race of these cases."** *See EXHIBIT "A"* **at p. 7, ¶ 1.**

Dr. Gale's Tables 2 – 4 is his opinion on how equal distribution of removals among 8 funeral homes should have worked, which he assumes are under the control of the Coroner. Therefrom, Dr. Gale opines that each of the eight (8) Harrison County funeral homes should have performed 87 removals out of the 696 he assumed were under the control of the Coroner's office. *See EXHIBIT "A"* at p. 8 - 10.

Dr. Gale's Table 5 is his opinion on how the equal distribution of autopsies among the eight funeral homes should have worked, which he assumes are under the control of the Coroner. Therefrom, Dr. Gale opines that each of the eight Harrison County funeral homes should have

had 62 autopsies performed at their funeral homes out of the 498 he assumed were under the control of the Coroner's office. *See EXHIBIT "A"* at p. 11.

Dr. Gale's Table 6 is his opinion on how the equal distribution of the paupers/indigents among the eight funeral homes should have worked, which he assumes are under the control of the Coroner. Therefrom, Dr. Gale opines that each of the eight Harrison County funeral homes should have performed 5 indigent burials at their funeral homes out of the 46 he assumed were under the control of the Coroner's office. *See EXHIBIT "A"* at p. 12.

Dr. Gale then opines that in 90% of the cases where a funeral home performed a removal that the same funeral home would also perform all of the funeral services for such decedent. Dr. Gale lists the revenue that each specific Plaintiff funeral home receives when it performs a funeral and terms this figure as "direct funeral revenue." Dr. Gale then opines that for the total amount of additional funerals the Plaintiffs would have received from their added removals that they also would receive an arbitrary additional 5% of funerals in what he terms "follow-on funeral revenue." Dr. Gale's then opines that if the Plaintiff funeral homes had performed these additional burials that each of the Plaintiff funeral homes would have been able to spend less money on advertising. *See EXHIBIT "A"* at p. 13 - 15.

> **"In addition to funeral revenue, the Plaintiffs did not enjoy the benefits from the advertising and promotion that providing a removal creates. Especially for new and growing funeral homes, it is important to create and maintain a positive public image. Simply by being seen performing removals, especially if covered by local television news and newspapers, a funeral home garners free publicity. This publicity substitutes for paid advertising the funeral home would have to pay for as a substitute."** *See EXHIBIT "A"* **at p. 14, ¶ 3 – p. 15, ¶ 1.**

Dr. Gale's Table 7 then calculates the "total damages" collectively and to each Plaintiff funeral home separately that would have been garnered from the additional removals, autopsies,

4

funerals, 5% follow-on revenue and less advertising expenditure[3] from the cases he assumes were under the Coroner's control and arrives at a collective total damage calculation of $870,910.00. *See EXHIBIT "A"* at p. 27.

## APPLICABLE CASE LAW

The Federal Rules of Evidence and interpretive case law have developed strict evidentiary guidelines for admission of expert testimony: the witness must be qualified; the testimony must pertain to scientific, technical or other specialized knowledge and the testimony must assist the trier of fact. The testimony must be: (1) based on sufficient facts or data; (2) the product of reliable principles and methods and (3) the witness must have applied the principles and methods reliably to the facts of the case.14

Under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, the party offering expert testimony bears the burden to prove that the witness is qualified and the testimony is relevant and reliable.15 "Expert "evidence that is no more than subjective belief or unsupported speculation is inadmissible under Rule 702. As to a reliability inquiry, a number of nonexclusive factors may be relevant, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.16

"Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See*

---

[3] Dr. Gale does not provide a specific damage calculation for the lesser amount of advertising that each funeral home would have expended if they had received his alleged "equal distribution" from the cases Dr. Gale assumed were under the Coroner's control.

5

*Watkins*, 121 F. 3d 984, 989 (5th Cir. 1997). In considering the admissibility of expert testimony, both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function.17 Whether expert testimony is reliable is a fact-specific inquiry. *See Burleson*, 393 F. 3d 577, 585 (5th Cir. 2004); *citing to* Fed. R. Evid. 702.

"A failure to validate data by itself can constitute grounds for excluding an expert report." *See Munoz v. Orr*, 200 F. 3d 291, 301 – 302 (5th Cir. 2000) (noting that an expert's reliance on data provided by a plaintiff, without conducting independent verification, gives rise to "common-sense skepticism" regarding the expert's evaluation). "In some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict." *See Viterbo v. Dow Chemical Co.*, 826 F. 2d 420, 422 (5th Cir. 1987). "In other words, McElroy's documentation was unreliable. And since McElroy's expert admittedly relied upon that documentation, the resulting opinion is also unreliable. It does not matter if the expert was unaware of the defects in McElroy's paperwork or not. An expert opinion, which is 'incomplete in a critical area' can be properly excluded. *See McElroy v. Evanston Insurance Company*, 2016 WL 2726859, *4 (S.D. Miss. 2016); *citing to Viterbo*, 826 F. 2d 420, 422 (5th Cir. 1987).

Fed. R. Civ. P. 26 provides:

> **(2) *Disclosure of Expert Testimony*.**
>
> **(A)** *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

6

**(B)** *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

  **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

  **(ii)** the facts or data considered by the witness in forming them;

  **(iii)** any exhibits that will be used to summarize or support them;

  **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

  **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

  **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

**(D)** *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

  **(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

  **(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E)** *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

In addition, "[b]ecause of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger v. State Farm*

*Mutual Automobile Insurance Co.,* 361 F.3d 875, 884 (5th Cir.2004) All these reasons warrant exclusion of Plaintiffs' expert. *See Rayco Distributors, Inc. v. Entrepreneur Sporting Technologies, LLC*, 2011 WL 3583405 (S.D. Miss. 2011).

## ARGUMENT

### A. DR. GALE'S NEW EXPERT REPORT IS NOT A SUPPLEMENTAL REPORT, IT IS NEW EXPERT OPINION

Dr. Gale's July 31, 2017 Report was inadmissible due to its reliance on the 2012 – 2016 Coroner File Spreadsheets. His new report relies on recently created Charts/Tables that were only provided to the Defendants' within the last several weeks in some semblance of a final form. Dr. Gale's New Report includes a damage calculation that is less than 1/7 of the total damages calculated in his July 31, 2017 Report. Dr. Gale's universe of cases he assumes were under the Coroner's control has shrunk from 5,821 cases to 696 cases. The Court advised the parties at the Pretrial Conference that it would not allow any new expert opinions in this case and Dr. Gale's New Report and any resulting testimony should be excluded.

### B. DR. GALE ASSUMES THE CORONER HAS CONTROL OVER ALL OF THE 696 CORONER FILES REFERENCED IN HIS NEW EXPERT REPORT

The Court made it clear that the Plaintiffs could not use their Charts/Tables to assume that the Coroner made the funeral home selection in all of the Coroner Files in the Charts/Tables. *See EXHIBIT "D" - Court's Memorandum and Order* [Doc. 328] at p. 6, ¶ 1. However, this is exactly what Dr. Gale opines in his New Expert Report. This is entirely improper.

### C. THE PLAINTIFFS' TARDY EXPERT DISCLOSURE VIOLATES THE AMENDED SCHEDULING ORDER AND PREJUDICES THE DEFENDANTS IN THEIR TRIAL PREPARATION

The Plaintiffs produced Dr. Gale's New Expert Report: **(a) 8 days before trial; (b) 188 days after the close of discovery and (c) 251 days after the time permitted for expert**

**designation**. A party must make these disclosures at the times and in the sequence that the court orders. Fed. R. Civ. P. 26 generally provides that: expert disclosures must be made: (i) at least 90 days before the date set for trial. The Court has a "need to control its docket" and this tardy disclosure should not be allowed. Due to the Plaintiffs' delayed disclosure of Dr. Gale's New Expert Report, the Defendants are out of necessity responding to Plaintiffs' Motion in Limine No. 18, which has prejudiced their ability to prepare for a lengthy federal trial a week before it begins.

### D. DR. GALE'S NEW OPINIONS ARE THE PRODUCT OF RANK SPECULATION

All of Dr. Gale's new opinions are based on the impermissible assumption that the Coroner has the control over all 696 cases where all removals (and subsequent burials) when there is autopsy, indigent/pauper burial or when the Coroner or Deputy Coroner signs a Release of Body form. Dr. Gale provides no support outside of the Plaintiffs' deposition testimony that the Plaintiffs would have received an additional 5% follow on revenue from every additional funeral performed. He provides no support for his *ipse dixit* opinion that these additional funerals would have resulted in less advertising expenditures for the Plaintiffs. His opinions are rank speculation at best. Dr. Gales ends his New Report by taking one last speculative step which is especially troubling. Dr. Gale implies that his damage calculations over the five (5) year period of 2012 – 2016 ($870,910.00) could be applied in quadruplicate to the entire twenty (20) years Defendant Gary Hargrove served as Harrison County Coroner meaning his estimated damages could conceivably multiply to $3,483,640.00.

> "[a]ssuming that the number of removals, and the distribution of those removals across the eight funeral homes in Harrison County, are not significantly different in earlier years, annual damages to the Plaintiffs are likely similar to those from 2012 – 2016, described above." *See EXHIBIT "A"* at p. 27, ¶ 2.

The Defendants have gone full circle with the Plaintiffs' experts, the excluded spreadsheets and the now new charts prepared by Plaintiffs' counsel and/or their staff. Add to this mix a new expert report with new charts and new calculations produced 8 days before the trial. The heavy burden placed on these Defendants to prepare for a potentially lengthy trial with over 15 plus lay witnesses and at the same time prepare to cross-examine an expert with a new report is inordinate. Gary Hargrove is sued in his individual capacity and the financial exposure created by the last minute expert disclosure places him in an unreasonable position. These Defendants are not the architects of the repeated problems this Court has been forced to address with Plaintiffs' experts, spreadsheets and new charts.

## CONCLUSION

The Defendant, GARY HARGROVE, in his individual capacity as Coroner of Harrison County, moves the Court to deny, *in toto*, Plaintiffs' Motion *in Limine* No. 18 to Admit Revised and Supplemented Expert Report of Dr. John Gale and to Permit Related Testimony, or in the Alternative, to Allow Him to Testify to Opinions Expressed in Certain Portions of the Report [Doc. 329] and to exclude the proposed expert testimony of John Gale, Ph.D., preventing Dr. Gale from testifying in any capacity at trial, and exclude any reference to either Dr. Gale's new report or the opinions expressed therein at trial.

RESPECTFULLY SUBMITTED, this the 10th day of April, 2018.

**GARY HARGROVE,**
**in his individual capacity**

By: /s/ JOE SAM OWEN (MSB# 3965)

/s/ DANIEL T. SEAWELL (MSB# 105149)

## CERTIFICATE OF SERVICE

I, Daniel T. Seawell, of the law firm Owen, Galloway, & Myers, P.L.L.C., do hereby certify that I have this date electronically filed the foregoing *DEFENDANT GARY HARGROVE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 18 TO ADMIT REVISED AND SUPPLEMENTED EXPERT REPORT OF DR. JOHN GALE AND TO PERMIT RELATED TESTIMONY, OR IN THE ALTERNATIVE, TO ALLOW HIM TO TESTIFY TO OPINIONS EXPRESSED IN CERTAIN PORTIONS OF THE REPORT* with the Clerk of the Court using the ECF system, which served a copy to all counsel record.

SO CERTIFIED, this the 10th day of April, 2018.

/s/ DANIEL T. SEAWELL (MSB# 105149)

JOE SAM OWEN (MSB# 3965)
DANIEL T. SEAWELL (MSB# 105149)
OWEN, GALLOWAY & MYERS, P.L.L.C.
1414 25th Avenue
Post Office Drawer 420
Gulfport, MS 39502-0420
TEL: (228) 868-2821
FAX: (228) 864-6421
EMAIL: jso@owen-galloway.com
dts@owen-galloway.com