# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**THEODORE WILLIAMS,** *et al.*                                        **PLAINTIFFS**

**V.**                                      **CIVIL ACTION NO. 1:16-CV-266-KS-MTP**

**GARY HARGROVE, in his individual capacity,** *et al.*         **DEFENDANTS**

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO
### PLAINTIFFS' MOTION *IN LIMINE* NO. 18

---

The Defendants, HARRISON COUNTY, MISSISSIPPI, and BOARD OF SUPERVISORS, file this Response to Motion *in Limine* No. 18 [DKT#329], to-wit:

I.

**The ink is barely dry!!**

The ink is barely dry on this Court's Memorandum Opinion and Order (DKT#328) and Plaintiffs without surprise already seek to violate the same. The Court ruled:

    A.     Indigent Cases Chart & Table [318-1][318-2]

Plaintiffs' burden is to prove that Hargrove discriminated when it fell to him to choose which funeral home to send a body. Part of that requires proof that Hargrove made the decision. <u>This chart and table cannot be used to make the assumption that Hargrove made a decision, as that is a fact that Plaintiffs' have the burden of proving.</u> *Hart*, 295 F.3d at 459.

Memorandum Opinion and Order (DKT#328) at para. A. at p. 4.

    B.     Autopsy Chart and Table [318-3][318-4]

Of course, as with the indigent cases, <u>this chart and table cannot be used to assert the assumption that Hargrove definitively made a decision in each of these cases</u>, as it is Plaintiffs' burden to prove he made the decision by a preponderance of the evidence. Hart, 295 F.3d at 459.

Memorandum Opinion and Order (DKT#328) at para. B. at p. 6.

Gale's new opinions do nothing more than what the Court said the Plaintiffs could not do with the new charts and tables "assume" without proof that Hargrove made decision in each of these cases. The Court should not permit such particularly in light of the Court's ruling and the discovery violation which prejudices the Defendants 4 business days before commencement of the trial in this matter. Gale's report states:

> Since submitting my prior Expert Reports, I have received new charts which cover (a) pauper cases, (b) autopsy cases, and (c) cases where the Coroner or his deputy have signed a release-of-body form. I have recalculated Plaintiffs' overall damages based on the data in these new charts. Because the methodology is the same, each plaintiff's damages per case have not changed.
>
> See **Supplemental Expert Report of John M. Gale, Ph.D. April 8, 2018 at p. 2 (DKT 329-1 p. 2 of 80).**

Gale has simply taken the new charts and tables made the "assumption that Hargrove definitively made a decision in each of these cases", then calculates the alleged damages for each of the Plaintiffs from that "assumption".

That is exactly what the Court ruled it would NOT allow the Plaintiffs to do with these belated prepared charts.

## II.
## Attorney newly created charts are
## not sufficient to support expert testimony

The Fifth Circuit, in excluding the expert testimony of a statistical expert at the summary judgment stage in a Title VII discrimination case, stated, "Dr. Benz relied on the Plaintiffs' compilations of data, *which gives rise to a 'common-sense skepticism'*" **about the expert's evaluation.** *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 812 (2000) (excluded unsupported statistical analysis in discrimination case; data compiled by plaintiffs had miscalculations and expert failed to consider other

variables like education and experience). Dr. Benz, like Gale also does here, ". . .did not seek to verify the information presented to him." *Id.*, at 302. He simply relies upon the new charts, Indigent Cases Chart & Table [318-1][318-2] and Autopsy Chart and Table [318-3][318-4], and provided to him by Plaintiffs' counsel. He does nothing on his own to verify the contents of Coroner's files and has not even reviewed a single solitary coroner file to do what an expert is supposed to do. Plaintiffs' counsel provided the attorney created excel spreadsheets to Gale and "poof" Gale spits out a $1,000,000.00 figure the very next day on damages. See email attached hereto as Exhibit "A". Gale's opinions are nothing more than parrot for Plaintiffs' attorneys' arguments.

The Plaintiffs' attorneys and their litigation staff cannot and should not be the source of substantive evidence and stealth argument directly from the witness stand or indirectly as "unsworn witnesses" from the lawyers' podium in open court. Gale, the Plaintiffs' expert, cannot be a conduit for arguments of the Plaintiffs' attorneys and their litigation staff have created for this litigation, and then have the Plaintiffs' litigation team ask Gale to vouch for its accuracy and reliability of their arguments. Fifth Circuit authority clearly frowns on such as it is ". . .an unnatural, if not virtually impossible, task for counsel[1], in his own case, to drop his garments of advocacy and take on the somber garb of an objective fact-stater." *Inglett & Co. v. Everglades Fertilizer Co., Inc.*, 255 F.2d 342, 349 (5th Cir. 1958); *Scott v. Dollahite*, 54 F.R.D. 430, 433 (N.D. Miss. 1972) (Keady, C.J.) (noting "judicial disapprobation" of receiving evidence from counsel).

---

[1] Or counsels' paralegals being directed by counsel.

It would be an anomaly for any Plaintiffs' counsel to stand at the lawyers' podium and have Gale and other witnesses, including its paralegals, vouch for the accuracy and reliability of a data summary Plaintiffs' counsel and their litigation team created specifically for litigation. The situation is similar to the situation in *United States v. Reeves*, 892 F.2d 1223 (5th Cir. 1990), when a criminal defense attorney was recorded in 2 videotapes the defendants might use at trial. The defense attorney ". . .would be forced either to refrain from commenting on the tapes or serve as an unsworn witness from the lawyers' podium." *Id.*, at 1227. And "by acting as an 'unsworn witness,' an attorney . . .may influence the litigation indirectly through questioning or in the course of making arguments as a lawyer, rather than directly through testimony and being cross-examined as a witness." Malaspina, *Resolving The Conflict Of The Unsworn Witness: A Framework For Disqualifying House Counsel Under The Advocate-Witness Rule*, 67 N.Y. L.U. Rev. 1073, 1075 (1992).[2]

Under Fed.R.Evid. 703, the Court must examine Gale's source to determine whether the sources satisfy the reliability threshold. *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 306-07 (5th Cir. 1990). **An expert's opinion cannot validly be based on nothing more than facts or data <u>from the Plaintiffs' attorney</u>**. *Stahl v. Wal-Mart Stores, Inc.*, 47 F.Supp.2d 783, 790-91 (S.D. Miss. 1998) (Lee, C.J.) (disapproving expert's opinion based on conversations with Plaintiffs' attorney and attorney's hearsay version of conversation with Defendant's employees); compare, *APAC-Mississippi, Inc.*

---

[2] Plaintiffs' counsel has argued that because their "paralegals" are the witnesses supporting the new charts therefore such is not an issue, however such ignores that truthfully Plaintiffs' counsel had to direct the paralegals to do what has been, therefore Plaintiffs' counsel is still the "voice" making the arguments while also participating in the trial violating rules of professional conduct.

4

*v. Goodman*, 803 So.2d 1177, 1184-85 (Miss. 2002) (*court should have excluded economist's testimony that relied on plaintiff's counsel's estimate of the plaintiff's wages as sole source of data to calculate future lost earnings*). In APAC Mississippi, the economist, as Gale does here, presented new calculations of future lost income at trial because, as he explained during his testimony, counsel for Goodman presented him with a new figure for Goodman's base salary the night before. APAC objected to this testimony on two grounds: (1) Goodman did not produce the new calculations to APAC prior to trial, thereby violating the requirement of Miss. R. Civ. P. 26(f)(1)(B) to supplement discovery responses by expert witnesses in a timely manner; and (2) Goodman did not provide a proper foundation for Dr. Dennis's calculations because Goodman never produced his 1999 income tax or wage information. *APAC Mississippi, Inc. v. Goodman*, 803 So. 2d 1177, 1184 (Miss. 2002). The Mississippi Supreme Court found the

> Under the guidelines of the Mississippi Rules of Evidence Rule 702, the trial judge serves as a "gatekeeper" in ruling [**17] on the admissibility of expert testimony. The Supreme Court of Mississippi has advised that "the facts upon which the expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture." **Watkins v. U-Haul Int'l, Inc.,** 770 So. 2d 970, 974 (Miss. Ct. App. 2000) (citing **Hickox,** 502 So. 2d at 638). The facts relied upon "must afford a 'reasonably accurate basis' for the expert's conclusion." **Fielder v. Magnolia Beverage Co.,** 757 So. 2d 925, 937 (Miss. 1999). P31. **_The sole source for the data used in Dr. Dennis's calculations of loss of future income was Goodman's attorney, who admittedly estimated Goodman's wages for 1999_**. We therefore find that the data on which Dr. Dennis relied was not reasonably accurate and that his testimony should have been excluded by the trial court. The 1999 W-2 form conclusively demonstrates Goodman's 1999 income, and we can find no justification for the trial court's refusal to strike Dr. Dennis's testimony.
>
> *Id. At p.* 1185 (Miss. 2002). (Emphasis added).

Other courts have the same "common-sense skepticism of expert testimony when the proponent of the expert testimony supplies the underlying facts or data for the opinion

5

and the expert does not validate the data. *Forte v. Liquidnet Holdings, Inc.*, 675 Fed.Appx. 21, 23-24 (2nd Cir. 2017) (expert evidence of pay disparity in gender discrimination case; citing, *Munoz v. Orr* and excluding expert evidence; expert's report ". . .was not the product of reliable principles and methods. First, . . ., [the expert] did not independently verify any of the data he used in the report - - he simply input the numbers he was given by [the Plaintiff] and used them to calculate pay discrepancies."; failure to validate data by itself can constitute grounds for exclusion; expert did not control for any variable other than gender when measuring paid disparities); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321-27 (N.D. Ill. 2008) (Cole, J.) (religious and national origin discrimination case; expert opinion based on 11 deposition summaries of 2,649 pages plaintiff's counsel prepared was not sufficiently reliable; "**Rule 703 does not authorize an expert to base an opinion <u>on a lawyer's summaries[3] of deposition testimony</u>**. . .Rule 703 is not an exception to the hearsay rule, nor is it an exception to *Daubert*'s uncompromising insistence that expert testimony must be reliable."; expert depended on assumption that plaintiff's lawyer's summaries were accurate; "Rejecting a lawyer's summarization of depositions as a basis for expert opinion is consistent with the law's wariness of information prepared for litigation."); *In re TMI*, 193 F.3d 613, 683-84, 697-98 (3rd Cir. 1999) (doctor's expert testimony was based on summaries of medical histories plaintiff's lawyer's employees prepared; expert could not reasonably rely on summaries prepared by nonprofessionals aligned with plaintiffs' trial counsel); *Crowley v. Chait*, 322 F.Supp.2d 530, 547 (D. N.J. 2004) (Ackerman, J.) (suit against accounting firm for breach

---

[3] A summary of "Coroner's Files" by paralegals under the directions of trial attorneys should be no treated no differently.

of fiduciary duty; expert accounting witnesses could not give expert opinion based on deposition summaries Plaintiff's counsel prepared).

There is not sufficient indication of reliability Fed.R.Evid. 702 and 703 requires, when Gale relies on the Plaintiffs' attorneys' "new charts" specifically prepared for litigation and Gale then makes the speculative assumptions, which Court has already ruled the Plaintiffs could not make!!! Fed.R.Evid. 702, 703, and 403 set the bar higher. Gale did not independently verify the accuracy and reliability of the new charts, but nonetheless trades on the new charts as accurate. What that means is Gale simply becomes the conduit at trial of the Plaintiffs' attorneys' "summary" that is the equivalent of a "written argument." *U.S. v. Grajales-Montoya*, 117 F.3d at 361; *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 564 (E.D. La. 2015) (Barbier, J.) (excluding specific causation expert testimony as unreliable; article expert relied was prepared for litigation purposes and not one that experts in the particular field would reasonably rely on). The Court does not have to take Gale's barebone word on whether a Plaintiff's attorney's summary is the type of facts or data on which experts in the field would reasonably rely i.e. data from third parties. The Court should not take Gale's word, that the "new charts" are accurate and reliable for at least one simple reason. Gale did not make a substantial effort to verify the accuracy of the new charts; *Munoz*, 200 F.3d at 302.

Gale's expert opinions are "extrapolation testimony" and assumptions out of thin air, based on missing and insufficient facts and inferences that lack record support. Gale in same manner as Campbell did improperly tries to serve as ". . .substantive evidence rather than opinion interpreting facts in evidence." *Randolph v. Laeisz*, 896 F.2d 964,

7

966-67 (5th Cir. 1990) (economist's determination of reduction in lost wages "was not based on any fact in the record" and was "clearly improper").

**GALE'S ASSUMPTIONS CLEARLY
MISREPRESENT THE CORONER'S FILES THEMSELVES**

This Court made numerous correct observations regarding Plaintiffs' other expert, Campbell, obvious errors in the assumptions made by him which resulted in his exclusion as an expert. Because Gale has done the same thing he fares no better than Campbell in this regard and should likewise be excluded. While time and space are limited trial being 5 days away, the undersigned points out a few of the "glaring" and "troubling" "examples":

**Pauper Cases**

**12-0359 Michael Yarborough**

Mr. Yarborough was *Canon Hospice* patient. [See HCCO-013651]. The Court will recall the deposition of the Canon Hospice representative that Canon Hospice inquires of choice of funeral home at the time of admission. (See Motion in Limine Rebuttal Ex. H (Seymour Depo) DKT 181-2 adopted by reference). The Coroner is not involved in the decision. Yet Gale assumes otherwise.

**12-0920 Robert Foxworth**

Mr. Foxworth was also Hospice patient. [See HCCO-022760]. There is actually a form in the file showing either Mr. Foxworth or Ms Barbara Woods selected the funeral home and it was the Plaintiff, Marshalls. Hospice called the funeral home. The Coroner was not involved in the decision.

**14-0690 Jean Kendall**

This unfortunate lady was in a nursing home and had a public guardian appointed to her care. She died on July 12, 2014. The Chancery Court upon Motion of the public guardian ordered the Coroner to bury her as a partner on July 15, 2014, 3 days later. Ms Kendall was already in the possession of the funeral home on the authority of the public guardian who had priority to make such decision over the Coroner. See MCA § 73-11-58(m)[4]. The Coroner was not involved in the decision until after the decedent was already in the possession of the funeral home on the authority of the public guardian.

There are many more examples which demonstrate like Campbell, shows Gale's opinions are quiet frankly as "troubling" as Campbell but space and time does not permit discussion here. Such is what happens when expert instead of conducting an independent analysis relies upon attorneys or the attorney staffs who are to put it kindly advocates of their clients!!!

**Autopsies**

Autopsies are essentially undisputed that neither Defendant, Hargrove nor Harrison County, had any choice as to where autopsies would be performed because Dr. McGarry an independent contractor and the ONLY forensic pathologist available in south Mississippi made the decision where he would perform autopsies or not. This had absolutely nothing to do with race at all and the Plaintiffs have not produced one scintilla of evidence to the contrary. To permit Gale to "assume" otherwise not only violates the Court's order not to assume such, but borders on falsehood!!!! However, examining the

---

[4] "state appointed guardian".

Coroner's files, themselves shows the same pattern of "troubling" analysis as with Campbell.

### 13-0353 Ricky Bridgett

The decedent's daughter signed a body release form for Bradford O'Keefe to handle the funeral services for her father. See HCCO-034576. Because McGarry would only do autopsies at Riemann's the autopsy was done at Riemann's not Bradford O'Keefe. Plaintiffs had no chance of handling the funeral services of Mr. Bridgett in fact such would violate Mississippi law. See MCA § 73-11-58(2).

### 13-0353 Donald J. Binge

The decedent's sister signed a body release form for Riemann's to handle the funeral services for her brother. See HCCO-032067. Plaintiffs had no chance of handling the funeral services of Mr. Bridgett in fact such would violate Mississippi law. See MCA § 73-11-58(2).

### 13-0110 Larry D. Ladner

The decedent's mother signed a body release form for Riemann's to handle the funeral services for her son. See HCCO-030196. Plaintiffs had no chance of handling the funeral services of Mr. Ladner in fact such would violate Mississippi law. See MCA § 73-11-58(2).

How MANY more "troubling" and "glaring" examples are necessary before Gale and/or Plaintiffs' attorneys and/or their paralegals lose complete credibility?

## Body Release Forms signed by Coroner or a Deputy.

This particular chart is so bad it is difficult to describe in written word and be polite!! Space and time does not permit a discussion of how bad it is. Defendants' Attorneys would welcome the opportunity in open court, and on the record and under oath to test the mettle of anyone willing to testify to the charts which purport to reliably and accurately summarize the records they represent, however a jury should not hear such evidence prior to such mettle being tested!!!. Suffice it to say in the vast majority of all of these files there is someone present who has priority over the Coroner to make the decision as to which funeral home would handle the funeral services for their loved one. See MCA § 73-11-58. There is simply no evidence that the signing of the release of body form by Coroner or the Deputy Coroner was any more than following the request of the family in moment of grief at the loss of their love one and compassion not to demand they sign a "form" at such a time. The Coroner or his deputy simply signs for them inserting the family decision as to the funeral home. Defendants' Attorneys would be happy to provide ALL of these files in camera for the Court review itself rather than rely the argument of the undersigned alone.

## Discovery violation

Additionally, the new expert opinions should not be permitted for <u>after</u> the close of discovery, long after the time for designation of experts and their disclosure of opinions and merely 5 days before trial therefore violating the even most basic rules of the Court. In summary it is the Plaintiffs who chose the course of action resulting in the dataset and its experts' exclusion. Now they seek to undo their error at the last moment to the prejudice of the Defendants. Federal Rule of Civil Procedure 37(c) directs that "if a party

11

fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. Rule 26(a)(1)(A)(i) required Plaintiffs to disclose the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses. Such should not be permitted to prejudice of the Defendants if discovery rules are to be meaningful.

The Defendants propounded specific discovery on the issue of damages long ago.

> INTERROGATORY NO. 13. Please state or identify specifically each and every fact or basis or evidence you contend supports your allegation that "the Defendants have caused serious damage to Plaintiffs. In a business that survives on reputation and word-of-mouth referrals, each lost chance to serve has far-reaching financial consequences".
>
> INTERROGATORY NO. 20. Please state specifically all damages claimed by you and itemize your claim(s) of damages, including but not limited to your "loss of business, revenue, profits, wages, money, opportunities to work, opportunities to engage in contracts, future prospects for employment, business, and business relationships, reputational harms, mental anguish, humiliation, degradation, emotional pain and suffering, as well as other damages" you claim in this action.

Plaintiffs responses to discovery did not include the Supplemental Expert Report of John M. Gale, Ph.D. April 8, 2018 nor did it comply with the Court's scheduling order. Further permitting the Plaintiffs to change their expert opinion 5 business days before trial is patently prejudicial and should not be permitted if the Court's rules are to have any meaning. It is the Plaintiffs fault they are in this position and not the Defendants therefore the Defendants should suffer one iota of prejudice by Plaintiffs own petard!!!

12

Finally, these Defendants adopt by reference as if fully set forth herein the Response in Opposition re [329] MOTION in *Limine to admit Gale Revised and Supp Report* filed by Gary Hargrove (DKT#330) and MEMORANDUM in Opposition re [329] Motion in Limine *to admit Gale Revised and Supp Report* filed by Gary Hargrove (DKT#331) on behalf of these Defendants.

## CONCLUSION

The Court should deny, *in toto*, the Plaintiffs' Motion *in Limine* No. 18 [DKT 329] on the grounds set forth herein.

RESPECTFULLY SUBMITTED, this the 10th day of April, 2018.

**HARRISON COUNTY BOARD OF SUPERVISORS, and HARRISON COUNTY, MISSISSIPPI, Defendants**

By: /s/ TIM C. HOLLEMAN (MSB# 2526)

CERTIFICATE OF SERVICE

I, Tim C. Holleman, do hereby certify that I have this date electronically filed the foregoing *DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 18* with the Clerk of the Court using the ECF system, which served a copy to all counsel record.

SO CERTIFIED, this the 10th day of April, 2018.

/s/ Tim C. Holleman (MSB# 2526)

Tim C. Holleman (Ms Bar #2526)
Patrick T. Guild (Ms Bar#103739)
BOYCE HOLLEMAN & ASSOCIATES
1720 23rd Ave./Boyce Holleman Blvd.
Gulfport, MS 39501
Telephone: (228) 863-3142
Facsimile: (228) 863-9829
Email: tim@boyceholleman.com
patrick@boyceholleman.com