```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       SOUTHERN DIVISION


THEODORE WILLIAMS, LOCKETT                          PLAINTIFFS
WILLIAMS MORTUARY, INC., RICKY
AUGUST, LASHA AUGUST, JONATHAN
AUGUST, RICHMOND-AUGUST FUNERAL
HOME, LLC, EDDIE HARTWELL, HARTWELL
& FAMILY FUNERAL HOME, LLC, ANTHONY
MARSHALL, GINA MARSHALL, MARSHALL
FUNERAL HOME, INC., PAMELA DICKEY,
DICKEY BROTHERS MEMORIAL FUNERAL
HOME, LLC, HELEN EVANS AND J.T. HALL
FUNERAL HOME, INC.

VS.                               CIVIL NO. 1:16CV266-KS-MTP


GARY HARGROVE, IN HIS INDIVIDUAL CAPACITY           DEFENDANTS
AND HIS OFFICIAL CAPACITY AS CORONER OF
HARRISON COUNTY, MISSISSIPPI, THE
HARRISON COUNTY BOARD OF SUPERVISORS,
UNKNOWN EMPLOYEES OF THE CORONER OF
HARRISON COUNTY, UNKNOWN EMPLOYEES
OF THE HARRISON COUNTY BOARD OF
SUPERVISORS, AND UNKNOWN EMPLOYEES OF
HARRISON COUNTY
```

                    **TRANSCRIPT OF SETTLEMENT**

                BEFORE THE HONORABLE KEITH STARRETT
                   UNITED STATES DISTRICT JUDGE

                         APRIL 19, 2018
                      GULFPORT, MISSISSIPPI



    REPORTED BY:   TERI B. NORTON, RMR, FCRR, RDR
                   Mississippi CSR #1906
    _____

                   2012 15TH STREET, SUITE 403
                   GULFPORT, MISSISSIPPI  39501
                         (228) 563-1748

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:
         DAVID B. OWENS, ESQUIRE
 3       DANIELLE HAMILTON, ESQUIRE
         KATHERINE A. ROCHE, ESQUIRE
 4       LOEVY & LOEVY
         311 N. ABERDEEN STREET, 3RD FLOOR
 5       CHICAGO, ILLINOIS  60607

 6       ROBERT MCDUFF, ESQUIRE
         767 N CONGRESS ST
 7       JACKSON, MISSISSIPPI  39202

 8   FOR THE DEFENDANT, GARY HARGROVE, IN HIS INDIVIDUAL AND
     OFFICIAL CAPACITY:
 9
         JOE SAM OWEN, ESQUIRE
10       DANIEL T. SEAWELL, ESQUIRE
         OWEN, GALLOWAY & MYERS, PLLC
11       POST OFFICE DRAWER 420
         GULFPORT, MISSISSIPPI  39502-0420
12
     FOR THE DEFENDANT, HARRISON COUNTY, MISSISSIPPI:
13
         TIM C. HOLLEMAN, ESQUIRE
14       PATRICK GUILD, ESQUIRE
         BOYCE HOLLEMAN & ASSOCIATES
15       1720 23RD AVENUE
         GULFPORT, MISSISSIPPI  39501
16

17

18

19

20

21

22

23

24

25
```

1   **THE COURT:** I'm not sure exactly what the final
2   agreement is, but what we're going to do is put the settlement
3   on the record. It will be an enforceable document. Once it
4   goes on the record, it's an enforceable settlement. If
5   somebody tries to back out of it, they can be forced to comply.
6   And there are costs associated with not complying with the
7   settlement agreement.
8       All right. This is Case Number 1:16cv266, Theodore
9   Williams, et al versus Gary Hargrove, et al. And the parties
10  have negotiated a settlement. What I'm going to do is, I'm
11  going to ask one of the attorneys to put the settlement on the
12  record, dictate it on the record, and then I'm going to -- do
13  we have a settlement, Mr. Owens?
14      **MR. OWENS:** We have -- I apologize, Your Honor. We
15  have one question.
16      **MR. MCDUFF:** Let us talk one minute.
17      **THE COURT:** Okay. Do you need some more time?
18      **MR. OWENS:** I think so, Your Honor.
19      **THE COURT:** All right.
20    (OFF-RECORD).
21      **THE COURT:** I'm going to ask one of the lawyers, I
22  don't care who it is, to state the settlement agreement on the
23  record. I'll give the other side an opportunity to make
24  additions or corrections or whatever that he or she thinks
25  needs to be made. Then I'm going to ask each of the parties to

1   acknowledge that this is a settlement agreement.  Who wants to
2   go first?
3         **MR. OWEN:**  David or Rob, I think.  Y'all know a
4   little bit better about the conversation that just occurred on
5   the location.
6         **MR. MCDUFF:**  The settlement terms are:  The payment
7   of $110,000 to the plaintiffs; the adoption of a new policy by
8   the coroner that will consist of a rotation of cases involving
9   removals for autopsies among the eight funeral homes; a policy
10  of rotation among the eight funeral homes of all pauper cases;
11  and a policy of rotation among the eight funeral homes of all
12  other cases in which the coroner makes the decision about which
13  funeral home should do the removal and everything that follows
14  thereon.  There will be a joint press release that the parties
15  will agree upon, and there is also an agreement --
16        **MR. OWENS:**  It's called the Marshall addendum to the
17  settlement, which is that the parties will agree to work
18  towards pursuing and securing a neutral location for bodies to
19  be stored.  There is a state facility that may be approved, but
20  the parties agree, even if that doesn't get opened or funded by
21  the state, to pursue that within the county, and that this will
22  come up on a Harrison County board meeting so that this can be
23  presented to the county for a possible appropriation to
24  ensure that there's not sort of a -- should the state facility
25  not open, that the situation where the bodies as they are now,

1   currently sent to Riemann's, doesn't continue in perpetuity,
2   and that will be taken to the board and to be worked on in the
3   future.
4           **THE COURT:**  All right.  What about the verbiage of
5   the press release and any other terms of the agreement?
6           **MR. OWENS:**  The parties have agreed and believe we
7   can reach an agreement about a joint press release announcing
8   the settlement, but -- and agree to do that tomorrow,
9   hopefully, as well as put the policy just described in writing,
10  which we believe that we can come to some agreement.
11          **MR. OWEN:**  If I may add to that, Judge.
12          **THE COURT:**  Yes.  Get behind a microphone, please.
13          **MR. OWEN:**  Judge, let me add to what Rob just said
14  with reference to the rotation.  On the rotation of the autopsy
15  cases, what is currently happening is that even with the
16  rotation system, the body will be delivered to Riemann's and
17  then from Riemann's is transported to Pearl.  What the intent
18  is is to work toward a neutral site in terms of providing the
19  required cooling, assuming at this point in time it remains
20  where autopsies are done in Pearl, where the body, say it is
21  removed from site A, won't be necessarily removed to Riemann's
22  but to a central location with a cooler, and then from there to
23  Pearl.  Is that a fair statement, with reference to the
24  autopsies?
25          **MR. OWENS:**  Correct.

1          **MR. OWEN:** But several things could happen. Tim can
2  sort of elaborate on what the county's efforts will be, and
3  wrapped into that mix, Judge, is the facility at 67. I mean,
4  it is, as you well know, a very nice facility. There's a
5  cooler there. It's our understanding that the funding is in
6  place and that Dr. LeVaughn, the State Medical Examiner, is in
7  the process of trying to find a pathologist. Once that occurs,
8  all autopsies will be there.
9          So if, for example, Marshall's has the removal for a given
10 week, if that's what they work on, Marshall's can take the body
11 straight to 67 because there's going to be a cooler there.
12 When the autopsy procedure is completed, of course the body
13 will be released to the designated funeral home.
14         With reference to the second part of it, which is the
15 paupers, that will be on a rotation system. That's going to
16 require some type of cooling, obviously. That will be up to
17 the individual funeral homes. Until such time as possibly a
18 neutral location can be developed or agreed upon for the proper
19 cooling, it will be up to the funeral home to work out an
20 agreement with wherever that body is going to be stored. It
21 would not be a responsibility of the county, because what would
22 happen is, let's say -- again, I'm using Marshall's as an
23 example -- let's say it's a pauper, indigent or an unclaimed
24 body, they would pick up the body, obviously, and it would be
25 up to them to work out with a third party or whomever whatever

1   the cooling arrangements would be.

2   The third issue is what Rob talked about, and that is in
3   those cases where the coroner has the discretion in terms of
4   the disposition of the body, that that will be on a rotation
5   basis.  I think it would be good for Tim to add to that because
6   what I think Tim has talked to Mr. Marshall about, and the
7   others, is maybe the county trying to work toward a centralized
8   cooler, assuming that 67 doesn't come into play.  And it may be
9   that the 67 facility can be really activated, once that
10  pathologist is hired, a lot quicker than we think.

11  My understanding is that 67 is ready to be activated
12  except for some preliminary steps.  The problem is the money
13  for the pathologist.  Once that is resolved, then a lot of
14  these issues disappear, as I appreciate it.

15  Now, Tim can add to that in terms of what he is willing to
16  do with the board to try and effect some type of centralized
17  cooling location.  Is that correct, Mr. Marshall?

18  **MR. ANTHONY MARSHALL:**  Yes.

19  **MR. HOLLEMAN:**  First off, just so we're clear on the
20  record, I cannot commit the Board of Supervisors to do
21  anything.  What I've committed to Mr. Marshall is to arrange a
22  meeting with the Board of Supervisors to discuss funding in a
23  central location.  I do know that the county has empty
24  buildings available, and we will explore the option of trying
25  to create a county morgue, essentially, if it's determined that

1    that need is there.  If the 67 facility opens up -- that isn't
2    open, but as far as the settlement is concerned, we are
3    committing just merely to meet with the board and to assist the
4    parties in maybe trying to get the board to establish a
5    centralized location.
6         The only other thing is, as I understand the settlement,
7    the rest of the settlement is that Harrison County,
8    Mississippi, as a defendant, will be dismissed and not be part
9    of the settlement, but that the settlement will resolve all the
10   issues based upon Gary Hargrove and respondeat superior, if it
11   applies, or 1983 or 1981 -- 1981 or 1988, and any and all state
12   law claims which were or could have been included in this civil
13   action against him or any of his employees or his principals.
14   But the county -- the settlement will be between the plaintiffs
15   and Mr. Hargrove.
16        **THE COURT:**  Let me make sure I understand it, and I
17   need to ask this question.  The verbiage of the press release
18   has been a bone of contention here tonight.  Now, I'm going to
19   dismiss this lawsuit unless I hear from y'all at 5:00 tomorrow
20   -- no, by 3:00 tomorrow, I'm going to dismiss it and it goes
21   away.  The settlement agreement that y'all are announcing here
22   tonight will be what is enforced, and I will do the best I
23   can to -- there's a lot of weasel words in some of these
24   things, but I will do the best I can to enforce it.
25        Let me tell you what I understand.  The lawsuit is being

1    dismissed.  All the claims against both defendants are being
2    dismissed.  Two, there will be a joint press release announcing
3    the settlement.  The crux of it is that there has been, as I
4    understood it at the time when I was looking at it, that there
5    was no finding of discrimination against the defendants, no
6    finding of racial discrimination against the defendants, that
7    the payment of $110,000 will be paid to the attorneys for all
8    of the plaintiffs, jointly with the plaintiffs and their
9    attorneys, that there will be a policy, a written policy
10   developed by the coroner covering the proration and the doing
11   of all county-funded work, all indigent work and all autopsies,
12   and that this procedure will basically be a rotation among the
13   eight funeral homes in Harrison County.  Then there will be a
14   working toward the centralized location.
15        Now, there's been no -- I heard no specific commitment
16   other than that the parties would try and would deal in good
17   faith.  I'm assuming good faith.  Nobody said that, but I'm
18   assuming it.  That they would try to work toward a
19   county-funded body storage facility that would be used by all
20   of the mortuaries in the county.  And if it can be funded, will
21   be funded by the county, and the county will support it and
22   keep it up and provide for the operation and maintenance of the
23   facility, first using the Highway 67 facility, and if that
24   doesn't work, then working towards something that would be
25   funded by the county.

1       **MR. HOLLEMAN:**  The biggest problem with that, Your
2   Honor, we can't commit -- this board can only commit --
3       **THE COURT:**  Right.  And the board is not committing
4   to anything tonight without the --
5       **MR. HOLLEMAN:**  Right.
6       **THE COURT:**  But you are representing, Mr. Holleman,
7   that you will recommend this settlement to the board?
8       **MR. HOLLEMAN:**  Right.
9       **THE COURT:**  The insurance company is recommending the
10  settlement to the board?
11      **MR. HOLLEMAN:**  Correct.
12      **THE COURT:**  All right.  Have I overlooked anything
13  that needs to go on the record?
14      **MR. OWEN:**  I need to add a couple of things to it,
15  Judge, to make sure there's clarification.  On the rotation,
16  it's going to relate, obviously, to the autopsies, to the
17  indigent/pauper/unclaimed bodies, and then those categories in
18  which the coroner has discretion.  As Your Honor knows, there's
19  that broad category where the family makes a decision, and so
20  it doesn't bring the coroner into play.
21      The second part that needs clarification, currently the
22  way things are set up, and it will continue until one of two
23  contingencies occurs, the contingency will either be activation
24  of 67 or something worked out with the county.  In the policy,
25  what's going to happen is that on autopsies, bodies will be

1   delivered to Riemann's.  The policy will not refer to the place
2   as Riemann's.  It will refer to it as the designated county
3   cooler or county depository, whatever term you want to use, and
4   that's a fair enough request because that can generate -- just
5   the fact that it is going to Riemann's could generate
6   additional business to Riemann's, and that's supposed to be a
7   central neutral designation.  Do you follow what I'm saying?
8            **THE COURT:**  Yes.
9            **MR. OWEN:**  So in the policy agreement, it will refer
10  to just simply a central location or a designated county
11  location.
12           **MR. OWENS:**  At such and such address.  The only other
13  thing, Your Honor, as far as the press release goes, we have
14  radically different language, but it's sort of an idea of what
15  it would look like, but it is agreed.
16           **THE COURT:**  Well, I want you to reach the exact
17  language, and I want it to be disbursed or put out.  But if
18  y'all don't agree, it is going to fall on me to do this.
19           **MR. OWENS:**  I think with respect to the language
20  about the release or the press release, I think we are speaking
21  past each other a little bit.  We had two conversations, and I
22  think we are all on the same page.
23           **THE COURT:**  All right.  But I want y'all to
24  understand the consequences -- you had something else you
25  wanted to add, Mr. McDuff?

1           **MR. MCDUFF:**  Yes, and that is that the parties have
2    agreed that the rotation will be on a weekly basis.  In other
3    words, one funeral home will take one week, the next funeral
4    home will take the next week.  I wanted to add that.
5           **MR. OWEN:**  And Mr. Hargrove is in agreement.
6           **THE COURT:**  All right.  Anything else anybody wants
7    to put on the record?
8           **MR. HOLLEMAN:**  They've got to make sure this press
9    release understands that this is subject to approval by the
10   county, because we don't have a board meeting until the first
11   Monday of May.
12          **MR. OWENS:**  The board has to approve the press
13   release?
14          **MR. HOLLEMAN:**  No, I don't think the board has to --
15          **MR. OWENS:**  Okay.
16          **MR. HOLLEMAN:**  They have to approve the settlement.
17          **MR. OWENS:**  The settlement is subject to the
18   approval -- right.  So if the board doesn't approve the
19   settlement, then we have no agreement.
20          **MR. HOLLEMAN:**  And just so the record is clear,
21   because this is kind of tricky in the sense that legally, we
22   can't have authority unless the board meets and votes to
23   approve it.  That's where the problem comes in.  But I will
24   recommend it to the board.  The insurance company is going to
25   recommend it to the board.  I don't think the board is going to

1   have a problem with it, but it is subject to that, so we have
2   to be --
3              **MR. OWENS:**  So I think that the best way to proceed
4   right now, Your Honor, would be to, you know, enter an order
5   saying, you know, settlement agreement subject to board
6   approval.  Once we have that board approval, we can file an
7   agreed motion to dismiss or file --
8              **THE COURT:**  It ain't happening.  The judgment of
9   dismissal is going to be entered tomorrow on this case unless I
10  hear back from you and you say it is blown out.  It's going to
11  be entered tomorrow because I'm calling the jury off.  I'm not
12  going to bring the jury back -- they are going to show up here
13  at 9:00 on Monday morning ready to try the case.  And unless
14  there is a settlement agreement, I am too, and I trust you will
15  be.  But y'all need to get it tied down, and if you can't tie
16  it down, we need to call it off.  But tomorrow afternoon, about
17  3:00, I'm going to enter an order of dismissal dismissing this
18  case.
19       Now, what happens if the county doesn't agree?  I don't
20  know.
21             **MR. HOLLEMAN:**  That's a good question.  That's why I
22  was bringing that up.  I will poll the board.
23             **THE COURT:**  You need to poll the board tomorrow
24  morning, Mr. Holleman.
25             **MR. HOLLEMAN:**  I'm going to call them as soon as I

1   leave, the ones I can get.  But certainly in the morning, Your
2   Honor.  I will do an e-mail tonight to all of them.  They will
3   get that pretty quickly, and then we'll -- I don't think that
4   is going to be a big problem.
5           **THE COURT:**  All you have to do is call me and tell me
6   that the settlement has blown up, and we kick it back off at --
7   everything is still set to go at 9:00 on Monday morning.  Okay?
8       All right.  Does Theodore Williams approve the settlement?
9   Is Mr. Williams here?
10          **MR. OWENS:**  He stepped out, but he gave us -- we have
11  authority to agree to the settlement on his behalf, Your Honor.
12          **THE COURT:**  He is speaking for Lockett Williams
13  Mortuary?
14          **MR. OWENS:**  Correct, Your Honor.
15          **THE COURT:**  What about Ricky August, Lasha August and
16  Jonathan August?
17          **MR. OWENS:**  Lasha is here.
18          **THE COURT:**  You are Ms. August?
19          **MS. LASHA AUGUST:**  I am.
20          **THE COURT:**  All right.  You are speaking for, I
21  assume, your brothers?
22          **MS. LASHA AUGUST:**  Brother and father.
23          **THE COURT:**  All right.  And Richmond-August Funeral
24  Home, Inc.?
25          **MS. LASHA AUGUST:**  Yes, sir.

1    **THE COURT:** What about Eddie Hartwell, Hartwell &
2 Family Funeral Home, LLC.
3    **MR. OWENS:** Mr. Hartwell had another commitment to
4 get to but has given us his approval, Your Honor, to agree to
5 the settlement on his behalf.
6    **THE COURT:** All right. What about Anthony Marshall,
7 Gina Marshall and Marshall Funeral Home?
8    **MR. OWENS:** Anthony took off.
9    **THE COURT:** Mr. Marshall?
10    **MR. ANTHONY MARSHALL:** Marshall is in agreement.
11    **THE COURT:** Does agree?
12    **MR. ANTHONY MARSHALL:** Yes, sir.
13    **THE COURT:** And Ms. Marshall, is she still -- she's
14 not still here. All right. And you are speaking on behalf of
15 your wife and the business, the corporation?
16    **MR. ANTHONY MARSHALL:** Yes, sir.
17    **THE COURT:** What about Pamela Dickey, Dickey Brothers
18 Memorial Funeral Home, LLC?
19    **MS. PAMELA DICKEY:** Yes, sir.
20    **THE COURT:** All right, Ms. Dickie. Thank you. And
21 Helen Evans and -- yes, ma'am?
22    **MS. HELEN EVANS:** Yes, sir.
23    **THE COURT:** You will concur, Ms. Evans?
24    **MS. HELEN EVANS:** Yes.
25    **THE COURT:** All right. And J. T. Hall Funeral Home,

1   Inc., you concur?

2           **MS. HELEN EVANS:**  Yes.

3           **THE COURT:**  What about Gary Hargrove?  You concur
4   with the settlement, Mr. Hargrove?

5           **MR. GARY HARGROVE:**  I do concur with it, Judge.

6           **THE COURT:**  What about Harrison County, Mississippi?

7           **MR. HOLLEMAN:**  On behalf of Harrison County, we
8   agree, Your Honor, subject to approval of the board, as we
9   stated earlier.

10          **THE COURT:**  Okay.  Ladies and gentlemen, I want to
11  congratulate you.  This has not been an easy case to resolve.
12  There are a lot of hard feelings.  It's unfortunate that
13  litigation drives wedges between people who have gotten along
14  for a number of years.  That is unfortunate.

15      I have been a participant in the court system for 40-plus
16  years, and I've seen a lot of relationships broken.  This one
17  is obviously strained.  There have been some things that had to
18  be said because of the litigation, but I would encourage you to
19  work together to restore the relationships.  A lot of good
20  personal relationships I've heard testimony about here today
21  and this week, but I would encourage you to work to restore
22  those, to be fair, and to -- the very hurtful allegations, they
23  are hurtful allegations of racial discrimination.  Hopefully,
24  you can work together to overcome those and to ensure that
25  nobody endures that, that it doesn't happen in this county.

1       So thank you very much.  Good night, and I hope I don't
2  hear from you tomorrow.
3           **MR. OWENS:**  Thank you, Your Honor.
4                    (SETTLEMENT CONCLUDED)

```
 1
 2
 3                    CERTIFICATE OF COURT REPORTER
 4
 5        I, Teri B. Norton, RMR, FCRR, RDR, Official Court
 6   Reporter for the United States District Court for the Southern
 7   District of Mississippi, appointed pursuant to the provisions
 8   of Title 28, United States Code, Section 753, do hereby certify
 9   that the foregoing is a correct transcript of the proceedings
10   reported by me using the stenotype reporting method in
11   conjunction with computer-aided transcription, and that same is
12   a true and correct transcript to the best of my ability and
13   understanding.
14        I further certify that the transcript fees and format
15   comply with those prescribed by the Court and the Judicial
16   Conference of the United States.
17
18
19
20         s/ Teri B. Norton
           TERI B. NORTON, RMR, FCRR, RDR
21         OFFICIAL COURT REPORTER
22
23
24
25
```