# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | |
|---|---|
| THEODORE WILLAMS, *et al.*, | )<br>) |
| Plaintiffs, | ) Case No. 1:16-cv-00266-KS-MTP<br>) |
| v. | ) Hon. Keith Starrett<br>) District Judge |
| GARY HARGROVE, *et al.*, | )<br>) Hon. Michael T. Parker |
| Defendants. | ) Magistrate Judge<br>)<br>) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## TO ENFORCE SETTLEMENT AGREEMENT

NOW COME Plaintiffs, by their undersigned attorneys, and respectfully ask this Court for an Order enforcing the agreement between Plaintiffs and Defendants. In support of this motion, Plaintiffs state as follows:

### Introduction

On April 19, 2018, in the midst of a jury trial, the parties reached an agreement to settle Plaintiffs' claims against Defendants. Ex. A, Settlement Transcript. Broadly, terms of that agreement are as follows: (1) monetary payment to the plaintiffs and (2) the adoption of a written rotation policy by the Coroner. The parties dictated the material terms of the written rotation policy on the record. *Id.*

Since that time, the parties have conferred numerous times to write the written rotation policy in accordance with the settlement agreement, including

exchanging several drafts and conducting numerous telephonic meet-and-confer discussions. The first drafts of these polices were substantially different. However, the parties have reached substantial agreement over their differences and, with one exception, believe they have a rotation policy framework that works for all.

The remaining material disagreement concerns a subset of removals for deaths involving autopsies ordered by the Coroner or one of his deputies as a part of their death investigation. Plaintiffs contend that the settlement agreement requires that all removals in cases where an autopsy is ordered by the Harrison County Coroner's Office be subject to the rotation policy. By contrast, Defendants position is that autopsy removals in cases of "suspected homicides" should be excluded from the rotation system.

The parties are at an impasse. Accordingly, with agreement of all involved, the parties come to this Court seeking resolution of this dispute.[1]

## BACKGROUND

As the Court well knows, Plaintiffs—six African-American owned funeral homes doing business in Harrison County, Mississippi—brought this lawsuit under 43 U.S.C. § 1983 alleging that Defendant Gary Hargrove has discriminated against them on account of their race.

---

[1] The parties originally contemplated a joint pleading setting out the disagreement but have, instead, agreed to an expedited briefing schedule in the more traditional structure for motions before the Court. Defendant Hargrove has agreed to file his response on Monday July 23rd, Plaintiffs shall file a rebuttal, if any, by Thursday July 26, 2018.

On April 16, 2018, the jury trial for this matter commenced. However, on April 19, 2018, during the course of the trial, the parties came to an agreement, which was transcribed by this Court. Ex. A.

After hearing from the parties, the Court summarized the agreement as follows:

> That the payment of $110,000 will be paid to the attorneys for all of the plaintiffs, jointly with the plaintiffs and their attorneys, that there will be a policy, a written policy developed by the coroner covering the proration and the doing of all county-funded work, all indigent work and all autopsies, and that this procedure will basically be a rotation among the eight funeral homes in Harrison County. Then there will be a working toward the centralized location.

Ex. A, at 9.

The Court's accurate summation followed the statements of the parties describing the settlement, including:

- **By Mr. McDuff**: The settlement terms are: The payment of $110,000 to the plaintiffs; the adoption of a new policy by the coroner that will consist of a rotation of cases involving removals for autopsies among the eight funeral homes; a policy of rotation among the eight funeral homes of all pauper cases; and a policy of rotation among the eight funeral homes of all other case in which the coroner makes the decision about which funeral home should do the removal and everything that follows thereon." Ex. A, at 4.

- **By Mr. Owen**: Judge, let me add to what Rob just said with reference to the rotation. On the rotation of the autopsy cases, what is currently happening is that even with the rotation system, the body will be delivered to Riemann's and then from Riemann's is transported to Pearl. What the intent is is to work toward a neutral site in terms of providing the required cooling, assuming at this point in time it remains where autopsies are done in Pearl, where the body, say it is removed from site A, won't be necessarily removed to Riemann's but to a central location with a cooler, and then from there to Pearl.

- **By Mr. Owen**: So if, for example, Marshall's has the removal for a given week, if that's what they work on, Marshall's can take the body straight to 67 because there's going to be a cooler there. When the autopsy procedure is completed, of course the body will be released to the designated funeral home.

In addition, after the Court accurately described the substance of the rotation policy, the following relevant comments were made:

- **By Mr. Owen**: On the rotation, it's going to relate, obviously, to the autopsies, to the indigent/pauper/unclaimed bodies, and then those categories in which the coroner has discretion. As Your Honor knows, there's that broad category where the family makes a decision, and so it doesn't bring the coroner into play.

- **By Mr. Owen**: In the policy, what's going to happen is that on autopsies, bodies will be delivered to Riemann's. The policy will not refer to the place as Riemann's. It will refer to it as the designated county cooler or county depository, whatever term you want to use, and that's a fair enough request because that can generate – just the fact that it is going to Riemann's could generate additional business to Riemann's, and that's supposed to be a central neutral designation. . . . So in the policy agreement, it will refer to just simply a central location or a designated county location.

Finally, the Court noted it would retain jurisdiction to enforce the settlement agreement. Dkt. 352.

## DISCUSSION

### A. Legal Standard

"The Court has the inherent power and discretion to enforce the settlement agreements reached in cases before it." *Friley v. Housing Benefits Plan*, 2013 WL 943741, at *2 (S.D. Miss. March 11, 2013) (citing *Harmon v. Journal of Publ. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012)). This Court also has the power to enforce a settlement agreement when parties "seek to retain the court's enforcement of a

'dismissal-producing' settlement agreement." *Brown v. ASEA Brown Boveria, Inc.*, 2015 WL 5918253, at *2 (S.D. Miss. Oct. 9, 2015) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994)). Furthermore, parties must incorporate "their obligation to comply with the terms of the settlement agreement." *Id*.

Here, the parties agreed to this Court's jurisdiction both while dictating their oral agreement before the Court, as well as in the Court's Judgment of Dismissal. *See* Dkt. 352 ("By agreement of the parties, the Court hereby retains jurisdiction to enforce the settlement agreement and impose attorney's fees and costs as indicated.").

In resolving a dispute about a settlement agreement, Courts will not rewrite settlement agreements to satisfy the goals of either party. *Mississippi Phosphates Corp. v. Furnace and Tube Service, Inc.*, 2009 WL 10676950, at *1 (S.D. Miss. Nov. 25, 2009) (citing *Chantey Music Pub., Inc. v. Malaco, Inc.*, 915 So.2d 1052, 1055-56 (Miss. 2005)). Interpretation of a settlement agreement is analogous to a contract—courts look to plain language expressing intent before moving to other forms of interpretation. *Brewer v. Liberty Mutual Insurance Co.*, 2015 WL 3620468, at *2 (S.D. Miss. June 9, 2015) (citing *Tupelo Redevelopment Agency v. Abernathy*, 913 So.2d 278, 284 (Miss. 2005)).

### B. Plaintiffs Seek to Enforce the Settlement Agreement as Written

Plaintiffs' position is straightforward: that the settlement requires that all autopsy cases be a part of the rotation system. The Court's comments about the scope of the autopsies on the rotation system—all of them—is unequivocal. And,

there was absolutely no mention at the time of the settlement about an exception for any category of cases involving autopsy investigations, let alone cases involving suspected homicides. Accordingly, Plaintiff's position is that the policy must work just as described on the record for *all* autopsies: the funeral home on the rotation system will conduct a removal to the "county cooler"—or whatever neutral designation it is given—at which point the bodies are transported to the location of the autopsy (currently Pearl, Mississippi), and then, upon return, they bodies "will be released to the designated funeral home." Ex. A, at 6. Should the location where autopsies are done become local (for example, at the facility on Interstate 67 or at another county-run facility) rather than in Pearl, then the funeral home doing the removal will take the bodies directly to that location. *Id.*

From Plaintiffs' perspective, the fact of this disagreement (and the time taken in the interim) is distressing. Plaintiffs simply ask that the settlement be enforced by its terms and without "carve outs" that were never discussed or contemplated at the time of the settlement. In fact, there is no mention of "homicide" anywhere in the transcript of the settlement agreement. Ex. A. There was also no mention of the county contract service that transports bodies for autopsy to Pearl, Mississippi conducting removals directly from a death scene. In addition, Defendants' proposal to exclude certain autopsy cases creates the same types of worries about a lack of transparency and consistency that led to this lawsuit in the first place.

In short, from Plaintiffs' perspective, is nothing vague or unclear about the terms of the settlement—it includes removals for autopsies, all indigent or pauper cases, and all other cases where the Coroner (as opposed to a family member or next of kin) makes the decision. This includes all suspected homicides, and Plaintiffs merely seek enforcement of the plain language of the parties' settlement agreement.

### C. Defendants' Position Violates the Settlement Agreement.

Defendants seek to exempt certain autopsy cases—those involving "suspected homicides"—from the rotation system. Specifically, Defendants' proposal is that in cases of suspected homicides is as follows:

- All removals of remains for autopsies in a suspected homicide will be made by the County contracted transportation service, if any, so that the County contracted transportation service, if any, may transport the body to a facility to be autopsied. If the body cannot be immediately transported to such facility to be autopsied, the County contracted transportation service, if any, shall remove the body to the refrigeration facility/body cooler located at 11280 Three Rivers Road, Gulfport, MS 39503, so that the remains may be properly refrigerated to preserve evidence until the body can be transported to such facility to be autopsied. In the event the satellite State Medical Examiner's Office becomes operational on Highway 67 in Biloxi, MS or another location is provided by the County, the County contracted transportation service, if any, shall directly transport the remains to the Highway 67 facility or another location provided by the County. In the event that the County contracted transportation service, if any, is not available to perform such removals then said removal will be made subject to the rotation system defined above.

Plainly, this sort of exception violates the settlement agreement. Plaintiffs did not agree to a rotation system for autopsies, *except* those in cases of suspected homicides. Indeed, what constitutes a "suspected homicide" is not something that

was *ever* discussed during the settlement discussions, Ex. A, and is something that poses serious, undefined problems.

Indeed, given the about-face with respect to homicides in autopsy cases, Plaintiffs have serious concerns. Defendants' current proposal seeks to have a county-hired transportation service conduct direct removals in cases of suspected homicides. That service is owned by the Riemann family and materially indistinguishable from Riemann's Family Funeral Home. That is not what the contemplation of the parties was. Instead, the rotation system was supposed to provide that initial removals for all autopsy cases are part of the rotation system, and then the transport service takes a decedent to Pearl and back, at which point the designated funeral home resumes its work. Ex. A, at 5-6. Expanding the scope of the transportation service to include autopsy *removals* in suspected homicide cases potentially vastly intrudes on the agreement Plaintiffs already obtained. It also raises questions about what sorts of cases are "suspected homicides" and how that determination is made. Plaintiffs have *no* intention of interfering with the work of the Medical Examiner or honest investigations undertaken by the Coroner. However, exempting suspected homicide cases from the rotation system, and expanding the reach of the transport service owned by the Riemann family to removals, erodes the agreement that Plaintiffs have fought for.[2]

---

[2] In discussions, Defendants raised a potential issue about cost to the county of this arrangement. This concern rings hollow. For one, the agreement is the agreement and instances where funeral homes are paid for conducting removals in autopsy cases remains the same. Second, the $150 for removals only comes into play where the funeral home conducting the removal does *not* perform additional services after the autopsy. This is, in some ways, a core issue: Plaintiffs want the opportunity they currently do not have in

# CONCLUSION

As the Court can infer from the fact that this dispute is now before it, the disagreement is one that Plaintiffs feel is material and important. Based on the foregoing, the Court should enter an Order that enforces the settlement agreement without any exceptions made for homicides.

WHEREFORE, the parties respectfully request that this Court enter an Order enforcing the settlement agreement between the parties.

Respectfully submitted,

/s/ David B. Owens
David B. Owens
*One of Plaintiffs' Attorneys*

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| Michael Kanovitz* | Robert McDuff | Beth L. Orlansky |
| Steven Art* | 767 N. Congress St. | Kiara A. Taite |
| David B. Owens* | Jackson, MS 39202 | Mississippi Center for |
| Danielle Hamilton* | (601) 969-0802 | Justice |
| LOEVY & LOEVY | rbm@mcdufflaw.com | 963 Division St. |
| 311 N. Aberdeen St., 3rd Fl. | | Biloxi, MS 39530 |
| Chicago, IL 60607 | | (228) 435-7248 |
| (312) 243-5900 | | borlansky@mscenter |
| (312) 243-5902 (fax) | | forjustice.org |
| david@loevy.com | | |
| *Admitted *pro hac vice* | | |

---

conducting these removals because having them conducted by Riemann's Family Funeral Home or a Riemann-affiliated entity gives them (and Bradford O'Keefe) an unfair disadvantage as it concerns competition for this business. Third, as the evidence (on both sides) at trial showed, families are very unlikely to move from one funeral home to another if they don't already have a strong preference in advance. So, the numbers should not change materially from what is happening on the ground currently. Instead, what can be expected is that Riemann's is going to get a smaller piece of the pie and the other funeral homes (Bradford included) will get a fairer share.

# CERTIFICATE OF SERVICE

I, David B. Owens, an attorney, hereby certify that on July 20, 2018, I filed the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** using the Court's CM/ECF system, which effected service on all counsel of record.

By: /s/ David B. Owens
*One of Plaintiffs' Attorneys*
